**No. 23-15260**

# In the
# United States Court of Appeals
# For the Ninth Circuit



ODETTE R. BATIS,

*Plaintiff-Appellee,*

v.

DUN & BRADSTREET HOLDINGS, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of California
District Judge Maxine M. Chesney, No. 3:22-cv-01924-MMC

## APPELLANT'S OPENING BRIEF

Ashley I. Kissinger (SBN 193693)
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956
KissingerA@ballardspahr.com

Elizabeth L. Schilken (SBN 241231)
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350
SchilkenE@ballardspahr.com

Emmy Parsons
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Telephone: 202.661.2200
Facsimile: 202.661.2299
ParsonsE@ballardspahr.com

Michael R. O'Donnell
Michael P. O'Mullan
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Facsimile: 973.538.1984
MODonnell@RIKER.com
MOMullan@RIKER.com

*Attorneys for Defendant-Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned certifies that Defendant-Appellant Dun & Bradstreet Holdings, Inc. ("D&B") does not have any parent corporation, and that a publicly traded corporation, Cannae Holdings, Inc., owns more than 10% of D&B's stock.

/s/ *Michael R. O'Donnell*

Michael R. O'Donnell
Michael P. O'Mullan
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Email: MODonnell@RIKER.com
Email: MOMullan@RIKER.com

and

Ashley I. Kissinger
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Email: KissingerA@ballardspahr.com

i

Elizabeth L. Schilken
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Email: SchilkenE@ballardspahr.com

Emmy Parsons
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Telephone: 202.661.2200
Email: ParsonsE@ballardspahr.com

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................ 1

II.    JURISDICTIONAL STATEMENT ........................................... 3

III.   ISSUES PRESENTED FOR REVIEW ...................................... 4

IV.   CONSTITUTIONAL PROVISIONS AND STATUTES .......................... 5

V.    STATEMENT OF THE CASE ................................................... 6

      A.  Statement of Facts ......................................................... 6

           1.   D&B publishes various subscription-based resources, including Hoovers, a publication about businesses, government entities, and industry. ......................................... 6

           2.   D&B offers free trial demonstrations of Hoovers. ............... 7

           3.   Plaintiff is listed in Hoovers as a municipal employee for the City of Richmond, California. ................................... 8

      B.  Course of Proceedings and Disposition in the Court Below .......... 9

           1.   Plaintiff's claims are premised on the fact that Hoovers free trial users may see her business contact information in Hoovers (if their searches happen to return it). ................................... 9

           2.   The district court agreed that the Hoovers database is speech that is fully protected by the First Amendment, but not when viewed by a free trial user. ........................... 10

VI.   SUMMARY OF THE ARGUMENT ........................................ 13

VII.  ARGUMENT ............................................................................. 16

      A.  Standard of Review ..................................................... 16

**B. California's anti-SLAPP statute is a strong weapon for defeating meritless claims that arise from speech in connection with an issue of public interest and conduct in furtherance thereof.** ........................................................... 16

**C. D&B satisfied prong one of its anti-SLAPP motion.** ..................... 18

    **1. Plaintiff's professional contact information implicates an issue of public interest.** ..................................................... 21

    **2. D&B satisfied step two of the *FilmOn/Geiser* test because publication of Plaintiff's contact information is functionally related to the public's legitimate interest in the identities of, and contact information for, business professionals, including public employees like Plaintiff.** .................................................................................. 24

    **3. In holding that D&B failed to satisfy prong one, the district court ignored the *FilmOn/Geiser* two-part test, engaged in the type of reasoning criticized in those cases, ignored D&B's evidence, and relied on factors that have no relevance to the prong one analysis.** ............... 26

**D. Plaintiff did not establish a reasonable probability that she will prevail on the merits of her claims under prong two.** ........... 30

    **1. The First Amendment bars Plaintiff's claims.** .................... 31

        **a. The information in Hoovers, regardless of whether it is displayed during a free trial, is not commercial speech.** ..................................................... 32

        **b. The Hoovers free trial is "inextricably intertwined" with the concededly First Amendment-protected Hoovers database.** ................ 37

        **c. Plaintiff's claims cannot survive strict scrutiny.** ...... 38

        **d. Even if free trial access to Hoovers implicates commercial speech, intermediate scrutiny would**

           **apply and Plaintiff's claims cannot survive such scrutiny.** ........................................................................ 41

2.    **Even if the Hoovers free trial could be fairly characterized as an "advertisement," it is an "adjunct" of the underlying database and receives the same level of First Amendment protection.** ............................................ 43

    a.    **The district court misread *Charles* as barring application of the adjunct advertising doctrine here; in fact, *Charles compels* its application.** ........... 45

    b.    **The district court's failure to consider D&B's evidence was also erroneous.** ...................................... 49

3.    **D&B's use of Plaintiff's business information is protected under California's transformative use exception.** ................................................................................. 51

4.    **Plaintiff's claims fail under state law as well because the Hoovers free trial is subject to the public interest exception to right of publicity claims.** ................................. 53

5.    **Plaintiff's UCL claim must be dismissed because it is derivative of her inadequate right of publicity claims, and for the additional reason that Plaintiff cannot demonstrate she lost "money or property."** ........................ 59

6.    **Plaintiff does not have Article III standing.** ........................ 60

**VIII.  CONCLUSION** ......................................................................... 65

**STATEMENT OF RELATED CASES** .................................................... 67

**CERTIFICATE OF COMPLIANCE** ................................................... 68

**CERTIFICATE OF SERVICE** ........................................................... 69

**ADDENDUM** ....................................................................... Add. i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abdul-Jabbar v. GMC*,
   85 F.3d 407 (9th Cir. 1996) ...................................................................58

*Alfasigma USA, Inc. v. First Databank, Inc.*,
   525 F. Supp. 3d 1088 (N.D. Cal. 2021) ................................................36

*Almeida v. Amazon.com, Inc.*,
   456 F.3d 1316 (11th Cir. 2006) .............................................................35

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ...............................................................36

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................62

*Bakalian v. Cent. Bank of the Republic of Turk.*,
   932 F.3d 1229 (9th Cir. 2019) ...............................................................64

*Baral v. Schnitt*,
   1 Cal. 5th 376 (2016) .............................................................................30

*Barrett v. Rosenthal*,
   40 Cal. 4th 33 (2006) .............................................................................18

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................62

*Bergen v. Martindale-Hubbell, Inc.*,
   285 S.E.2d 6 (Ga. 1981) .........................................................................31

*Bernstein v. LaBeouf*,
   43 Cal. App. 5th 15 (2019) ................................................................14

*Bikkina v. Mahadevan*,
   241 Cal. App. 4th 70 (2015) ..............................................................19

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ...................................................................... passim

*Camacho v. Control Grp. Media Co., LLC*,
   No. 21-cv-1954-MMA (MDD), 2022 WL 3093306 (S.D. Cal. July 18, 2022) ..29

*Carafano v. Metrosplash, Inc.*,
   207 F. Supp. 2d 1055 (C.D. Cal. 2002),
   *aff'd on other grounds*, 333 F.3d 1119 (9th Cir. 2003) ......................................38

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
   447 U.S. 557 (1980) ......................................................... 32, 36, 41, 42

*Charles v. City of L.A.*,
   697 F.3d 1146 (9th Cir. 2012) ........................................ 44, 45, 46, 47

*Cher v. Forum Int'l, Ltd.*,
   692 F.2d 634 (9th Cir. 1982) .............................................. 43, 44, 47

*Church of Scientology of California v. Wollersheim*,
   42 Cal. App. 4th 628 (1996) ..............................................................23

*City of Montebello v. Vasquez*,
   1 Cal. 5th 409 (2016) .........................................................................28

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ..............................................60

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387 (2001) ................................................................ 51, 52

*Comm'n on Peace Officer Standards v. Super. Ct.*,
   42 Cal. 4th 278 (2007) .......................................................................23

*De Havilland v. FX Networks, LLC*,
 21 Cal. App. 5th 845 (2018) ............................................................ 44, 52, 57, 58

*Del Vecchio v. Amazon.com, Inc.*,
 No. C11-366RSL, 2012 U.S. Dist. LEXIS 76536 (W.D. Wash. June 1, 2012) ..62

*Dex Media W., Inc. v. City of Seattle*,
 696 F.3d 952 (9th Cir. 2012) ..................................................................... passim

*Doe v. Gangland Prods., Inc.*,
 730 F.3d 946 (9th Cir. 2013) ..............................................................................16

*Dora v. Frontline Video, Inc.*,
 15 Cal. App. 4th, 536 (1993) ..............................................................................55

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001) ..............................................................................54

*FilmOn.com Inc. v. DoubleVerify Inc.*,
 7 Cal. 5th 133 (2019) ............................................................................... passim

*Fox Searchlight Pictures, Inc. v. Paladino*,
 89 Cal. App. 4th 294 (2001) ...............................................................................28

*Fraley v. Facebook, Inc.*,
 830 F. Supp. 2d 785 (N.D. Cal. 2011) ......................................................... 57, 60

*Geiser v. Kuhns*,
 13 Cal. 5th 1238 (2022) ............................................................................ passim

*Gionfriddo v. Major League Baseball*,
 94 Cal. App. 4th 400 (2001) ....................................................................... 52, 55

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*,
 742 F.3d 414 (9th Cir. 2014) ..............................................................................30

*Greensprings Baptist Christian Fellowship Tr. v. Cilley*,
 629 F.3d 1064 (9th Cir. 2010) ............................................................................64

*Guglielmi v. Spelling-Goldberg Prods.*,
  25 Cal. 3d 860 (1979) ................................................................. 44, 47

*Heitkoetter v. Domm*,
  No. 22-cv-368-AWI-BAM,
  2022 U.S. Dist. LEXIS 202921 (E.D. Cal. Nov. 7, 2022)....................................18

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ........................................................ 17, 25, 28, 52

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001) ..................................................... 37, 59

*In re Google, Inc. Privacy Policy Litig.*,
  No. 12-cv-1382, 2013 U.S. Dist. Lexis 171124 (N.D. Cal. Dec. 3, 2013)..........62

*Int-Elect Eng'g, Inc. v. Clinton Harley Corp.*,
  No. C-92-20718 JW,
  1993 U.S. Dist. LEXIS 11510 (N.D. Cal. June 24, 1993)...................................49

*Jamison v. Texas*,
  318 U.S. 413 (1943)...........................................................................33

*Kirby v. Sega of Am., Inc.*,
  144 Cal. App. 4th 47 (2006) ...................................................... 51, 59

*Knapke v. PeopleConnect Inc.*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021)...........................................................42

*Lacoff v. Buena Vista Publ'g, Inc.*,
  183 Misc. 2d 600 (N.Y. Sup. Ct. 2000) ...............................................35

*Local TV, LLC v. Super. Ct.*,
  3 Cal. App. 5th 1 (2016) ....................................................................59

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................61

*Lukis v. Whitepages Inc.*,
  454 F. Supp. 3d 746 (N.D. Ill. 2020) .................................................57

*Mann v. Quality Old Time Serv., Inc.*,
   120 Cal. App. 4th 90 (2004) ................................................................19

*Martinez v. ZoomInfo*,
   No. C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. April 11, 2022) ....... 29, 58

*Metabolife Int'l v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ..............................................................30

*Montana v. San Jose Mercury News, Inc*,
   34 Cal. App. 4th 790 (1995) .................................................. 54, 57, 58

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
   498 F.2d 821 (9th Cir. 1974) ..............................................................63

*Murdock v. Pennsylvania*,
   319 U.S. 105 (1943) ...........................................................................33

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002) .............................................................. 16, 17, 28

*New Kids on the Block v. News Am. Publ'g, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ..............................................................55

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ...........................................................................34

*Norton v. Mathews*,
   427 U.S. 524 (1976) ...........................................................................64

*Page v. Something Weird Video*,
   960 F. Supp. 1438 (C.D. Cal. 1996) ...................................................49

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   167 F. Supp. 2d 1114 (C.D. Cal. 2001) ..............................................40

*Pineda v. Bank of America*,
   50 Cal. 4th 1389 (2010) .....................................................................60

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ...............................................................17

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (1997) ..............................................................44

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ...........................................................................39

*Riley v. Nat'l Fed'n of Blind*,
   487 U.S. 781 (1988) ..................................................................... 37, 38

*Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO*,
   105 Cal. App. 4th 913 (2003) ................................................. 23, 24, 29

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ....................................................... passim

*Scott v. Citizen Watch Co. of Am., Inc.*,
   No. 17-cv-436-NC, 2018 U.S. Dist. LEXIS 57672 (N.D. Cal. Apr. 4, 2018).....54

*Sessa v. Ancestry.com Operations Inc.*,
   561 F. Supp. 3d 1008 (D. Nev. 2021) ..................................................58

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) .............................................................62

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...........................................................................39

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...........................................................................61

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) .............................................................59

*Stutzman v. Armstrong*,
   No. 2:13-CV-116-MCE-KJN,
   2013 U.S. Dist. LEXIS 129204 (E.D. Cal. Sept. 9, 2013)....................43

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020) ........................................................................61

*United Bhd. of Carpenters v. NLRB*,
  540 F.3d 957 (9th Cir. 2008) ..............................................................43

*United States v. Stevens*,
  559 U.S. 460 (2010) ............................................................................49

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ............................................................................39

*Wallace v. McCubbin*,
  196 Cal. App. 4th 1169 (2011) ...........................................................31

*William O'Neil & Co. v. Validea.com, Inc.*,
  202 F. Supp. 2d 1113 (C.D. Cal. 2002) ..............................................56

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*,
  172 Cal. App. 4th 1561 (2009) ...........................................................19

## Statutes

28 U.S.C. § 1332 ....................................................................................3

Cal. Bus. & Prof. Code § 17200, *et seq.* ................................... 10, 31, 59

Cal. Civ. Code § 3344 ....................................................... 9, 31, 57, 60

Cal. Code Civ. Proc. § 425.16 ....................................................... passim

## Other Authorities

J. McCarthy, *The Rights of Publicity and Privacy* § 8:72
  (2016 Thomson Reuters) .....................................................................52

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................... 10, 11

Fed. R. Civ. P. 12(b)(6) ..................................................... 10, 11, 45

**Constitutional Provisions**

U.S. Const. art. III ................................................................. passim

## **REQUEST FOR ORAL ARGUMENT**

D&B respectfully requests oral argument.

## I. __INTRODUCTION__

D&B respectfully submits this appeal of the denial of its anti-SLAPP motion to strike Plaintiff's class action Complaint, which asserts right of publicity claims because Plaintiff's name and business contact information was capable of being searched for in a free trial of D&B's Hoovers business database. The district court recognized that the Hoovers publication was entitled to full First Amendment protection but did not extend that ruling to the Hoovers free trial, even though it contains the same information. The district court also acknowledged that full First Amendment protection applied to advertisements for First Amendment-protected speech, but only to ads for "expressive" works, and declined to find that the Hoovers free trial is sufficiently "expressive."

The district court denied D&B's anti-SLAPP motion because it concluded D&B had failed to establish that the publication falls within the "public interest exception" to misappropriation claims. As a result, the court concluded D&B's anti-SLAPP motion failed at the first prong of the anti-SLAPP analysis and did not reach the second prong.

The decision below should be reversed, and D&B's anti-SLAPP motion should be granted, because the district court improperly failed to consider D&B's unrebutted evidence and misapplied the law governing Plaintiff's claims. Instead, the speech at issue is fully protected by the First Amendment, is expressly exempt

from California right of publicity law, and is about an issue of public interest.

Moreover, Plaintiff lacks Article III standing.  As such, D&B is entitled to

judgment as a matter of law under the anti-SLAPP statute.

## II.     JURISDICTIONAL STATEMENT

The district court asserted subject matter jurisdiction under 28 U.S.C.

§ 1332.  As discussed *infra*, however, Plaintiff lacks Article III standing.

This Court has appellate jurisdiction over an appeal of the denial of an anti-SLAPP motion under the collateral order doctrine.  *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003).  The district court entered its Order denying Dun & Bradstreet Holdings, Inc.'s ("D&B") Special Motion to Strike Pursuant to Cal. Code Civ. Proc. ("C.C.P.") § 425.16 on February 9, 2023.  ER-4-20.  D&B timely filed a notice of appeal on February 22, 2023.  ER-208-210.

### III.   ISSUES PRESENTED FOR REVIEW

1.     Whether the district court erred in denying D&B's motion to strike Plaintiff's suit under California's anti-SLAPP statute, C.C.P. § 425.16, because the action arises from D&B's protected speech of public interest and Plaintiff cannot show a probability of prevailing on her claims.

2.     In the alternative, whether Plaintiff lacks Article III standing.

## IV. <u>CONSTITUTIONAL PROVISIONS AND STATUTES</u>

Relevant constitutional provisions and statutes appear in the Addendum to this brief.

## V.   STATEMENT OF THE CASE

### A.   Statement of Facts[1]

#### 1.   D&B publishes various subscription-based resources, including Hoovers, a publication about businesses, government entities, and industry.

Founded in 1841, D&B is one of the oldest and most prominent publishers of business information in the country.  *See* ER-165 (¶ 2).  D&B publishes various resources used by businesses, government entities, research institutions, universities, and others, to conduct research and help them make business decisions.  ER-165 (¶ 3), ER-92 (¶ 4), ER-86.  Most renowned for its credit risk and due diligence publications, D&B also publishes other important business information that facilitates global and national trade in important ways.  ER-142.  One of these publications is Hoovers.

Hoovers is a searchable business-to-business database of business information and analysis that is of broad interest.  ER-165 (¶¶ 5-7).  Indeed, Hoovers publishes millions of business-related records from over 30,000 sources, including company profiles that detail company histories, corporate family trees,

---

[1]  This statement of facts is based on not only the allegations in Plaintiff's Complaint, ER-188-207, but also extensive unrebutted evidence D&B submitted more accurately describing the information in Hoovers, ER-91-96, ER-164-184.  This evidence should have been considered by the district court.  *See infra* Section VII.C.3.

financial information, stock data, company news, court and corporate filings, analysts' reports, and business contact information for the professionals who work at the profiled entities. ER-165 (¶ 6), ER-92 (¶ 2). The latter typically consists of basic professional contact information (*i.e.*, name, job title, work phone, and work email address) for corporate officers, directors, and other employees of the entities in the database. ER-166 (¶ 8). Importantly, Hoovers does not contain private, personal information of a non-business nature for these professionals. ER-166-169 (¶¶ 8, 12-20).

Like most major publishers, D&B provides access to Hoovers on a subscription basis. Through its proprietary data analytics tools, D&B allows users to perform customized searches for information across the database. ER-165-167 (¶¶ 3, 13), ER-170-171 (¶¶ 23-24). Users are able to research current information and news about companies, educational institutions, and government entities, and to tailor that research to their particular needs. ER-165 (¶ 5). This is the value of the publication.

### 2. D&B offers free trial demonstrations of Hoovers.

D&B, like many publishers,[2] offers anyone who wishes to see Hoovers a

---

[2] *See, e.g.*, The Wall Street Journal, https://store.wsj.com/checkout/US/US/1126500007/create-account (30-day free trial); Scholastic Magazines, https://classroommagazines.scholastic.com/free-trial.html (same).

free trial of it. These trials allow would-be customers to first test the functionality and comprehensiveness of Hoovers without committing to a paid subscription. ER-170 (¶ 22). To authentically replicate a paid Hoovers subscription, the features and functions displayed during a free trial are nearly identical to those of a paying subscriber. *See* ER-171 (¶¶ 24, 27).[3]

### 3. Plaintiff is listed in Hoovers as a municipal employee for the City of Richmond, California.

Plaintiff Odette Batis is listed in Hoovers as a librarian for the City of Richmond, California. ER-189 (¶ 1), ER-194 (¶ 34). Plaintiff's chief complaint is that Hoovers trial users can search for and view her professional contact information. ER-194 (¶¶ 33-34), ER-196 (¶ 37). Plaintiff does not contend this professional information about her in Hoovers is false, and, notwithstanding Plaintiff's suggestion to the contrary, it is not displayed in a manner suggesting Plaintiff consented to its inclusion or endorses Hoovers. ER-96 (¶ 16).

Plaintiff admits that the professional contact information in Hoovers about her and other class members may be in a variety of other publicly-accessible digital resources, including their employers' websites. ER-191 (¶ 17). In fact, Plaintiff's information is accessible in a variety of places, including news articles, LinkedIn,

---

[3] Some of the data is not available during the free trial. This is not surprising or unusual for a free trial of a publication. ER-171 (¶ 24).

library association publications, grant applications and other information that is subject to California public record requests.  *See* ER-173-174 (¶¶ 2-10), ER-175-184.

**B.    Course of Proceedings and Disposition in the Court Below**

**1.    Plaintiff's claims are premised on the fact that Hoovers free trial users may see her business contact information in Hoovers (if their searches happen to return it).**

Plaintiff purports to sue on behalf of herself and a class consisting of all current and former California residents whose information appears in Hoovers. ER-189 (¶¶ 2, 4), ER-200-201 (¶ 54).  Her claims are *not* based on the inclusion of her professional contact information in Hoovers itself, or its display to paying subscribers.  *See* ER-106.  Indeed, Plaintiff expressly concedes D&B has a First Amendment right to publish her professional contact information in Hoovers.  ER-106, ER-112, ER-14.  Plaintiff contends, instead, that D&B's right to publish this information is limited to publishing it to *paying subscribers* and that D&B cannot display this First Amendment-protected speech if it is returned in response to a search query by a *free trial user.*  ER-112.  Though displayed only in response to a trial user's search query, Plaintiff alleges that the display of her information in Hoovers is an advertisement for the same database, ER-194 (¶ 33), and thus violates California's right of publicity statute, Cal. Civ. Code § 3344; California's common law prohibiting misappropriation of a name or likeness; and the Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, ER-189 (¶ 1).[4]

Plaintiff included screenshots of Hoovers in her Complaint, and she describes what is shown in the screenshots as "advertisements." ER-194-198 (¶¶ 33-34, 36-39). The screenshots show, however, that the free trial is simply that: a trial, a demonstration. The screenshots do not show any offer to be accepted or even a "subscribe here" button, notwithstanding Plaintiff's allegation to the contrary; there is just the information responsive to a search. *See* ER-194-198 (¶¶ 33-34, 36-39).

### 2. The district court agreed that the Hoovers database is speech that is fully protected by the First Amendment, but not when viewed by a free trial user.

D&B filed a motion to strike Plaintiff's Complaint pursuant to C.C.P. § 425.16, or, in the alternative, to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). As permitted by C.C.P. § 425.16(b)(2), D&B submitted declarations in support of its anti-SLAPP motion. ER-164-184, ER-91-96. Plaintiff neither requested discovery as authorized by C.C.P. § 425.16(g), nor did she submit opposing evidence.

---

[4] Plaintiff does not allege D&B uses her or anyone's business contact information in "advertisements" for Hoovers *outside* of what is displayed in Hoovers. *See* ER-195-196 (¶¶ 34-35).

The district court denied D&B's motions without considering any of D&B's proffered evidence. The court first addressed the motions brought in the alternative under Rule 12. The court ruled Plaintiff had Article III standing to sue and denied D&B's 12(b)(1) motion to dismiss. ER-7-10. Addressing D&B's 12(b)(6) motion, the court ruled that when Plaintiff's information is displayed during a free trial of Hoovers, it "falls outside the public interest/public affairs exception" to California statutory and common law right of publicity claims. ER-13. The court recognized that the Hoovers database "receives full First Amendment protection," ER-14, but assumed without analysis that this protection did not carry over to the *free trial* of Hoovers. The court acknowledged that California and Ninth Circuit cases confer full First Amendment protection on advertisements for First Amendment-protected speech, but ruled that this applies only to ads for "expressive" works (without explaining what qualifies as an "expressive" work), and that it was premature to rule on whether the Hoovers free trial is sufficiently "expressive." ER-15-16.

The district court addressed D&B's anti-SLAPP motion last, holding that because D&B had failed to establish that the publication of Plaintiff's information during the trial is "entitled to protection under the First Amendment," or that it falls within the "public interest exception" to misappropriation claims. ER-18-19 ("D&B has failed to make a threshold showing that Batis's claims arise from

11

protected activity.").  The court summarily concluded D&B's anti-SLAPP motion failed at the first prong of the anti-SLAPP analysis and did not reach the second prong.  ER-19.  In doing so, the court ignored D&B's unrebutted evidence.

## VI.   SUMMARY OF THE ARGUMENT

The decision below should be reversed, and D&B's anti-SLAPP motion should be granted, because the district court improperly failed to consider D&B's unrebutted evidence and misapplied the law governing Plaintiff's claims. Plaintiff's claims arise from speech that is fully protected by the First Amendment, is expressly exempt from California right of publicity law, and is about an issue of legitimate public interest. Moreover, Plaintiff lacks Article III standing. As such, D&B is entitled to judgment as a matter of law under the anti-SLAPP statute as well as reasonable attorneys' fees and costs.

Plaintiff challenges D&B's publication of her professional contact information in Hoovers, a comprehensive business publication used by thousands of entities—some via paid subscription and others via a free trial—to conduct research and analysis of industries, businesses, and government entities, and to obtain information to help them market to those organizations. ER-166 (¶¶ 9-11), ER-92 (¶¶ 1-4). This information is speech in connection with an issue of public interest. Indeed, the speech is *itself* of legitimate public interest.

Factual information about businesses and government, including the professionals who run them, is vital to the functioning of the free market and democratic government. Even in isolation, the publication of Plaintiff's government contact information in Hoovers, whether it is viewed by a trial user or

paid subscriber, is functionally related to this issue of public interest. Accordingly, D&B satisfied prong one of its anti-SLAPP motion, and the district court's holding to the contrary was erroneous.

The district court erred in three ways. First, the court failed to apply the two-part test the California Supreme Court requires when analyzing prong one of a motion under C.C.P. § 423.16(e)(4).[5] Second, the court failed to consider the extensive, unrebutted evidence D&B submitted with its motion, evidence that must be considered when, as here, an anti-SLAPP movant challenges not only the legal but also factual sufficiency of the Complaint. Finally, the court reached the wrong conclusion when the law is applied to the facts. Both subsections (e)(3) and (e)(4) apply.

Plaintiff also failed to show a reasonable probability of success on the merits under prong two of the anti-SLAPP analysis, an issue the district court did not reach. Plaintiff concedes that Hoovers is fully protected under the First Amendment, yet makes the illogical argument that the free trial version is unprotected. That result would make it impossible for online publishers to showcase the value of their publications to would-be subscribers. This is not, nor should it be, the law. The speech in the free trial is the same as that in a paid

---

[5] This two-part test also applies where subsection (e)(3) is at issue. *See, e.g.*, *Bernstein v. LaBeouf*, 43 Cal. App. 5th 15, 22 (2019).

subscription. Plaintiff's claims seeking to impose liability for that speech must accordingly survive strict scrutiny, and they cannot.

The First Amendment bars Plaintiff's claims even if the Court credits her inaccurate description of the free trial of Hoovers as being simply an advertisement for Hoovers. The evidence before the Court establishes the speech is neither illegal nor misleading and, as such, Plaintiff's claims must survive, at a minimum, intermediate scrutiny. They cannot. The free trial is also protected under the adjunct advertising exception that shields advertisements for First Amendment protected works from tort liability, affording them the same protection as the underlying works themselves. Alternatively, Hoovers and its free trial are protected under the First Amendment as transformative uses of the names and business contact information of Plaintiff and putative class members.

Constitutional issues aside, Plaintiff's claims fail on the merits under state law. The information in the database (and, thus, in the free trial) falls within the public interest exception to right of publicity claims. And Plaintiff's UCL claim fails both because it falls with her right of publicity claims and because Plaintiff did not prove loss of money or property.

Finally, the district court also erred in concluding Plaintiff has standing to bring her claims, a separate ground on which this Court can and should also strike the Complaint.

## VII. <u>ARGUMENT</u>

### A.    Standard of Review

This Court "review[s] *de novo* [a] district court's denial of an anti-SLAPP motion," including "whether a plaintiff has met [her] burden to show a probability of success on the merits." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 951, 957 (9th Cir. 2013) (cleaned up).

### B.    California's anti-SLAPP statute is a strong weapon for defeating meritless claims that arise from speech in connection with an issue of public interest and conduct in furtherance thereof.

Over thirty years ago, the California State Legislature enacted a powerful anti-SLAPP statute to protect, among other things, speech on matters of public interest, declaring "it is in the public interest to encourage continued participation in matters of public significance, and … this participation should not be chilled through abuse of the judicial process." C.C.P. § 425.16(a). The statute provides that

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

*Id.* § 425.16(b)(1). The statute "shall be construed broadly." *Id.* § 425.16(a); *see Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (no particular type of action

16

excluded from statute). Speech need not "meet the lofty standard of pertaining to the heart of self-government" or otherwise "involve questions of civic concern" to come within the statute. *Hilton v. Hallmark Cards*, 599 F.3d 894, 905-06 (9th Cir. 2010) ("we must construe 'public issue or issue of public interest' in section 425.16(e)(4) broadly … to encourage participation in matters of public importance or consequence"). Even speech uttered in a private context, from one person to another, can come within the statute. *Navellier*, 29 Cal. 4th at 91.

Anti-SLAPP motions are analyzed in two prongs. First, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (cleaned up). Second, if the defendant makes this showing, courts "evaluate whether the plaintiff has 'establish[ed] a reasonable probability that the plaintiff will prevail on his or her … claim.'" *Id.* (citation omitted) (alterations in original).

Where, as here, a defendant's anti-SLAPP motion challenges both the legal and factual sufficiency of a plaintiff's complaint, courts must consider not only the pleadings but also any evidence the parties submit in analyzing both prongs of the anti-SLAPP motion. *See, e.g.*, *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) ("[W]hen an anti-SLAPP motion to

strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply."); *Heitkoetter v. Domm*, No. 22-cv-368-AWI-BAM, 2022 U.S. Dist. LEXIS 202921, at *17 n.9 (E.D. Cal. Nov. 7, 2022) ("The Court is not aware of any authority barring the use of extrinsic evidence in prong-one determinations under section 425.16 … and indeed Ninth Circuit law appears to call for extrinsic evidence in that context.").

### C. D&B satisfied prong one of its anti-SLAPP motion.

D&B made a prima facie showing that Plaintiff's suit arises from D&B's speech in connection with a public issue under subsections (e)(3) and (e)(4) of the statute. Subsection (e)(3) applies where the defendant's challenged speech is a "writing made in a place open to the public or a public forum in connection with an issue of public interest." C.C.P. § 425.16(e)(3). Subsection (e)(4) applies where the defendant's challenged speech or conduct is "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* § 425.16 (e)(4).

With respect to subsection (e)(3), publication of Plaintiff's professional information in the Hoovers free trial is a writing in a public forum under well-established California law. *See* ER-195 (¶ 35) ("Dun & Bradstreet publicly displays … Ms. Batis' profile on the D&B Hoovers website."); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public … are

18

'public forums' for purposes of the anti-SLAPP statute."). Thus D&B's speech easily meets the threshold requirement for subsection (e)(3) to apply.

D&B's challenged speech also satisfies the two-part analysis for determining whether speech comes within subsections (e)(3) and (e)(4). First, the speech "implicates" a public issue, and second, it "contributes to public discussion" of that issue. *See Geiser v. Kuhns*, 13 Cal. 5th 1238, 1243 (2022). The California Supreme Court developed this two-step framework in *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133 (2019), partially in response to lower court decisions that improperly characterized speech as addressing only a single, narrow subject and then holding it was therefore beyond the statute's reach. *Id.* at 149 (criticizing *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70 (2015); *World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561 (2009); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90 (2004)). These lower courts had wrongly concluded "that the challenged conduct implicated only a private dispute and not an issue of public interest." *Geiser*, 13 Cal. 5th at 1248 (citing *FilmOn*, 7 Cal. 5th at 149); *FilmOn*, 7 Cal. 5th at 149 ("This focus on discerning a single topic of speech is less than satisfying; if the social media era has taught us anything, it is that speech is rarely 'about' any single issue."). Therefore, "to steer courts away from this mode of analysis," the Supreme Court developed the two-part *FilmOn* framework, and further refined it in *Geiser*, to emphasize that the

challenged speech must be evaluated *in its context* at both steps of the two-part test. *Geiser*, 13 Cal. 5th at 1249, 1253.

Under the *FilmOn/Geiser* framework, courts first "ask what public issue or … issue of public interest is implicated by the challenged activity." *Id.* at 1246 (cleaned up). Second, courts "look to the 'functional relationship' between the challenged activity and the public issue it implicates, and ask whether the activity contributed to public discussion of that issue." *Id.* (citing *FilmOn*, 7 Cal. 5th at 149-52). At both stages of this analysis, courts must take into account context, including considerations of "audience, speaker, and purpose." *Id.* at 1253-54.

The *Geiser* court emphasized that anti-SLAPP movants "virtually always" demonstrate that their conduct implicates an issue of public interest under the first step. *Id.* at 1250 ("it is *FilmOn*'s second step, not its first, that usually plays the more prominent role in screening anti-SLAPP motions"). Moreover, even if a defendant's speech implicates a broad or abstract public issue in addition to a narrower, more "private" issue, that does not prevent the defendant from satisfying prong one. *See id.* at 1248-49. "Only when an expressive activity, *viewed in context*, cannot reasonably be understood as implicating a public issue does an anti-SLAPP motion fail at *FilmOn*'s first step." *Id.* at 1253-54 (emphasis added).

When D&B's challenged speech is properly analyzed under the required *FilmOn/Geiser* framework, Plaintiff's claims fall comfortably within the anti-SLAPP statute.

### 1. Plaintiff's professional contact information implicates an issue of public interest.

D&B's publication of Plaintiff's public professional contact information and that of putative class members implicates an issue of indisputable public interest—the identities of, and contact information for, professionals who operate government agencies as well as public and private companies. Indeed, the *context* of D&B's speech—including considerations of "audience, speaker, and purpose"—only solidifies this conclusion. *See Geiser*, 13 Cal. 5th at 1252-53.

The speaker is D&B, one of the oldest and most prominent publishers of business and government-related information in the country. ER-165 (¶ 2). The audience consists of not only thousands of subscribers to Hoovers, but the public at large which can access the database via a free trial or a paid subscription maintained by an entity such as a university library. ER-92 (¶¶ 2-3). The audience includes business professionals, research institutions, universities, and government agencies, among others. ER-92 (¶¶ 3-4) (identifying Stanford University Graduate School of Business Library, FDA, World Bank, IMF, U.S. Department of Commerce, and Executive Office of the President of the United States among Hoovers subscribers). The fact that thousands of entities maintain paid

subscriptions to this compilation of business and industry information evidences the degree to which the information within Hoovers, including Plaintiff's government contact information, implicates an issue of public interest. *See* ER-92 (¶ 3).

The purpose of Hoovers is to enable users to research continuously updated data about industry, businesses, government and non-governmental entities, and other organizations. ER-165 (¶ 5), ER-92 (¶¶ 2, 4). Some users use Hoovers to more efficiently market their products and services. ER-94 (¶¶ 7, 9). Even Plaintiff acknowledges that D&B offers her professional contact information as part of its extensive database of information containing "comprehensive intelligence" with respect to millions of business records. ER-194 (¶ 34), ER-199 (¶ 42).

Indeed, the contact information for professionals is an important part of Hoovers' business-related information, which also includes industry news, new business developments, lawsuits, analysts' reports, and other information. ER-165 (¶ 6). Thus, the contact information for professionals at a business is typically displayed with links to news related to their employer and its industry. Hoovers' users rely on this information to make sound business decisions, as well as to research, analyze, and more efficiently market to businesses, governments, and other organizations. ER-166 (¶¶ 9-11); ER-94 (¶ 7). Thus, by publishing Hoovers,

22

D&B facilitates the open flow of important business and government information and advances modern commerce. As such, it is of tremendous public interest.

Plaintiff's contact information provides an especially stark example. The court in *Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO* recognized almost two decades before *Geiser* that "matters of public interest include … governmental activities" as well as information about private entities that "may impact the lives of many individuals." 105 Cal. App. 4th 913, 922 (2003) (quoting *Church of Scientology of California v. Wollersheim*, 42 Cal. App. 4th 628, 650 (1996)). Indeed, the California Supreme Court has expressly noted the public has a "legitimate interest" in the identity of public servants like Plaintiff. *See Comm'n on Peace Officer Standards v. Super. Ct.*, 42 Cal. 4th 278, 296-97 (2007) (noting the public's "legitimate interest" in the identity of public servants and that "[t]he names of all public employees are viewed as public information under both state and federal law"). The *Rivero* court also recognized that statements implicating an issue of public interest include, but are not limited to, those that "concern[] a person or entity in the public eye[,] … conduct that could directly affect a large number of people beyond the direct participants[,] … or a topic of widespread public interest." 105 Cal. App. 4th at 924.

Such is the very type of information in the Hoovers database, including the public contact information about Plaintiff, who is a government employee. The

public has a legitimate interest in knowing the identities of government employees who serve it, and in being able to contact them at their place of work. This is especially true of Plaintiff, who has been the subject of news stories related to her public position. ER-173-174 (¶¶ 5-10). ER-177-184. *See Rivero*, 105 Cal. App. 4th at 924 (statements about a person "in the public eye," or one whose conduct can affect many others, or on "a topic of widespread public interest" are among those that fall within prong one).

Hoovers contains information about others in the public eye as well, including public employees, CEOs, and others. Many of these would presumably be members of Plaintiff's purported class. The business contact information available for these individuals likewise is (and therefore "implicates") an issue of public interest. As such, D&B's speech satisfies step one of the *FilmOn/Geiser* test.

> **2.      D&B satisfied step two of the *FilmOn/Geiser* test because publication of Plaintiff's contact information is functionally related to the public's legitimate interest in the identities of, and contact information for, business professionals, including public employees like Plaintiff.**

D&B also satisfied the second part of the *FilmOn/Geiser* test. Under this part, courts "look to the 'functional relationship' between the challenged activity and the public issue it implicates, and ask whether the activity contributed to public discussion of that issue." *Geiser*, 13 Cal. 5th at 1246 (citing *FilmOn*, 7 Cal. 5th at

24

149-52). The analysis "does not turn on a normative evaluation of the substance of the speech"; courts are "not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction[.]" *FilmOn*, 7 Cal. 5th at 151. Instead, courts "examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." *Id.* In making this determination, courts must again consider context, including "audience, speaker, and purpose." *Id.* at 151-52.

As *Geiser* recognized, there can be significant overlap between step one and step two of the analysis. 13 Cal. 5th at 1256 ("Many of the same contextual considerations that compel us to conclude that the protest implicated public issues also compel us to conclude that the protest furthered public discussion of them."). That is the case here. The speech in Hoovers, including Plaintiff's contact information, is of legitimate public interest, and, taking into account the same considerations of audience, speaker, and purpose discussed *supra*, there is plainly a "functional relationship" between D&B's publication of that contact information and the public interest in it. In other words, D&B's publication of Plaintiff's contact information in connection with the other business information it relates to is conduct in which D&B "participated in, or furthered, the discourse that makes an issue one of public interest." *See FilmOn*, 7 Cal. 5th at 151; *see also Hilton*, 599

25

F.3d at 903 (making clear that "actual exercises of free speech rights" are protected under the anti-SLAPP statute along with "conduct that furthers such rights").

>   **3.**   **In holding that D&B failed to satisfy prong one, the district court ignored the *FilmOn/Geiser* two-part test, engaged in the type of reasoning criticized in those cases, ignored D&B's evidence, and relied on factors that have no relevance to the prong one analysis.**

The district court ruled that D&B's speech did not implicate an issue of public interest, *see* ER-17-18, despite the fact that defendants "virtually always" satisfy step one of the *FilmOn/Geiser* test, *Geiser*, 13 Cal. 5th at 1250. This ruling was erroneous. The district court neither applied nor even acknowledged the two-part *FilmOn/Geiser* framework. While the court quoted *FilmOn* in cursorily concluding that D&B's publication of professionals' contact information is "'too tenuously tethered to the issues of public interest they implicate,'" *see* ER-19 (quoting *FilmOn*, 7 Cal. 5th at 140), it did not actually conduct the analysis required by that decision and it engaged in the faulty reasoning criticized in both *FilmOn* and *Geiser*.

With respect to the first step of the test, the court did not consider the context of the speech at issue—including audience, speaker, and purpose—in assessing whether D&B's speech implicates an issue of public interest. This is an important requirement in step one added by the California Supreme Court in

*Geiser* five months before the district court issued it decision, 13 Cal. 5th at 1253,[6] but the district court entirely ignored D&B's evidence about context. Like the errant courts in *Bikkina*, *World Financial*, and *Mann*, the district court viewed the challenged speech (Plaintiff's contact information) narrowly and without considering the context in which it was published (a business and industry database used by governments, libraries, businesses, other institutions, and the general public for research and market analysis). Palmer Decl. ¶ 3; Supp. Decl. ¶ 4; ECF 25 at 13:15-17. This divorcing of the speech from its context led the court to inaccurately conclude that the issue of public interest implicated was too "broad and amorphous." Op. at 16. The district court did not conduct the second step of the *FilmOn/Geiser* test at all.

The district court also relied on factors that are irrelevant to the prong one analysis. The court erroneously assumed the Hoovers free trial does not implicate an issue of public interest because it is an "advertisement" that is not "entitled to protection under the First Amendment." ER-18. In fact, the free trial *is* subject to full First Amendment protection. *See infra* Sections VII.D.1., VII.D.2. But, even

---

[6] The *Geiser* decision was issued on August 29, 2022, after the close of briefing on D&B's anti-SLAPP motion but prior to the district court's February 9, 2023 ruling. *See* ER-22-23 (September 12, 2022 Statement of Recent Decisions in Advance of Hearing on Defendant Dun & Bradstreet Holdings, Inc.'s Special Motion to Strike).

if it was not, both the Ninth Circuit and California courts have made clear that such a finding has no bearing on whether the anti-SLAPP statute's protection is triggered. Indeed, the California Supreme Court has expressly stated for two decades, and the Ninth Circuit has recognized, that this mode of analysis is erroneous. *See Navellier*, 29 Cal. 4th at 94-95 ("The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law.") (quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305 (2001)); *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 422 (2016) ("[C]ourts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)."); *Hilton*, 599 F.3d at 903 ("[T]he activity the plaintiff is challenging must have been conducted 'in furtherance' of the exercise of free speech rights. By its terms, this language includes not merely actual exercises of free speech rights but also conduct that furthers such rights.") (quoting C.C.P § 425.16(e)(4)).

The district court also concluded that D&B's speech does not implicate an issue of public interest because it "does not fall within the … public interest exception to liability for misappropriation and right of publicity claims, which analysis has similar application for purposes of an anti-SLAPP motion." ER-18

(citing *Martinez v. ZoomInfo*, No. C21-5725 MJP, 2022 WL 1078630, at *6-7 (W.D. Wash. April 11, 2022) (currently on appeal), and *Camacho v. Control Grp. Media Co., LLC*, No. 21-cv-1954-MMA (MDD), 2022 WL 3093306, at *33 (S.D. Cal. July 18, 2022). This assessment is flawed for several reasons.

First, Plaintiff's information *does* fall within the "public interest" exception to California's right of publicity law. *See infra* Section VII.D.4. Second, this is a question that goes to the merits under prong two of the anti-SLAPP analysis, rather than to prong one of the anti-SLAPP analysis. Third, by conflating the public interest exception to right of publicity claims with the first prong analysis, the district court failed to recognize that subsection (e)(4) embraces speech or other conduct "*in furtherance of* the exercise of … the constitutional right of free speech in connection with a public issue[.]" C.C.P. § 425.16(e)(4) (emphasis added). Thus, subsection (e)(4), by its own terms, protects speech or conduct that would not necessarily fall under the public interest exception.

Fourth, the district court erred in relying on the district court decisions in *Martinez* and *Camacho*. Neither court analyzed the defendant's anti-SLAPP motion under the *FilmOn/Geiser* two-part test. Indeed, neither opinion cited *FilmOn*, or even the pre-*FilmOn* decision in *Rivero*, and both *Martinez* and *Camacho* predate the *Geiser* decision that is key to the analysis.

Finally, the district court did not consider the unrebutted declarations D&B

29

submitted, which demonstrate that (1) Plaintiff's professional contact information is speech of public interest, particularly when considered in the context of the other business information published alongside it, who is publishing that information, and who is viewing it, and (2) that D&B's publication of that information is in furtherance of its speech in connection with a public issue.

In sum, D&B satisfied both steps of the *FilmOn/Geiser* test, demonstrating that Plaintiff's claims fall within (e)(3) and (e)(4) of the anti-SLAPP statute. The district court's decision to the contrary must be reversed.

### D. Plaintiff did not establish a reasonable probability that she will prevail on the merits of her claims under prong two.

Because D&B satisfied its burden on prong one, the burden shifted to Plaintiff to demonstrate she has a "reasonable probability of prevailing [on her] claims." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). That is, Plaintiff must demonstrate that each of her claims is "legally sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). The district court did not reach this question because it incorrectly held that D&B had not satisfied prong one. ER-19. That does not, however, preclude this Court from ruling on this issue and, in the interest of judicial economy and conserving resources, it should do so.[7]

---

[7] *See, e.g.*, *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (recognizing that the court has "'discretion to decide the [anti-

Plaintiff pleaded three causes of action: violation of the California Right of Publicity Statute, Cal. Civ. Code § 3344; common law misappropriation of a name or likeness; and violation of the UCL, Cal. Bus. & Prof. Code § 17200, *et seq*. Each of these speech-related claims, analyzed through the lens of the First Amendment and the limitations it imposes, fails as a matter of law. Accordingly, her Complaint must be struck under the anti-SLAPP statute.

### 1. The First Amendment bars Plaintiff's claims.

The district court correctly recognized—and Plaintiff conceded—that Hoovers is fully protected speech under the First Amendment. ER-14 (D&B Hoovers "'receives full First Amendment protection,' and Batis does not appear to argue to the contrary") (citing and quoting *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012)). This is not surprising as the publication of professional directory information is fully protected by the First Amendment. *See Dex Media*, 696 F.3d at 954 ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Bergen v. Martindale-Hubbell, Inc*., 285 S.E.2d 6, 6-7 (Ga. 1981) (publication of attorney directory protected). Yet the district court concluded publication of the same information in a free trial of the First

---

SLAPP prong two] issue ourselves, since it is subject to independent review'" and reversing the district court's denial of the motion) (quoting *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1195 (2011)).

Amendment-protected work is not equally protected because the free trial is an "advertisement" for that work. *See* ER-18 ("D&B has not demonstrated its advertisements [*i.e.*, free trials] are, as a matter of law, entitled to protection under the First Amendment"). This holding cannot be squared with precedent or the facts of this case.

### a. The information in Hoovers, regardless of whether it is displayed during a free trial, is not commercial speech.

Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980). It is "speech which does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (cleaned up).

No reasonable reading of the evidence D&B submitted to explain how the free trial of Hoovers works can yield the conclusion that Plaintiff's contact information, when delivered in response to a free trial user's search, is an advertisement—*i.e.*, an offer to sell something. It is part and parcel of a publication and is displayed only in response to a user-initiated search. D&B does not manipulate which content within its First Amendment-protected database appears to users during free trials, rather *the user's own search query* determines what is displayed.

More fundamentally, the free trial is not commercial speech because, even though its purpose is in part to convince users to subscribe to the database, it nonetheless promotes a product *that is itself protected speech*. *See Bolger*, 463 U.S. at 67 n.14 (finding pamphlet to be commercial speech, but noting "a different conclusion may be appropriate in a case *where the pamphlet advertises an activity itself protected by the First Amendment*") (emphasis added) (citing *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) (advertisement for religious book cannot be regulated as commercial speech) and *Jamison v. Texas*, 318 U.S. 413 (1943) (same)). *See infra* Section VII.D.2.

Thus, contrary to those cases that "present a close[] question," and thereby trigger application of the multi-factor test outlined in *Bolger*, 463 U.S. at 66-67, this case presents an easy commercial speech analysis. But even when analyzed under the *Bolger* factors, it is clear that the free trial does not constitute commercial speech.

Under *Bolger*, courts can consider various factors to determine how to classify challenged speech, including whether the speech (1) is an "advertising format"; or (2) includes "reference to a specific product"; and (3) whether the speaker has an "economic motivation" for the speech. *Id*; *Dex Media*, 696 F.3d at 958. The district court simply accepted Plaintiff's facially inaccurate allegation that the content of the Hoovers free trial constitutes an "advertisement" for

33

Hoovers and failed to address the remaining considerations under *Bolger*. *See, e.g.*, ER-13. An accurate and complete analysis demonstrates that the free trial is not commercial speech.

Plaintiff characterizes the free trial as "us[ing]" her name and information "to advertise paid subscriptions to the D&B Hoovers database." ER-190 (¶ 11). But "[t]he mere fact that" something could be characterized as an "advertisement[] clearly does not compel the conclusion that [it is] commercial speech." *Bolger*, 463 U.S. at 66. For example, the speech the Supreme Court held to be protected by the First Amendment in the seminal case of *New York Times v. Sullivan* was speech *in an advertisement*. 376 U.S. 254, 266 (1964) (otherwise protected statements "do not forfeit that protection because they were published in the form of a paid advertisement").

More fundamentally, Plaintiff's contention that her contact information is used to "advertise" subscriptions is simply not a reasonable characterization of how and when that information is presented to free trial users. D&B does not showcase Plaintiff's information to advertise Hoovers; Plaintiff's information could appear only as a matter of *happenstance* if a trial user's search query returns it. ER-95 (¶ 13). And if and when it appears, the user is *not* shown a link to subscribe. *See* ER-196-198 (¶¶ 37-39). In short, the free trial information is not

presented in an "advertising format" and thus does not meet the first *Bolger* factor. *See Dex Media*, 696 F.3d at 958.

As to the second factor, there is no "reference to a specific product."  The speech in the free trial is *the same speech* contained in the concededly First Amendment-protected database.  ER-170-171 (¶¶ 22-27); *see also* ER-196-198 (¶¶ 37-39).  That is, the speech Plaintiff challenges is *the same speech* contained in the concededly First Amendment-protected database.  The free trial is the product; it does not *reference* it.

In this way, the Hoovers free trial is similar to the way potential book buyers interact with books on the shelves of a bookstore.  The bookstore allows customers to sample books by taking them off the shelves and perusing the contents.  It would be absurd to suggest the speech in books is commercial speech during that perusal process, becoming protected speech only once someone buys it.  *See, e.g.*, *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) (rejecting right of publicity claim) ("Amazon replicates the [traditional] bookstore experience by providing its customers with online cover images and publisher book descriptions".); *Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 608 (N.Y. Sup. Ct. 2000) ("the challenged statement [on the book cover, the flyleaf, and in the introduction] which is the focus of plaintiffs' claims … explicitly comes from

within the contents of the Book. It cannot be transformed into purely commercial speech simply because of its change in location.").

And as to the third factor, economic motivation by itself is "clearly insufficient" to render speech commercial, as many publishers, like D&B, sell their publications and do not give them away for free. *See Bolger*, 463 U.S. at 67.

In short, the Hoovers free trial does far more than merely "propos[e] a commercial transaction," *see Cent. Hudson*, 447 U.S. at 562; it is a free demonstration of the contents of the database itself. Certainly, D&B hopes that demonstrating its publication will lead to purchases, as do other publishers whose free trial content is plainly protected by the First Amendment, such as magazine and newspaper publishers. That does not, without more, transform free trial content into commercial speech. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) ("A simple profit motive to sell copies of a publication … does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication."); *see also Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1097 (N.D. Cal. 2021) (commercial motivation of third parties accessing a database does not render the database commercial speech).

For these reasons, the free trial is not commercial speech.

      **b.**    **The Hoovers free trial is "inextricably intertwined" with the concededly First Amendment-protected Hoovers database.**

Even if the Court determines that the free trial is somehow commercial speech, the trial is nonetheless protected because it is "inextricably intertwined" with the fully protected Hoovers publication and, therefore, strict scrutiny applies. As the Supreme Court explained, if commercial speech "is inextricably intertwined with otherwise fully protected speech," that speech does not "retain[] its commercial character" for purposes of determining what level of scrutiny applies to regulations of that speech. *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 796 (1988). Courts must view the speech in context and determine whether any "commercial aspects" can be "separated out from the fully protected whole." *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (cleaned up) (speech "intended in part to 'rev up' the magazine's profile" not commercial speech when viewed in context of the whole magazine). If the speech cannot be separated, as it can in a traditional, "simple advertisement," then the speech is not commercial speech. *Id.* at 1186. This gives "due regard for the reality" that sometimes speech, viewed in isolation, seems "related solely to the economic interests of the speaker and its audience," but, when viewed in its full context, it becomes clear it is worthy of full First Amendment protection. *Riley*, 487 U.S. at 796 (cleaned up). That is, the economically-motivated speech is "intertwined with

informative and perhaps persuasive speech." *Id.* It also gives "due regard … for the reality that without solicitation the flow of such information and advocacy would likely cease." *Id.*

Plaintiff's claims fall comfortably within this exception to commercial speech and, therefore, strict scrutiny applies. Speech shown during a free trial of Hoovers is inseparable from (because it is the same as) the speech in the database itself. It is in the same place within the database that it is for a paying subscriber and is accessed in the same way—via a user searching for it. ER-170-171 (¶¶ 22-27). Therefore, the speech cannot be "parcel[ed] out … applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical." *Riley*, 487 U.S. at 796. Indeed, a California federal court reached this conclusion in another case arising from a free trial of an online database. *See Carafano v. Metrosplash, Inc.*, 207 F. Supp. 2d 1055, 1074 (C.D. Cal. 2002), *aff'd on other grounds*, 333 F.3d 1119 (9th Cir. 2003) (holding plaintiff's dating profile shown during free trial of online matchmaking database not commercial speech). Therefore, the "test for fully protected expression" applies. *See id.*

### c. Plaintiff's claims cannot survive strict scrutiny.

This Court has held that, when a right of publicity claim challenges fully protected speech, it must survive strict scrutiny. *See Sarver*, 813 F.3d at 903. That

is, content-based restrictions on First Amendment-protected speech, such as right of publicity claims, are "presumptively unconstitutional" and may be justified only if the plaintiff "can show a compelling state interest in preventing the defendants' speech," *id.* at 906, and that the restrictions are "narrowly tailored to serve" that interest, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Most content-based claims, including Plaintiff's, cannot survive this demanding level of constitutional scrutiny.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) (a finding that a law is content-based is "all but dispositive"). California's right of publicity laws do survive strict scrutiny when applied as intended, but Plaintiff tries to apply those laws to restrict a publisher from demonstrating a First Amendment-protected speech product itself.

Plaintiff concedes her inclusion in Hoovers is not actionable and she "does not seek to prevent publication" of Hoovers.  ER-106.  But her effort to prevent publication of *part* of Hoovers to those who might want to peruse it via a free trial is equally invalid.  Put simply, there is *no* legitimate governmental interest—much less a compelling one—in permitting a person to forbid the use of their professional contact information in a free trial of a publication, where the person has no right to forbid the same information in the publication itself.  *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 (1976) (no state interest permits "suppress[ing] the dissemination of concededly truthful

information about entirely lawful activity"); *Sarver*, 813 F.3d at 905 ("The state has no interest in giving Sarver an economic incentive to live his life as he otherwise would."). To the contrary, the government has a compelling interest in facilitating its citizens' access to lawful information, and publishers' ability to sell it, by permitting publishers to show samples of their First Amendment-protected publications without risking liability.

Even if Plaintiff *could* point to a compelling state interest in allowing her to monetize her name under these factual circumstances, application of right of publicity laws would not be narrowly tailored to achieving that interest because that remedy would infringe on D&B's First Amendment rights to publish the database. Imposing such liability would effectively prohibit D&B from providing free trial access to Hoovers, which, with an information product this sophisticated and valuable, would destroy the market for it. ER-95-96 (¶¶ 14-15).

Because they cannot survive strict scrutiny, Plaintiff's claims should be dismissed.[8]

---

[8] Plaintiff pleaded three causes of action—two right of publicity claims (one common law and one statutory) and a UCL claim. ER-202-205 (¶¶ 61-77). Importantly, Plaintiff's UCL was based on the alleged right of publicity violations. ER-204 (¶ 74). Therefore, if Plaintiff's right of publicity claims fail, so too does her UCL claim. *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1125 (C.D. Cal. 2001) ("To the extent th[e UCL] claim relies on the violations of the rights of publicity … it suffers from the same defects as the initial right of publicity claim."). *See also infra* Section VII.D.5.

40

        **d.**    **Even if free trial access to Hoovers implicates commercial speech, intermediate scrutiny would apply and Plaintiff's claims cannot survive such scrutiny.**

Even if the Court concludes that Plaintiff's government contact information, when viewed by a free trial user, is commercial speech, Plaintiff's claims still fail as a matter of law. Though afforded "lesser protection" than "other constitutionally guaranteed expression," the First Amendment still protects commercial speech. *Cent. Hudson*, 447 U.S. at 562. The degree depends on "the nature both of the expression and of the government interests served by its regulation." *Id.* That is, commercial speech is afforded "qualified but nonetheless substantial protection" under the First Amendment. *Bolger*, 463 U.S. at 68. Courts must conduct a four-step analysis to determine whether commercial speech is constitutionally protected, asking whether (1) the speech "concern[s] lawful activity and [is not] misleading"; (2) "the asserted governmental interest" in restricting it "is substantial"; (3) the restriction "directly advances the governmental interest"; and (4) the restriction is "more extensive than is necessary to serve that interest." *Cent. Hudson*, 447 U.S. at 566.

Plaintiff argues Hoovers is "misleading" because the free trials "suggest Plaintiff and the members of the Class consented to D&B selling their names and contact information." ER-117. She pleads no facts to support this assertion, nor does she plead that any of her information in Hoovers is either unlawful or

misleading.  Moreover, D&B's evidence demonstrates that the free trial of Hoovers does *not* suggest individuals in the database either endorse Hoovers or consented to the inclusion of their information therein.  ER-96 (¶ 16).

Where, as here, "the communication is neither misleading nor related to unlawful activity," there must be "a substantial interest to be achieved" by restricting the speech.  *Cent. Hudson*, 447 U.S. at 563.  Moreover, the restriction "must be in proportion to that interest."  *Id.*  Plaintiff argues California has a "substantial interest in enabling its citizens to protect the non-consensual commercial exploitation of their likenesses without overbroadly prohibiting commercial speech."  ER-117 (quoting *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 880 (W.D. Wash. 2021)).  The district court, however, did not address whether the State has any interest—let alone a substantial one—in regulating D&B's speech.

It does not.  As discussed above, prohibiting D&B from displaying the business contact information for individual professionals in Hoovers would effectively prevent D&B from offering any free trials of its Hoovers publication. Moreover, there is no reasonable "fit" between California's goal of preventing unauthorized commercial endorsements and permitting liability in this case, liability that would effectively bar D&B from marketing the *fully protected* Hoovers database.  *See United Bhd. of Carpenters v. NLRB*, 540 F.3d 957, 969 (9th

42

Cir. 2008) ("[A] regulation that forecloses an entire medium of public expression across the landscape of a particular community or setting fails to leave open ample alternatives."); *Stutzman v. Armstrong*, No. 2:13-CV-116-MCE-KJN, 2013 U.S. Dist. LEXIS 129204, at *54-55 (E.D. Cal. Sept. 9, 2013) ("publishing companies and authors must promote the books they publish and write in order to sell them").

In short, such a sweeping application of right of publicity laws goes beyond what is necessary to serve the legitimate state interest in allowing people to monetize their personas for purposes of advertising and merchandising.

> **2. Even if the Hoovers free trial could be fairly characterized as an "advertisement," it is an "adjunct" of the underlying database and receives the same level of First Amendment protection.**

Because the Hoovers database is fully protected speech under the First Amendment, the free trial of that database—even if considered an advertisement—is an adjunct of the database itself and is entitled to the same level of constitutional protection. *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) ("advertising for the purpose of indicating the content of the publication … is protected by the First Amendment"); *see also Bolger*, 463 U.S. at 67 n.14 (recognizing that speech that "advertises an activity itself protected by the First Amendment" is not amenable to the ordinary rules governing commercial speech).

This long-recognized limitation on liability for advertisements for protected works serves an important First Amendment purpose. The adjunct advertising

exception "prevent[s] tort actions from choking the truthful promotion of protected speech," without which "publishers would be unable to truthfully advertise certain protected works." *Charles v. City of L.A.*, 697 F.3d 1146, 1153-54, 1155 (9th Cir. 2012); *see, e.g.*, *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) ("[A]dvertisements of expressive works are not actionable where the advertisements are 'merely an adjunct of the protected work and promote only the protected work.'") (cleaned up); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 862 (2018) (First Amendment protection extends to truthful use of name and likeness in advertising that is "merely an adjunct of the protected publication"); *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise."); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) (filmmaker's use of photographs of actor to promote fictional work "merely an adjunct to the exhibition of the film") (citation omitted); *Cher*, 692 F.2d at 639 ("Forum would have been entitled to use Cher's picture and to refer to her truthfully in subscription advertising for the purpose of indicating the content of the publication … because such usage is protected by the First Amendment.").

The district court refused to apply this principle to the free trial of Hoovers, ruling that the exception applies only when the underlying protected works are

sufficiently "expressive," without further elaboration. ER-15 (doctrine is meant to "'ensure that First Amendment-protected expression is not unduly chilled by the threat of tort actions that would otherwise prevent the truthful promotion of protected <u>expressive</u> works'") (quoting *Charles*, 697 F.3d at 1153) (district court's emphasis). The court then declined to rule on whether Hoovers is sufficiently "expressive" to qualify for the exception. ER-15-16 ("dismissal under Rule 12(b)(6) based on First Amendment immunity is improper at this stage of the proceedings" because Complaint did not allege facts showing Hoovers was expressive).

The court's ruling should be reversed because (1) the adjunct advertising doctrine is not limited to advertisements for First Amendment-protected works that are sufficiently "expressive" in the eyes of a court or jury; and (2) even if it were so limited, the evidence submitted by D&B in support of its anti-SLAPP motion demonstrates that the Hoovers database is expressive.

> **a.** **The district court misread *Charles* as barring application of the adjunct advertising doctrine here; in fact, *Charles compels* its application.**

The district court interpreted *Charles* as holding the adjunct advertising doctrine applies only to "expressive" works. It did not. *Charles* simply held that the doctrine did not bar application of a city sign ordinance to a billboard advertising a television show, because the ordinance was a generally applicable,

content-neutral restriction on commercial speech that allowed alternative avenues to advertise the show.[9] Here, however, Plaintiff's claims seek to impose content-based speech restrictions that would choke D&B's ability to market Hoovers. *See* ER-96 (¶ 15).

In *Charles*, this Court noted the adjunct advertising exception was intended to prevent *tort claims* against certain commercial speech, and that the exception does not apply to generally applicable, content-neutral ordinances regulating such speech. 697 F.3d at 1155 ("That the law extends special protection to advertisements for First Amendment-protected works in the context of certain *tort actions* … does not support a sweeping rule that advertisements for protected speech are 'noncommercial' *in all contexts*.") (emphases added). In declining to apply the exception to the city's "broadly applicable" and content-neutral sign ordinance, this Court explained the reason for the exception:

> "[A]dvertising to promote a news medium … is not actionable under an appropriation of publicity theory so long as the advertising does not falsely claim that the public figure endorses that news medium." … *Serious First Amendment concerns would otherwise be raised, as news publications would be blocked from advertising their contents for fear of tort liability.*

---

[9] Moreover, the proposed billboard did not incorporate any of the underlying constitutionally protected material from the show.

*Id.* at 1154 (emphasis added) (quoting *Cher*, 692 F.2d at 639). In that regard, the Court noted the ordinance would not prevent plaintiffs from truthfully advertising by other means. *Id.* at 1156.

In contrast to *Charles*' holding regarding a generally applicable sign ordinance, Plaintiff is seeking content-based imposition of tort liability with respect to the Hoovers free trial. Further, in this case, denying application of the adjunct advertising exception *would* threaten D&B's ability to publicize its protected speech. D&B cannot convince customers to buy a subscription if it cannot show them, in a free trial, the database's content and search features. *See* R-96 (¶ 15). Depriving D&B of the ability to market Hoovers would essentially strip First Amendment protection from the database itself. Such a result is at odds with First Amendment jurisprudence. *See Guglielmi*, 25 Cal. 3d at 873 ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise.").

Contrary to the district court's ruling, this Court did not hold in *Charles* that First Amendment-protected works must be sufficiently "expressive" in nature for advertisements incorporating their content to be protected. There is no principled basis for treating a comprehensive database of business and government information differently than other types of First Amendment protected works, and

this Court rejected a similar attempt to afford lesser protection to factual compilations in *Dex Media*. 696 F.3d at 964, 965.

In *Dex Media*, the Court struck down a Seattle ordinance restricting the distribution of telephone directories such as the yellow pages, after finding the directories were fully protected speech. *Id.* at 953-54. The lower court had ruled the directories were commercial speech because they carried advertisements. *See id.* The court drew a distinction between the directories and other works such as newspapers that carry ads, yet receive full First Amendment protection. *Id.* at 956. Unlike the directories, the district court reasoned, "'newspapers have played an historic role in our democracy as conveyors of individual ideas and opinions … and are at the heart of historical justification for freedom of the press.'" *Id.* at 964.

This Court properly rejected that analysis:

> [E]ven if there is an intuitive distinction between yellow pages directories and protected media like newspapers, it does not necessarily follow that the First Amendment sanctions differential treatment on that basis.
>
> …
>
> Both newspapers and yellow pages directories contain noncommercial speech; *a distinction in treatment on the basis of the perceived difference in worthiness of that noncommercial speech is not permitted*.

*Id.* at 964-65 (emphasis added). Yet the district court did precisely that. It concluded that cases applying the adjunct advertising doctrine are "readily distinguishable" from this case because they involved "expressive works"—

48

movies, magazines, television programs, and paintings. ER-16 (citing *De Havilland*; *Cher*; *Daly*; *Guglielmi*; *Int-Elect Eng'g, Inc. v. Clinton Harley Corp.*, No. C-92-20718 JW, 1993 U.S. Dist. LEXIS 11510 (N.D. Cal. June 24, 1993); *Page v. Something Weird Video*, 960 F. Supp. 1438 (C.D. Cal. 1996)). In other words, the district court declined to apply the adjunct advertising doctrine because of a "perceived difference in worthiness" between Hoovers, a factual business publication, and what the court considers "expressive" content—films, books, newspapers, and the like. This was error. *Dex Media*, 696 F.3d at 964-65 ("'The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits.'") (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)).

In sum, the district court's ruling on the adjunct advertising exception was not rooted in *Charles* or any other Ninth Circuit authority, and it sanctions differential First Amendment treatment based on an apparent judgment regarding the lack of "worthiness" of the speech in Hoovers. The ruling should be reversed.

### b. The district court's failure to consider D&B's evidence was also erroneous.

Even if the adjunct advertising doctrine could be limited to ads for works that are sufficiently "expressive," Hoovers would qualify. The district court did not consider any of D&B's detailed evidence regarding Hoovers' content because

the court did not reach the merits of D&B's anti-SLAPP motion. That uncontradicted evidence should have been considered.

As set forth above, D&B submitted declarations from its then-Chief Product Officer, Karlos Palmer, explaining that Hoovers is a comprehensive, searchable publication containing data and analytics about businesses, government entities, and other organizations. ER-165-166 (¶¶ 6-8). Users can search any terms they wish and business contact information for individuals is cross-referenced with information about that person's company or industry events. ER-168-170 (¶¶ 17-18, 21, 23). In short, Hoovers is as "expressive" as newspapers or magazines or other kinds of published content.

As to Hoovers' business contact profiles themselves, they are expressive because they are a transformative use of the underlying information—Hoovers takes disparate pieces of data to create a comprehensive picture of a business. *See supra* Section VII.D.3 Contact information for the professionals working at the business is part of that data. The district court did not consider D&B's evidence demonstrating that Hoovers (and thus its free trial) is indisputably an expressive, transformative work. Therefore, the court's ruling declining to apply the adjunct advertising doctrine should be reversed.

50

### 3. D&B's use of Plaintiff's business information is protected under California's transformative use exception.

The district court declined to find that the free trial is a transformative use of Plaintiff's information, because facts supporting this defense did not appear on the face of the Complaint. ER-16. Again, the district court should have considered D&B's evidence. If this Court determines the transformative use analysis applies to Plaintiff's claims, D&B's evidence shows the free trial easily fits within this exception.

The transformative use defense to publicity claims was developed in *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001). The California Supreme Court held that a work can be subject to a right of publicity claim if it is a "literal depiction or imitation of a celebrity for commercial gain … without adding significant expression," *id.* at 405, put differently, if it is simply a raw copy of, and not a "transformative use" of, the plaintiff's persona, *id.* at 406. If the use of persona is sufficiently transformative, it is protected by the First Amendment.

*Comedy III* involved celebrities, the traditional focus of right of publicity claims, and thus the transformative use test is primarily applied to publicity claims involving celebrities. *See, e.g.*, *id.* at 393 (t-shirts of Three Stooges); *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 50-51 (2006) (alleged use of persona of Deee-Lite's lead singer in video game); *Hilton*, 599 F.3d at 899 (use of Paris Hilton's

51

name and likeness in greeting card); *De Havilland*, 21 Cal. App. 5th at 850 (use of actress's name and persona in docudrama). It is ill-suited for this case where plaintiff's persona has no independent economic value. *See* J. McCarthy, *The Rights of Publicity and Privacy* § 8:72, p. 264 (2016 Thomson Reuters) ("In the author's view, the 'transformative' test is restricted to the kind of case the court was faced with [in *Comedy III*]: an artistic visual depiction of a celebrity image.").[10]

But if the test is applied, the speech at issue is protected because Hoovers is a transformative work. "[T]he transformative elements or creative contributions" to the use of persona "that require First Amendment protection … can take many forms," including, as here, "factual reporting." *Comedy III*, 25 Cal. 4th at 406; *see also, e.g.*, *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410, 413 (2001) (holding First Amendment protected Major League Baseball's use of "factual data concerning its players, their performance statistics, and verbal descriptions and video depictions of their play"). Hoovers takes the "raw materials" of certain aspects of persona and adds something new. It does not

---

[10] Further, there is no need to apply the transformative use test where, as here, the application of right of publicity laws would fail strict scrutiny. *Sarver*, 813 F.3d at 904 n.6 (where plaintiff's right of publicity claims did not survive strict scrutiny, "[w]e need not and do not reach the question of whether [the transformative use] defense applies in this case").

merely publish a static listing of this information. It curates factual information about professionals and companies, and publishes that information dynamically by organizing the data in different ways in response to search queries. Moreover, business contact information for a particular professional is not displayed alone. It is linked with information about that person's company and industry. And users are not limited to searching for a professional's name on Hoovers, as the Complaint suggests. They can enter a combination of search terms that also references, for example, an industry or service. ER-168-170 (¶¶ 17-18, 21, 23). Moreover, Plaintiff's contact information is only one small snippet, among millions of others' titles and contact information, and other kinds of business and industry data that users may search and sort.

And the same thing that makes the *subscription* database transformative makes the *free trial* of that database transformative. This transformative use of Plaintiff's persona is the exact same whether shown to a paying subscriber or a free trial user. For these reasons, the Hoovers free trial readily meets the transformative use test.

**4.** **Plaintiff's claims fail under state law as well because the Hoovers free trial is subject to the public interest exception to right of publicity claims.**

The speech in Hoovers' free trial concerns matters of public interest and is exempt from liability under California's right of publicity statute and the common

law.  The district court's ruling that the free trial does not qualify for this exception should be reversed, because the court improperly based its ruling solely on the fact the free trial is offered for a promotional purpose.  The court failed to conduct the balancing test required by law, which shows that the Hoovers free trial should be immune from liability.

Under common law and statutory right of publicity claims, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it.'"  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (quoting *Montana v. San Jose Mercury News, Inc*, 34 Cal. App. 4th 790, 793 (1995)).[11]  The terms "public interest" and "public affairs" are to be construed broadly and are "intended to mean something less important than news."  *See Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th, 536, 545 (1993).  The defense is not merely coextensive with First Amendment protection; it is broader because it "is designed to avoid First Amendment questions in the area of misappropriation by providing *extra breathing space* for the use of a person's name in connection with matters of public interest."

---

[11]  Courts considering both common law and statutory public interest exceptions usually "either analyze them together or reach the same outcome on both."  *Scott v. Citizen Watch Co. of Am., Inc.*, No. 17-cv-436-NC, 2018 U.S. Dist. LEXIS 57672, at *16 (N.D. Cal. Apr. 4, 2018).  In this brief the exception will be labeled the "public interest exception."

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) (emphasis added).

In determining whether the public interest exception applies, courts apply a balancing test. First, courts "consider the nature of the precise information conveyed and the context of the communication to determine the public interest in the expression." *Gionfriddo*, 94 Cal. App. 4th at 410. The public interest is then weighed against the plaintiff's interests. *Id.*

In *Gionfriddo*, retired baseball players sued defendants in a putative class action for using their names, likenesses, and statistics on the MLB website. The site featured rosters, box scores, game summaries, lists of award winners, and data about individual players. *Id.* at 405-10. The court found "[t]he recitation and discussion of factual data concerning the athletic performance of these plaintiffs commands a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection." *Id.* at 411. The plaintiffs' interests did not outweigh this substantial public interest in the data, as "[p]laintiffs never suggest how [defendants'] actions impair their economic interests." *Id.* at 415.

Similarly, the data in Hoovers provides a comprehensive overview of the business world, which commands a substantial public interest. *See William O'Neil & Co. v. Validea.com, Inc.*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (right of publicity claims based on book about investing subject to public affairs exception;

55

"there is extraordinary interest in the financial world and in the stock market"). The contact information in Hoovers is not offered in isolation but is paired with news and other information about each professional's company and industry, helping users make business decisions and conduct business-to-business outreach, thereby facilitating commerce. The contact information also allows viewers to identify and contact government officials and public figures, including elected representatives, government professionals (including Plaintiff), company CEOs, and other executives. The identities and employment of these individuals are of public interest. And importantly, the Hoovers trial is freely available to members of the public; they have access to virtually the same information in the database as paying subscribers.

Plaintiff's interests in preventing viewers of the free trial from seeing her professional contact information do not outweigh the legitimate public interest in accessing this information. Plaintiff has not pleaded in anything but conclusory terms an economic interest in her persona that is harmed by providing access to her name, title and work telephone number, or mental injury flowing therefrom. Nor did she provide any evidence of such in opposition to D&B's motion. Because Plaintiff's asserted interests do not outweigh the public interest in the free trial of Hoovers, Plaintiff's right of publicity claims fail as a matter of law.

56

The district court ruled the free trial was not subject to the public interest exception, solely because the free trial is offered, in part, for a promotional purpose. ER-13 ("Even information 'of public interest' … 'may be [a] subject[] of § 3344 liability when published for commercial rather than journalistic purposes.'") (alterations in original) (quoting *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 792, 805 (N.D. Cal. 2011). The court's determination that a commercial purpose removes the free trial from the public interest exception is error. *See Montana*, 34 Cal. App. 4th at 797 (advertisement for newspaper exempt under public interest exception); *De Havilland*, 21 Cal. App. 5th at 861-62 (advertisement for docudrama exempt).

The district court relied on several cases in holding that speech with a promotional purpose does not qualify for the exception. ER-13. However, they contradict California law or are otherwise distinguishable. *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760, 762 (N.D. Ill. 2020), involved an Illinois statute with a public interest exception that expressly exempted "commercial advertisement(s)"; and the court determined that the free previews offered by defendants were advertisements. *Fraley*, 830 F. Supp. 2d at 792, 805, and *Abdul-Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir. 1996), are distinguishable because there the defendants were implying the plaintiffs endorsed separate products. Only two cases, *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008, 1031 (D.

Nev. 2021), and *Martinez*, 2022 U.S. Dist. LEXIS 66673, at *1, *16, involved a database's use of names to publicize the database itself.

In *Sessa*, the court held without discussion that "Ancestry's use of [plaintiffs'] likenesses in connection with advertising is not within the scope of 'public affairs.'" 561 F. Supp. 3d at 1031. The *Sessa* court relied only on *Fraley*, a case which was distinguishable from the facts of *Sessa*, and the court's conclusion was unsupported by any other authority. *Martinez* involved "teaser profiles" that come up in search results when someone types the plaintiff's name in a search engine. 2022 U.S. Dist. LEXIS 66673, at *1. But people viewing the teaser profiles had access to an extremely limited portion of the database, unlike here where free trial users have nearly full access. *Martinez* is inapposite.

Under California law, even content that has a promotional purpose, including advertisements, qualify for the public interest exception. *See Montana*, 34 Cal. App. 4th at 797 (advertisement for newspaper exempt under public interest exception); *De Havilland*, 21 Cal. App. 5th at 861-62 (advertisement for docudrama exempt).

Thus, the district court's ruling that the public interest exception does not apply should be reversed.

**5.  Plaintiff's UCL claim must be dismissed because it is derivative of her inadequate right of publicity claims, and for the additional reason that Plaintiff cannot demonstrate she lost "money or property."**

Plaintiff's UCL claim under Cal. Bus & Prof. Code § 17200, *et seq.*, is based on the same factual allegations as her right of publicity claims, and therefore must be dismissed for the reasons stated above.  *See Local TV, LLC v. Super. Ct.*, 3 Cal. App. 5th 1, 14 (2016) (UCL claim subject to dismissal along with claim for misappropriation of name and likeness); *Kirby*, 144 Cal. App. 4th at 61 (right of publicity claims barred by First Amendment and, as a result, UCL claim also failed); *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 690 (2010) ("The only injury alleged … is one based on damage to reputation occurring as a result of the misappropriation of their identities," and "[a]s we have concluded no actionable misappropriation occurred, plaintiffs cannot show a reasonable probability of prevailing on … their UCL claim."); *Hoffman*, 255 F.3d at 1189 n.4 (UCL claim dismissed along with right of publicity claims based on First Amendment defense).

The UCL claim also must be dismissed for the independent reason that Plaintiff did not (and cannot) demonstrate she lost "money or property" as a result of D&B's free trial offer, as required by Cal. Bus. & Prof. Code § 17204.  *See Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1098 (N.D. Cal. 2011) (dismissing UCL claim for failure to allege loss of money or property, and because UCL claim

was derivative of inadequate right of publicity and Lanham Act claims). In *Fraley*, the court held that, "[t]o the extent Plaintiffs allege[d] they can prove that their endorsement of commercial products to their Facebook Friends has concrete, quantifiable value for which they are entitled to compensation," the Court found they "properly alleged loss of money or property for purposes of establishing standing under the UCL." 830 F. Supp. 2d at 812. But as discussed in Section VII.D.4. above, Plaintiff did not come forward with evidence demonstrating her name was used to suggest she endorsed Hoovers, or that her identity otherwise has any "concrete, quantifiable" economic value, *see supra* note 1.[12]

For these reasons, the UCL claim must be dismissed.

### 6. Plaintiff does not have Article III standing.

To have Article III standing, one "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Plaintiff has not established an injury in fact.

---

[12] Plaintiff cannot meet this requirement by alleging her entitlement to statutory damages under Civil Code § 3344. *See Fraley*, 830 F. Supp. 2d at 812 ("[T]o the extent Plaintiffs rely on the $750 minimum statutory damages award under § 3344, the California Supreme Court has recently made clear that a mere 'expectation interest' in a statutory damage award is not a 'vested interest' for purposes of stating a claim for restitution under the UCL.") (quoting *Pineda v. Bank of America*, 50 Cal. 4th 1389, 1401-02 (2010)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). And for an injury to be concrete, it "must be 'de facto'; that is, it must actually exist" and be "'real,' and not 'abstract.'" *Id.* at 340 (citations omitted).

Plaintiff does not assert injury from the inclusion of her information in Hoovers, but rather from having her information appear to a free trial user running a search query. *See* ER-190 (¶ 8). Therefore, she must "plausibly and clearly allege a concrete injury" by pleading sufficient facts to substantiate that her information is not only available to, *but also has been viewed by*, a Hoovers free trial user. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020); *Spokeo*, 578 U.S. at 338.

Plaintiff's bare assertion that "[u]sers who sign up for a free trial of the D&B Hoovers database may view, and have viewed" her information is insufficient. *See* ER-190 (¶ 8). This is nothing more than a legal conclusion that Plaintiff has Article III standing "couched as a factual allegation" which courts "are not bound to accept as true" when analyzing standing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (cleaned up).  In any event, a complaint does not "suffice" to plausibly plead facts "if it tenders naked assertion[s] devoid of 'further factual enhancement.'"  *Id.* at 678 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Plaintiff's allegation falls short because there is no way to tell whether users *other than Plaintiff and her lawyers* have viewed Plaintiff's information.  If Plaintiff and her lawyers are the only "users" referenced in Paragraph 8 of the Complaint, Plaintiff has not sufficiently alleged Article III injury.

Further, Plaintiff has failed to sufficiently allege either economic or mental harm.  Other circuits and district courts within this circuit have held that "a plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."  *Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) (citing *In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-1382, 2013 U.S. Dist. Lexis 171124, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own"); *Del Vecchio v. Amazon.com, Inc.*, No. C11-366RSL, 2012 U.S. Dist. LEXIS 76536, at *4 (W.D. Wash. June 1, 2012) ("It is not enough to allege only that the information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment.")).  Plaintiff did not plead she

has lost money as a result of D&B's conduct and, thus, she has not pleaded economic harm.

Finally, Plaintiff alleges she has suffered mental harm in that D&B's free trial left her "distressed," "deeply uncomfortable," "worried and uncertain," and "disturbed her peace of mind." ER-189 (¶ 3), ER-199-200 (¶¶ 48-49). This is insufficient. Although "injury suffered from an appropriation of the attributes of one's identity may be mental and subjective," this Court has stated that such injury must reach a high threshold to qualify—it must be "in the nature of humiliation, embarrassment, and outrage." *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 (9th Cir. 1974) (cleaned up). Plaintiff does not allege humiliation, embarrassment, or outrage due to the availability of her information to a Hoovers free trial user. Nor could she plausibly do so given the information is admittedly true and publicly available outside of Hoovers, and her alleged harm rests not on the nature of the information published, the identity of who accessed it, or even the fact that the information is available to others at all, but rather on nothing more than the fact that the potential viewer of the information is a Hoovers free trial user.

Moreover, Plaintiff cannot have it both ways in acknowledging (as she must) that D&B's speech in Hoovers is protected by the First Amendment, but claiming that same speech is not protected when displayed in the free trial. It is simply not

plausible that she would be emotionally upset by the fact that a free trial user's search query might result in the display of her information as it is displayed to Hoovers subscribers, but she is not emotionally upset when it is a person accessing Hoovers through a subscription seeing that exact same information.

In sum, Plaintiff's allegations fail to establish Article III standing and, therefore, she cannot establish a reasonable likelihood of success on the merits for this independent, alternative reason. Her claims should be dismissed with prejudice.[13]

---

[13] Merits dismissal is appropriate, even where Article III jurisdiction is lacking, if the merits are "plainly insubstantial," *Norton v. Mathews*, 427 U.S. 524, 532 (1976), such as where this court's own prior case law "foreordains" the outcome on the merits, *Bakalian v. Cent. Bank of the Republic of Turk.*, 932 F.3d 1229, 1236 (9th Cir. 2019). That is the case here. Plaintiffs' claims are barred by the First Amendment. The Court can also decide the jurisdictional question in the alternative. *Greensprings Baptist Christian Fellowship Tr. v. Cilley*, 629 F.3d 1064, 1066 n.1 (9th Cir. 2010) ("Nothing in *Steel Co*. bars a court from addressing a thorny threshold jurisdictional question, even if the merits question lends itself to straightforward resolution.").

## VIII.  **CONCLUSION**

Plaintiff's putative class action challenging D&B's hypothetical display of her professional contact information to a Hoovers' free trial user is a SLAPP suit designed to thwart lawful, First Amendment-protected speech of legitimate public interest.  Accordingly, this Court should reverse the district court's decision and grant D&B's motion to strike Plaintiff's Complaint.

Respectfully submitted,

/s/ Michael R. O'Donnell

Michael R. O'Donnell
Michael P. O'Mullan
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Email: MODonnell@RIKER.com
Email: MOMullan@RIKER.com

and

Ashley I. Kissinger
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Email: KissingerA@ballardspahr.com

Elizabeth L. Schilken
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Email: SchilkenE@ballardspahr.com

Emmy Parsons
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Telephone: 202.661.2200
Email: ParsonsE@ballardspahr.com

## STATEMENT OF RELATED CASES UNDER CIRCUIT RULE 28-2.6

Although the facts in this case are different, in that the challenged speech here arises from a free trial of a concededly First Amendment-protected publication, this case raises similar issues to those raised in another putative right of publicity class action case pending in this Court, *Martinez v. ZoomInfo Technologies, Inc.*, No. 22-35305. This Court heard oral argument in the *Martinez* case on April 14, 2023.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-15260

I am the attorney or self-represented party.

**This brief contains <u>13,989</u> words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>  s/Michael R. O'Donnell             </u> **Date** <u>06/16/2023</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

68

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 16, 2023          By: /s/ Michael R. O'Donnell
                                  Michael R. O'Donnell, Esq.

# CONSTITUTIONAL AND STATUTORY ADDENDUM

## <u>CONSTITUTIONAL AND STATUTORY PROVISIONS</u>

U.S. Const. amend. I ............................................................Add. 1

Cal. Code Civ. Proc. § 425.16 .........................................Add. 2

Cal. Civ. Code § 3344.......................................................Add. 5

## **U.S. Const. amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

## <u>Cal. Code Civ. Proc. § 425.16</u>

(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

(b)

(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c)

(1) Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(2) A defendant who prevails on a special motion to strike in an action subject to paragraph (1) shall not be entitled to attorney's fees and costs if

that cause of action is brought pursuant to Section 11130, 11130.3, 54960, or 54960.1 of the Government Code, or pursuant to Chapter 2 (commencing with Section 7923.100) of Part 4 of Division 10 of Title 1 of the Government Code. Nothing in this paragraph shall be construed to prevent a prevailing defendant from recovering attorney's fees and costs pursuant to Section 7923.115, 11130.5, or 54960.5 of the Government Code.

(d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or

(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

(h) For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner," and "defendant" includes "cross-defendant" and "respondent."

(i) An order granting or denying a special motion to strike shall be appealable under Section 904.1.

(j)

(1) Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by email or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

(2) The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media.

## Cal. Civ. Code § 3344

(a) Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

(b) As used in this section, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable.

(1) A person shall be deemed to be readily identifiable from a photograph when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use.

(2) If the photograph includes more than one person so identifiable, then the person or persons complaining of the use shall be represented as individuals rather than solely as members of a definable group represented in the photograph. A definable group includes, but is not limited to, the following examples: a crowd at any sporting event, a crowd in any street or public building, the audience at any theatrical or stage production, a glee club, or a baseball team.

(3) A person or persons shall be considered to be represented as members of a definable group if they are represented in the photograph solely as a result

of being present at the time the photograph was taken and have not been singled out as individuals in any manner.

(c) Where a photograph or likeness of an employee of the person using the photograph or likeness appearing in the advertisement or other publication prepared by or in behalf of the user is only incidental, and not essential, to the purpose of the publication in which it appears, there shall arise a rebuttable presumption affecting the burden of producing evidence that the failure to obtain the consent of the employee was not a knowing use of the employee's photograph or likeness.

(d) For purposes of this section, a use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required under subdivision (a).

(e) The use of a name, voice, signature, photograph, or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision (a) solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the person's name, voice, signature, photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision (a).

(f) Nothing in this section shall apply to the owners or employees of any medium used for advertising, including, but not limited to, newspapers, magazines, radio and television networks and stations, cable television systems, billboards, and transit ads, by whom any advertisement or solicitation in violation of this section is published or disseminated, unless it is established that such owners or employees had knowledge of the unauthorized use of the person's name, voice, signature, photograph, or likeness as prohibited by this section.

(g) The remedies provided for in this section are cumulative and shall be in addition to any others provided for by law.