No. 23-15260

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ODETTE R. BATIS,

*Plaintiff-Appellee*,

v.

DUN & BRADSTREET HOLDINGS, INC.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the U.S. District Court for the Northern District of California
No. 3:22-cv-01924-MMC
Hon. Maxine M. Chesney, District Judge

---

## ANSWERING BRIEF FOR PLAINTIFF-APPELLEE
## ODETTE R. BATIS

---

Ben Osborn
LAW OFFICE OF BENJAMIN R.
OSBORN
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Michael F. Ram (SBN 104805)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293
mram@forthepeople.com

*Attorneys for Plaintiff-Appellee*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ............................................................ v

INTRODUCTION ....................................................................... 1

    I.    The D&B Hoovers Service ................................................. 1

    II.   D&B's Commercial Use of Plaintiff's Persona ...................... 2

    III.  Plaintiff's Claims ............................................................ 4

    IV.  D&B's Anti-SLAPP Motion ............................................. 4

JURISDICTIONAL STATEMENT ................................................... 5

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................... 6

STANDARD OF REVIEW ............................................................. 7

STATEMENT OF THE CASE AND PROCEDURAL HISTORY ............ 7

    I.    Factual Background ......................................................... 7

    II.   Procedural History .......................................................... 7

SUMMARY OF ARGUMENT ........................................................ 8

ARGUMENT ............................................................................... 9

    I.    This Court Lacks Jurisdiction to Review the Denial of D&B's Anti-SLAPP Motion. ......................................................... 9

        A.   Interlocutory appeal is not available because the exceptions for commercial speech and suits in the public interest apply. ................. 10

        B.   The Court should revisit Batzel in light of *Will* and rule that interlocutory appeals of anti-SLAPP denials are not available in federal court. ....................................................................... 13

II.     If This Court Accepts Interlocutory Appeal, It Should Affirm the District
        Court's Denial of D&B's Anti-SLAPP Motion. .......................................14

    A.      D&B failed to carry its burden of showing speech in connection with
            a public issue. ....................................................................................15

        1.      D&B failed to show Plaintiff's teaser profile contributes to public
                discussion on any cognizable "public issue." ................................15

        2.      D&B's belated attempt to redefine the "public issue" it presented
                to the district court does not change the analysis...........................20

        3.      D&B cited no evidence in support of its anti-SLAPP motion, but
                even if it had, the attachments it now cites would not change the
                result. ..............................................................................................22

        4.      The district court applied the two-step *FilmOn* analysis D&B says
                it should have. ................................................................................24

        5.      D&B's assertion that Plaintiff waived the ability to request
                discovery is duplicitous and wrong.................................................27

    C.      The anti-SLAPP denial should be affirmed because Plaintiff made a
            prima facie showing of minimal merit. ................................................31

        1.      D&B failed to carry its burden of showing its First Amendment
                defense undermines the required minimal merit..............................34

            a.  Plaintiff disputes the factual assertions on which D&B's First
            Amendment defense relies. ...........................................................35

            b.  Even were D&B's unsupported assertions undisputed, D&B
            would not have carried its burden of showing its First Amendment
            defense undermines Plaintiff's showing of minimal merit. ...........36

                i.  Even were Plaintiff's claims challenging the D&B
                Hoovers product itself, intermediate scrutiny would apply.36

                ii.  Intermediate scrutiny applies because Plaintiff challenges
                only the teaser profile advertisements, which do not inherit
                whatever First Amendment protection applies to the product.
                40

iii. As many district courts have held in similar cases, Plaintiff's claims easily survive intermediate scrutiny. ........44

iv. D&B failed to carry its burden of showing its teaser profiles qualify as a transformative use. .............................49

2.      D&B failed to carry its burden of showing the public interest exception to section 3344 undermines the required minimal merit. ......................................................................................50

3.      D&B failed to carry its burden of showing its UCL argument undermines the required minimal merit. ........................................53

4.      D&B failed to carry its burden of showing its standing argument undermines the required minimal merit. ........................................54

CONCLUSION ................................................................................57

CERTIFICATE OF COMPLIANCE .....................................................59

STATEMENT OF RELATED CASES ....................................................60

ADDENDUM ...................................................................................61

iv

# TABLE OF AUTHORITIES

## Cases

*Albanese v. Menounos*,
   218 Cal. App. 4th 923 (2013) ............................................................23

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ....................................................... 40, 41, 43

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................32

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001)......................................................................36

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .............................................. 6, 13, 31

*Bd. of Trustees, State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989)...................................................... 40, 42, 45, 48

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983)........................................................................41

*Bonilla v. Ancestry.com*,
   574 F. Supp. 3d 582 (N.D. Ill. Dec. 7, 2021) ....................................33

*Boshears v. PeopleConnect*,
   No. 21-cv-01222-MJP, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022)... 14, 33, 44, 46, 48

*Breazeale v. Victim Servs., Inc.*,
   878 F.3d 759 (9th Cir. 2017) ...............................................................5

*Callahan v. Ancestry.com, Inc.*,
   2021 WL783524 (N.D. Cal. Mar. 1, 2021) ................................. 14, 33

*Callahan v. PeopleConnect*,
 No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021).... 14, 30, 33, 52, 53, 55

*CALPERS v. Moody's Investors Service, Inc.*,
 226 Cal. App. 4th 643 (2014) ...........................................................27

*Camacho v. Control Grp. Media Co.*,
 No. 21-cv-1954-MMA (MDD), 2022 WL 3093306 (S.D. Cal. July 18, 2022) 15, 33, 43, 48

*Collier v. Harris*,
 192 Cal. Rptr. 3d 31 (2015) ...............................................................32

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
 25 Cal. 4th 387 (2001) ................................................................ 49, 50

*Davis v. Elec. Arts Inc.*,
 775 F.3d 1172 (9th Cir. 2015) ........................................... 34, 50, 56

*Davis v. Facebook, Inc.*,
 956 F.3d 589 (9th Cir. 2020) .............................................................56

*De Havilland v. FX Networks, LLC*,
 21 Cal. App. 5th 845 (2018) ....................................................... 38, 50

*Dex Media West, Inc. v. City of Seattle*,
 696 F.3d 952 (9th Cir. 2012) ..................................................... 38, 40

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001) ..................................................... 51, 54

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
 472 U.S. 749 (1985)......................................................... 19, 37, 38, 39

*Eastwood v. Superior Ct.*,
 149 Cal. App. 3d 409 (1983) ...............................................................4

*Facenda v. N.F.L. Films, Inc.*,
 542 F.3d 1007 (3d Cir. 2008) ............................................................42

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal.5th 133 (2019) ............................................................................18

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011)................................. 51, 52, 55

*Gabiola v. Sarid*,
    No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017).......................33

*Geiser v. Kuhns*,
    13 Cal. 5th 1238 (2022) ......................................................... 24, 25, 26

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) ..............................................................52

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ................................... 15, 17, 21, 23, 26, 35, 49, 51

*In re Google, Inc. Privacy Policy Litig.*
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)......................................56

*In re Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. 2010) ......................................... 20, 22, 25, 53

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*,
    140 Cal. App. 4th 515 (2006) ............................................................26

*Jams, Inc. v. Superior Court of San Diego Cnty.*,
    1 Cal.App.5th 984 (Cal. Ct. App. 2016)...........................................11

*Jordan v. Jewel Food Stores, Inc.*,
    743 F.3d 509 (7th Cir. 2014) ............................................................41

*Jordan-Benel v. Universal City Studios, Inc.*,
    859 F.3d 1184 (9th Cir. 2017) ............................................................7

*Keller v. Elec. Arts Inc.*,
    724 F.3d 1268 (9th Cir. 2013) ..........................................................49

*Kellman v. Spokeo*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022)..................... 33, 43, 48, 53, 54

*Kim-Carter Martinez v. ZoomInfo Techs. Inc.*,
  No. 22-35305 (9th Cir.) ........................................................................8

*Knapke v. PeopleConnect*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021),
   *rev'd and remanded on other grounds*, No. 21-35690 (9th Cir. Jun. 29, 2022)
  ..................................................................... 33, 44, 45, 46

*Kolebuck-Utz v. Whitepages Inc.*,
  No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021)................ 33, 43

*Krause v. RocketReach, LLC*,
  561 F. Supp. 3d 778 (N.D. Ill. 2021)..................................... 33, 43, 48

*Lukis v. Whitepages, Inc.*,
  542 F. Supp. 3d 752 (N.D. Ill. 2020)............................... 30, 33, 48, 52

*Makaeff v. Trump University, LLC*,
  736 F.3d 1180 (9th Cir. 2013) ...........................................................13

*Manzari v. Associated Newspapers Ltd.*,
  830 F.3d 881 (9th Cir. 2016) ....................................................... 32, 33

*Marien v. Holland*,
  No. D077586, 2021 WL 3044945 (Cal. Ct. App. July 20, 2021).....................23

*Martinez v. ZoomInfo Techs., Inc.*,
  No. C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022).. 8, 14, 17,
  30, 33, 47, 48, 52, 60

*Midler v. Ford Motor Co.*,
  849 F.2d 460 (9th Cir. 1988) ...............................................................55

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006) ...............................................................55

*Montana v. San Jose Mercury News, Inc.*,
  34 Cal. App. 4th 790, 40 Cal. Rptr. 2d 639 (1995) ...........................................51

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
  498 F.2d 921 (9th Cir. 1974) ...............................................................56

*Newcombe v. Adolf Coors Co.*,
  157 F.3d 686 (9th Cir. 1998) ...............................................................54

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .........................................................27

*Okorie v. L. A. Unified Sch. Dist.*,
  14 Cal. App. 5th 574 (2017) .............................................................33

*Park v. Board of Trustees of Cal. State Univ.*,
  2 Cal. 5th 1057 (Cal. 2017)..................................................................7

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
  133 Cal. App. 4th 658, 35 Cal. Rptr. 3d 31 (2005) ...........................34

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
  946 F. Supp. 2d 957 (N.D. Cal. 2013)................................................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ................................................. 6, 28, 29

*Pub. Emps.' Ret. Sys. v. Moody's Invs. Serv., Inc.*,
  226 Cal. App. 4th 643 (2014) ...........................................................32

*Riley v. Nat'l Fed'n of Blind*,
  487 U.S. 781 (1988)...................................................................... 41, 43

*Rivero v. Am. Fed. of State, C'ty & Mun. Emps., AFL-CIO*,
  105 Cal. App. 4th 913 (2003) ...................................................... 23, 26

*Ross v. Kish*,
  145 Cal.App.4th 188 (Cal. Ct. App. 2006)........................................32

*Serova v. Sony Music Ent.*,
  13 Cal. 5th 859 (2022) ................................................................8, 11

*Sessa v. Ancestry*,
  561 F. Supp. 3d 1008 (D. Nev. 2021).................................... 14, 33, 54

*Siegel v. ZoomInfo Techs., Inc.*,
  No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021)................... 33, 35

ix

*Simpson Strong-Tie Co., Inc. v. Gore*,
　49 Cal.4th 12 (Cal. 2010)......................................................................10

*Smith v. Levine Leichtman Capital Partners, Inc.*,
　723 F. Supp. 2d 1205 (N.D. Cal. 2010)...............................................12

*Spindler v. Seamless Contacts*,
　No. 22-cv-787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022)........... 15, 33, 46

*Spokeo v. Robins*,
　578 U.S. 330 (2016)..............................................................................54

*Talega Maintenance Corp. v. Standard Pacific Corp.*,
　225 Cal. App. 4th 722 (2014) ...............................................................21

*Trans Union Corp. v. F.T.C*,
　245 F.3d 809 (D.C. Cir. 2001) ..............................................................39

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
　831 F.3d 1179 (9th Cir. 2016) ..............................................................14

*United States v. Am. Library Ass'n, Inc.*,
　539 U.S. 194 (2003)..............................................................................45

*United States v. O'Brien*,
　391 U.S. 367 (1968)..............................................................................37

*Wilbanks v. Wolk*,
　121 Cal. App. 4th 883 (2004) ...............................................................21

*Wilson v. Cable News Network, Inc.*,
　7 Cal.5th 871 (Cal. 2019)......................................................................29

*Zamani v. Carnes*,
　491 F.3d 990 (9th Cir. 2007) ................................................................34

**Statutes**

CAL. CIV. CODE § 3344 ......................................... 4, 50, 51, 52, 54, 55, 62

CAL. CODE CIV. PROC. § 425, *et seq.* ............................. 5, 10, 12, 13, 14, 15, 29, 62

**Other Authorities**

*Try D&B Hoovers™ for FREE*, DUN & BRADSTREET,
    https://www.dnb.com/products/marketing-sales/dnb-hoovers/free-trial.html (last
    accessed Aug. 15, 2023) .......................................................................................18

*What is Intent data?*, BOMBORA, https://bombora.com/what-is-intent-data/ (last
    accessed Aug. 15, 2023) .........................................................................................2

# INTRODUCTION

## I. The D&B Hoovers Service

Dun & Bradstreet (D&B) sells individuals' personal information and Internet browsing behavior to marketers without consent. Salespeople who subscribe to D&B's "Hoovers" service receive the ability to search, view, and download Plaintiff's name, contact information, job titles, places of work, cities of residence, colleagues' identifies, and "triggers" (events in Plaintiff's life that D&B believes "represent selling opportunities"). ER-190 & 194–95, ¶¶ 7, 33–36. Subscribers also receive the ability to set up "real-time alerts" and "personalized buyer intent models" that will notify the subscriber when Plaintiff changes jobs or searches the Internet for a particular product or service. ER-199, ¶ 42. D&B sells Hoovers subscriptions to salespeople, who use the directory, real-time alerts, and Internet-search tracking to target individuals with unsolicited commercial promotions. *See* ER-191 & 199–200, ¶¶ 18, 42, 50.

Perhaps the most intrusive and disturbing feature of the D&B Hoovers service is its Internet-search tracking feature. Hoovers subscribers gain access to "buyer intent" data about Plaintiff and the other individuals in the Hoovers database. ER-199, ¶ 42. In the B2B sales industry, "buyer intent" data is a euphemistic phrase referring to the terms individuals enter in search engines and the webpages they

view.[1] That D&B sells "buyer intent" data about Plaintiff means D&B sells information about the webpages she views and the terms she searches for. *See* ER-199, ¶ 42.[2] D&B's "buyer intent" data allows salespeople to strike when the iron is hot. If you have ever searched for a product or service, and shortly thereafter received a call or email from a salesperson pitching you a similar product, it is likely D&B Hoovers or a competitors alerted the salesperson of your search and provided your contact information without your knowledge or consent.

## II. D&B's Commercial Use of Plaintiff's Persona

To advertise its intrusive service, D&B created "teaser" profiles about Plaintiff and other members of the proposed Class, which it distributes to trial customers via a searchable database. ER-194-199. Free-trial customers who search

---

[1] *See, e.g.*, *What is Intent data?*, BOMBORA, https://bombora.com/what-is-intent-data/ (last accessed Aug. 15, 2023) ("Intent data tells you when buyers are actively researching online for a solution, and which products and services they are interested in, based on the web content they consume.").

[2] Plaintiff's about "buyer intent" data are based on D&B marketing materials. For example, in an "eBook" entitled "Intent Data for B2B Sales and Marketing," D&B represents that D&B's intent data "[c]apture[s] online behavior of B2B buyers," including "the pages they visited, the content they downloaded, etc." Pg. 17. D&B's intent data allows the subscriber to "[u]nderstand **who** is showing activity: their role, their location, their buying authority, etc." Pg. 22. (emphasis in original). Available at: https://www.dnb.com/perspectives/marketing-sales/intent-data-for-b2b-sales-and-marketing-overview.html

for Plaintiff receive the teaser profile about her in response. *Id.* Plaintiff's free-trial teaser profile contains information similar to what might be found in a person's LinkedIn or other social media profile, with two crucial differences. ***First,*** unlike a social media profile, Plaintiff *did not create* her D&B teaser profile and *has never consented to D&B's use of her name and persona*. ER-199, ¶¶ 44–45; ER-191, ¶ 19. ***Second,*** unlike a social media profile, D&B uses Plaintiff's teaser profile to promote a subscription service that enables the subscriber to learn more about the person portrayed, which B2B salespeople use for commercial purposes. ER-189-90, ¶¶ 6–11. The profile contains a subset of the personal information D&B possesses about Plaintiff, along with pop-up messages informing the prospective customer they must purchase a subscription to download her information. ER-198, ¶ 39; ER-190, ¶ 10. D&B advertises that a paid subscription will also unlock additional information about Plaintiff. This subscriber-only information includes: (1) real-time updates about "Triggers," which D&B describes as events in Plaintiff's life or career that "represent selling opportunities" (ER-199, ¶ 42; ER-195, ¶¶ 35–36); and (2) real-time updates about the products for which Plaintiff searches on the Internet, which D&B refers to as a "personalized buyer intent model." ER-199, ¶ 42. After the free trial expires, prospective customers who attempt to view any information about Plaintiff, including the teaser information that was available during the free trial, are

informed they must purchase a subscription. ER-190, ¶ 10. A subscription to D&B Hoovers costs $10,000 or more per year. ER-189, ¶ 6.

## III. Plaintiff's Claims

D&B's use of Plaintiff's name and identity to advertise gives rise to her claim. California's right of publicity statute prohibits the knowing use of a person's "name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." CAL. CIV. CODE § 3344. The California tort of misappropriation of name or likeness forbids the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Ct.*, 149 Cal. App. 3d 409, 416 (1983). California law protects the right of individuals to refuse consent to the commercial use of their personas. By using Plaintiff's and Class members' personas without their consent to advertise subscriptions, D&B harmed Plaintiff and the Class by taking their intellectual property; violating their protected privacy rights; unjustly profiting from its use of their personas; and disturbing their peace of mind.

## IV. D&B's Anti-SLAPP Motion

D&B's advertising teaser profiles contain no expressive elements, do not address any issue of interest to the general public, and are intended for professional B2B salespeople who will use D&B's service for commercial purposes. ER-194-

4

199. Nevertheless, D&B filed a motion to strike under California's anti-SLAPP statute, asserting that this lawsuit arises from "speech . . . in connection with a public issue." *See* CAL. CODE CIV. PROC. § 425.16(b)(1).

The district court rejected D&B's attempt to stretch the anti-SLAPP statute to cover its non-expressive commercial advertisements. Judge Chesney correctly found D&B "failed to make a threshold showing that" that its "free trial publication of [Plaintiff's] 'profile'" containing her contact information and colleagues' identities is "speech . . . in connection with a public issue." ER-17-19. D&B's argument that the district court improperly ignored evidence is disingenuous, because D&B did not cite any documents or evidence other than the Complaint in support of its anti-SLAPP motion. *See* ER-147-49 (citing no exhibits). Even had D&B cited to the district court the exhibits it belatedly cites here, they would not have changed the result. This Court should affirm.

## JURISDICTIONAL STATEMENT

This Court should decline jurisdiction to exercise interlocutory review of the district court's denial of D&B's anti-SLAPP motion, for two reasons. First, under California's anti-SLAPP statute, interlocutory appeal is not available when the exceptions for commercial speech, or for suits brought in the public interest, apply. *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017) (citing CAL. CIV. PROC. CODE § 425.17(e)). Both exceptions apply here. Second, the denial of an

anti-SLAPP motion does not meet the Federal standard for appealable collateral orders. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834–35 (9th Cir. 2018) (Gould, J., concurring). Although *Batzel v. Smith*, 333 F.3d 1018, 1024–25 (9th Cir. 2003), currently allows interlocutory appeal of anti-SLAPP denials, this Circuit should correct *Batzel* by recognizing that the denial of an anti-SLAPP motion is not an appealable collateral order.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether one or both of the anti-SLAPP statutory exceptions for commercial speech, and for suits in the public interest, apply;

2. Whether this Court should cease allowing interlocutory review of anti-SLAPP motions, thereby reconciling this Court's approach with the collateral order doctrine as clarified in *Will*;

3. Whether the district court committed reversible error in finding D&B failed to show its advertising teaser profile about Plaintiff is speech in connection with an issue of public interest;

4. Whether the district court's ruling may be affirmed on the alternate ground that Plaintiff showed her claims have at least minimal merit;

5. If this Court determines the district court committed reversible error in denying D&B's anti-SLAPP motion, whether this Court should remand to allow Plaintiff to conduct discovery.

## STANDARD OF REVIEW

"A district court's denial of an anti-SLAPP motion . . . is reviewed *de novo*. *Jordan-Benel v. Universal City Studios, Inc*., 859 F.3d 1184, 1188 (9th Cir. 2017). The reviewing court "accept[s] plaintiff's submissions as true and consider[s] only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." *Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1067 (2017).

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

### I. Factual Background

This case arises from D&B's failure to compensate and failure to obtain Plaintiff's consent before using her persona in a teaser profiles advertising D&B's marketing service. *See* Complaint, ER-188-207. D&B's teaser profiles propose a commercial transaction, do not contain expressive or transformative content, and contain no discussion concerning any matter of public interest. ER-195, ¶¶ 35–36; ER-197-98, ¶¶ 38–39.

### II. Procedural History

Plaintiff filed a complaint on March 25, 2022. ER-188. On June 30, 2022, D&B filed a two-page special motion to strike Plaintiff's claims under California's anti-SLAPP statute. ER-147-49. D&B also filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). ER-149-62.

On September 19, 2022, the district court granted D&B's motion requesting the parties submit supplemental briefing regarding the decision of the California Supreme Court in *Serova v. Sony Music Ent.*, 13 Cal. 5th 859 (2022). ER-216-17. On September 23 and 30, respectively, Defendant and Plaintiff filed supplemental briefs addressing the relevance of *Serova* to D&B's then-pending anti-SLAPP motion. SER-3-10; SER-11-17.

On February 9, 2023, Judge Chesney denied D&B's anti-SLAPP motion to strike. ER-16-19. Judge Chesney also denied D&B's motion to dismiss under Rules 12(b)(1) and 12(b)(6). ER-4-16. On February 22, 2023, D&B filed a notice of appeal seeking interlocutory review of "the denial of an anti-SLAPP motion." ER-208.

## SUMMARY OF ARGUMENT

The issues presented are the same issues already pending before this Court in *Kim-Carter Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305 (9th Cir.). Accordingly, for the reasons articulated in Plaintiff's Motion to Stay (Dkt. No. 20), this appeal should be stayed until the mandate issues in *Martinez*.[3]

---

[3] D&B admits that *Martinez* "raises similar issues," Appellant's Br., 67, but contends that "the facts of this case are different" because D&B asserts that its Hoovers product enjoys First Amendment protection. This does not distinguish *Martinez*. *See id*, No. 22-35305, Dkt. No. 23, 52–59 (Appellant's Opening Brief) (arguing, as D&B does here, that the plaintiff failed to show a probability of prevailing because its "First Amendment-Protected Speech Cannot Result in Liability.").

Should this Court decline to stay, this Court should remand on the ground it does not have jurisdiction to review the denial of D&B's anti-SLAPP motion. If this court exercises jurisdiction, it should affirm. First, D&B's teaser profile representing Plaintiff's persona is commercial speech promoting and describing a product, and is therefore exempt from California's anti-SLAPP statute. Second, D&B failed to carry its burden of showing this suit arises from speech concerning a "public issue." Third, Plaintiff demonstrated to the district court that her claims have at least "minimal merit," not least because at least seventeen district courts have denied motions to dismiss similar claims. Contrary to D&B's assertions on appeal, D&B cited no evidence in support of its anti-SLAPP motion. Even if it had, the exhibits it now cites on appeal would not have changed the result. Finally, should this Court determine the district court erred in denying D&B's anti-SLAPP motion as a matter of law, it should remand for discovery.

## ARGUMENT

### I. This Court Lacks Jurisdiction to Review the Denial of D&B's Anti-SLAPP Motion.

For two independent reasons, this Court lacks jurisdiction to hear D&B's interlocutory appeal of its anti-SLAPP motion.

**A. Interlocutory appeal is not available because the exceptions for commercial speech and suits in the public interest apply.**

California's anti-SLAPP law recognizes two exceptions that apply here. **<u>First</u>**, anti-SLAPP protection does not apply to commercial speech. CAL. CIV. P. CODE § 425.17 (c) excludes speech by defendants who are "in the business of selling . . . goods or services" that is "made for the purpose of . . . promoting. . . goods or services" and for which the intended audience is "an actual or potential buyer or customer." Here, D&B's distribution of Plaintiff's teaser profile to a private audience of B2B salespeople is commercial speech excepted by § 425.17(c).

*Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal.4th 12, 30 (2010) describes four factors, all of which weigh in favor of finding that D&B's teaser profile is exempt. First, D&B is "engaged in the business of selling" subscription marketing tools to private businesses. ER-189-90, ¶¶ 5–7. Second, Plaintiff's teaser profile "consist[s] of representations of fact about" D&B's service, including that D&B has Plaintiff's contact information, colleagues' identities, and "Triggers," and that subscribers must purchase a subscription to download this information or view this information after the free trial expires. ER-195-98, ¶¶ 35–39. Third, D&B displays Plaintiff's teaser profile "for the purpose of . . . promoting" the D&B Hoovers service. ER-199, ¶¶ 40–43. Fourth, D&B's "intended audience" is "actual or potential buyer[s] or customer[s]," specifically B2B salespeople. *Id.*

In *JAMS, Inc. v. Superior Ct. of San Diego Cnty.*, the defendant ADR service published a retired judge's professional history on its website. 1 Cal. App. 5th 984, 993–98 (2016). The court found that the website's statements "about [her] background and experience" were "commercial speech" exempt from the anti-SLAPP statute because they were "placed on the JAMS Web site to be viewed by actual or potential ADR buyers or customers" and encourage them to buy the defendant's services. *Id.* at 998. D&B's teaser profiles contain the same type of information, *i.e.*, factual professional information about an individual. And they are published for the same purpose, *i.e.*, to encourage a purchase. If the professional biography in *JAMS* was commercial speech exempt from anti-SLAPP, D&B's teaser profiles must be as well.

In *Serova*, the California Supreme Court wrote that "advertising does not lose its commercial character even if" the advertisement also "touches on important public issues." 13 Cal. 5th 859, 875 (quotations omitted). The court held that an album cover claiming Michael Jackson was the singer was commercial speech to which anti-SLAPP protections did not apply, even though the claim contributed to a "significant public . . . controversy" regarding the album's authenticity. *Id.* (quotation omitted). Here, that D&B's free trial profile about Plaintiff is commercial speech is even clearer than in *Serova*. The teaser profile does not weigh in on a "significant public . . . controversy." *See Serova*, 13 Cal. 5th at 875. It simply informs

11

free trial users about the types of data they will receive about Plaintiff and other Class members if they purchase a subscription. ER-195-98, ¶¶ 35–39. It is therefore commercial speech exempt from the statute.

**Second**, the anti-SLAPP statute does not apply to "any action brought solely in the public interest or on behalf of the general public." CAL. CIV. PROC. CODE § 425.17 (b). A class action is excepted if (1) the plaintiff does not seek relief different from the class, (2) the action would enforce an "important right affecting the public interest," and (3) "private enforcement is necessary and places a disproportionate financial burden on the plaintiff." *Id*. Plaintiff's suit against D&B is exempt under § 425.17(b). *See, e.g., Smith v. Levine Leichtman Cap. Partners, Inc.*, 723 F. Supp. 2d 1205, 1218–19 (N.D. Cal. 2010) (exception applied to class action by consumers against debt collection company).

Under California's anti-SLAPP statute, interlocutory appeal is not available when either exception applies. CAL. CIV. PROC. CODE § 425.17(e); *see also Breazeale*, 878 F.3d at 766–67. Because Plaintiff's claims are exempt from the anti-SLAPP statute, this Court should remand for lack of jurisdiction. Even if this Court accepts jurisdiction, that the exceptions apply is an independent reason to affirm the district court's denial of D&B's anti-SLAPP motion.

**B. The Court should revisit Batzel in light of *Will* and rule that interlocutory appeals of anti-SLAPP denials are not available in federal court.**

Nearly 20 years ago, this Court ruled that defendants may appeal denials of state anti-SLAPP motions before final judgment. *See Batzel*, 333 F.3d at 1024–26. This rule is inconsistent with the "modest scope" of the collateral order doctrine as clarified in an intervening Supreme Court decision, *Will*, 546 U.S. at 349. Under *Will*, interlocutory review is available only for rare orders that meet three "stringent" conditions. *Id*. As relevant here, the order must "resolve an important issue completely separate from the merits." *Id*. In a dissenting opinion in *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013), four Judges of this Circuit—Judges Watford, Paez, Bea, and then Chief Judge Kozinski—opined that the Ninth Circuit "should stop entertaining interlocutory appeals from rulings on [anti-SLAPP] motions" because allowing such appeals is not "consistent with controlling Supreme Court precedent." *Id*. at 1188, 1190. An order denying an anti-SLAPP motion "doesn't satisfy" the conditions in *Hill* because the second prong of California's anti-SLAPP inquiry asks whether "the plaintiff has established that there is a probability that the plaintiff will prevail." *Id*. at 1190 (quoting Cal. Civ. Proc. Code § 425.16 (b)(1)). This inquiry requires "assessing the merits of the claim itself" and therefore is not "completely separate from the merits." *Id*. at 838.

The risks that prompted many judges to urge revisiting *Batzel* are manifest here. D&B devotes the bulk of its brief to arguing the merits of Plaintiff's claims.

Appellant's Br., 30–60. This "exhaustive (and exhausting) detour [into the merits] is exactly what the final judgment rule is designed to avoid." *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1185 (9th Cir. 2016).

The Court should bring this Circuit's approach in line with *Will* by ruling that defendants must await final judgment before appealing an anti-SLAPP motion. At the least, the Court should rule that the scope of interlocutory appeal is limited to the first prong of the anti-SLAPP analysis, which focuses on the nature of the defendant's speech rather than the merits of Plaintiff's claim. *See* CAL. CODE CIV. PROC. § 425.16 (b)(1).

## II. If This Court Accepts Interlocutory Appeal, It Should Affirm the District Court's Denial of D&B's Anti-SLAPP Motion.

At least ten courts have considered anti-SLAPP motions like D&B's in similar cases. All ten denied the motions on the ground that informational profiles about individuals do not concern a "public issue" and therefore fail the first prong of the anti-SLAPP analysis, as did the district court here.[4] Plaintiff is not aware of, and D&B does not cite, a single case granting an anti-SLAPP motion on similar facts.

---

[4] ER-17-19; *Martinez v. ZoomInfo Techs., Inc.,* No. C21-5725 MJP, 2022 WL 1078630 (N.D. Cal. Apr. 11, 2022); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *21 (N.D. Cal. Nov. 1, 2021); *Boshears v. PeopleConnect*, No. 21-cv-01222-MJP, 2022 WL 888300, at *7 (W.D. Wash. Mar. 25, 2022); *Callahan v. Ancestry.com, Inc.*, No. 20-cv-08437-LB, 2021 WL783524, at *7 (N.D. Cal. Mar. 1, 2021); *Sessa v. Ancestry*, 561 F. Supp. 3d 1008, 1034 (D. Nev. 2021);

**A. D&B failed to carry its burden of showing speech in connection with a public issue.**

To succeed on an anti-SLAPP motion, the movant must demonstrate that the plaintiff's claim "aris[es] from . . . free speech . . . in connection with a public issue." CAL. CODE CIV. PROC. § 425.16 (b)(1); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009) (burden rests with party asserting anti-SLAPP). The District Court correctly ruled D&B failed to carry this burden. *See* ER-17-19.

**1. D&B failed to show Plaintiff's teaser profile contributes to public discussion on any cognizable "public issue."**

In its motion to strike, D&B identified the relevant "public issue" simply as "[b]usiness information." ER-147. D&B's motion made no attempt to define "[b]usiness information," nor did it attempt to explain what "public issue" might be implicated by the *Plaintiff's* name and contact information, as distinct from "[b]usiness information" in general. *See* ER-147-49.

---

*Spindler v. Seamless Contacts*, No. 22-cv-787, 2022 WL 16985678, at *6–7 (N.D. Cal. Oct. 24, 2022); *Camacho v. Control Grp. Media Co.*, No. 21-cv-1954-MMA (MDD), 2022 WL 3093306, at *33 (S.D. Cal. July 18, 2022); *Fry v. Ancestry.com Operations*, 3:22-cv-140 JD, 2023 U.S. Dist. LEXIS 50330, at *30 (N.D. Ind. Mar. 24, 2023); *Brooks v. Thomson Reuters Corp.*, 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at *42-49 (N.D. Cal. Aug. 16, 2021).

15

When evaluating whether the issue identified by an anti-SLAPP movant is a "public issue," California law establishes the following guiding principles:

(1) "public interest" does not equate with mere curiosity;

(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc*., 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013) (citation omitted).

None of these principles weigh in favor of D&B's anti-SLAPP motion. First, it is difficult to imagine an issue more "broad and amorphous" than "[b]usiness information." The district court was correct to hold that "[b]usiness information" is too "broad and amorphous" an issue to qualify for anti-SLAPP protection. *See* ER-19 (quotation omitted); *see Piping Rock,* 946 F. Supp. 2d at 968.

Second, the information in Plaintiff's teaser profile does not "concern a substantial number of people." *See id.* at 968. D&B's teaser profile displays Plaintiff's name, job title, place of work, and telephone number, along with the

16

identities of her work colleagues and "Triggers." ER-19. As the district court held, this information is "too tenuously tethered" to any issue of public interest "to merit protection under the anti-SLAPP statute." *Id.* (citations omitted). Plaintiff is not a public figure and the information in her profile has no connection to any "topic of widespread, public interest." ER-18 (quoting *Hilton*, 599 F.3d at 906).

Third, "the focus of [D&B's] conduct" is decidedly <u>not</u> "the public interest." *See Piping Rock*, 946 F. Supp. 2d at 968. D&B uses Plaintiff's teaser profile to advertise subscriptions to B2B salespeople at private companies. ER-190, ¶¶ 7–12. This is a commercial use directed to private, not public, interests. As the district court in *Martinez* wrote about a direct competitor of D&B's, "ZoomInfo's use of [the plaintiff's] persona appears to be to generate revenue, rather than general public interest." *Martinez v. ZoomInfo Techs., Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *7 (W.D. Wash. Apr. 11, 2022). Here, that D&B's use of Plaintiff's persona is directed to a private, commercial interest is even clearer than in *Martinez*, because D&B distributes her teaser profile exclusively to a private, commercial audience of professional B2B salespeople who obtain a free trial login for the D&B Hoovers product. Obtaining a login requires registering with a company name and speaking

on the phone with a D&B "Sales Specialist."[5] Unlike the teaser profiles at issue in *Martinez*, D&B's teaser profiles are not publicly searchable on the Internet. *C.f.* 2022 WL 1078630, at *1 (ZoomInfo's teaser profiles are publicly searchable on any search engine). Instead, D&B's teaser profiles are searchable only by professional B2B salespeople who register and call to obtain a free trial login. *See* ER-190, ¶ 8 (teaser profiles are available only to "[u]sers who sign up for a free trial"); n. 5 *above*.

The district court's decision below finds support in *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133 (2019). In *FilmOn*, the defendant provided reports "about the websites on which the clients are interested in advertising," including "a description of the websites' content." *Id*. at 141. Just as D&B argues here, the defendant argued that its reports about websites "concerned issues of interest to the public" because "the public ha[s] a demonstrable interest in knowing what content is available on the Internet." *Id*. at 142 (quotation omitted). The California Supreme

---

[5] D&B falsely claims that the free trial version of the D&B Hoovers database is published on a "[w]eb site accessible to the public," and is therefore a "public forum." Apellant's Br., 18–19. There is nothing in the record to support this claim. In fact, the general public cannot search the trial version of the D&B Hoovers database or view Plaintiff's teaser profile. The process required for a B2B sales professional to acquire a free trial login is described by D&B in online marketing materials. *See Try D&B Hoovers™ for FREE*, Dun & Bradstreet, https://www.dnb.com/products/marketing-sales/dnb-hoovers/free-trial.html (last accessed Aug. 15, 2023).

Court rejected this argument, writing that the defendant "cannot merely offer a 'synecdoche theory' of public interest" under which factual business information would somehow qualify for anti-SLAPP protection merely "by its slight reference to the broader public issue." *FilmOn*, 7 Cal. 5th at 152. The court found especially relevant that, as here, the defendant offered its reports "not to the wider public . . . but privately, to a coterie of paying clients [who] . . . use the information . . . for their business purposes alone." *Id.* at 153. So too here. D&B advertises its subscription service to professional B2B salespeople who pay "$10,000 per year" to use the service for private commercial purposes. ER-189-90, ¶ 6.

Similarly, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, the Supreme Court rejected Dun & Bradstreet's argument that its "report[s]" which "provide[d] subscribers with financial and related information about businesses" were "speech on matters of public concern." 472 U.S. 749, 751, 758 (1985). The Court noted that the First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Id.* at 759 (citation omitted; quotation omitted). In contrast, "[s]peech on matters of purely private concern is of less First Amendment concern." *Id.* Applying these principles to Dun & Bradstreet's reports about businesses, the Supreme Court observed that the reports "concern[] no public issue" and were "speech solely in the individual interest of the speaker and its specific business audience." *Id.* at 761–62. Particularly

relevant was the fact that the reports were made available only to paying subscribers, who used the reports solely for private business purposes. *Id.*

The reports in D&B's searchable database are functionally identical to the reports the Supreme Court analyzed in *Dun & Bradstreet*, and to the reports the California Supreme Court analyzed in *FilmOn*, except that the relevant reports here are about *individuals*, not businesses or websites. Therefore, the connection to any "matters of public concern" is even further attenuated. *See* 472 U.S. at 759.

## 2. D&B's belated attempt to redefine the "public issue" it presented to the district court does not change the analysis.

Attempting to rectify its failure to identify a concrete issue of public interest in its anti-SLAPP motion, D&B now retroactively attempts to edit the "public issue" it presented to the district court. D&B now asserts that "the identities of, and contact information for, professionals" is "an issue of indisputable public interest." Appellant's Br., 21. Because D&B did not present this issue to the district court, it is irrelevant to this Court's evaluation of whether the district court correctly denied D&B's anti-SLAPP motion. *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) ("[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.") (quotation omitted).

Even had D&B identified this issue before the district court, it would not have changed the result. There is nothing in the record or caselaw to support D&B's bald

assertion on appeal that Plaintiff's contact information and job title as a librarian for the city of Richmond is of "widespread, public interest." *See Hilton*, 599 F.3d at 906. Even were some members of the local community interested to know Plaintiff's contact information, D&B does not distribute her teaser profile to the local community. It distributes her teaser profile to professional B2B salespeople. And even then, Plaintiff's identity and contact information is at best of interest "to a limited, but definable portion of the public," and the speech must therefore "at a minimum, occur in the context of an ongoing controversy, dispute or discussion" to qualify for anti-SLAPP protection. *Talega Maintenance Corp. v. Standard Pacific Corp.*, 225 Cal. App. 4th 722, 734 (2014); *see also Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004) ("the statement must in some manner itself contribute to the public debate."). D&B failed to identify any evidence of a public "discussion," "controversy," "dispute," or "debate" in which Plaintiff's personal name and contact information has played a part. D&B did not even identify a hypothetical topic of public discussion to which Plaintiff's personal information *might* be relevant. Even if such a discussion existed, the teaser profile itself does nothing to "itself contribute" to that discussion. *See* ER-194-95 (teaser profiles do not express any point of view on any topic). Were the unproven assertion of a generic interest in Plaintiff's contact information sufficient to prove a "public issue" under the anti-SLAPP statute, the "public issue" requirement would be meaningless.

### 3. D&B cited no evidence in support of its anti-SLAPP motion, but even if it had, the attachments it now cites would not change the result.

D&B argues the district court erred because D&B supposedly introduced evidence that "Plaintiff's contact information" is "an especially stark example" of "important business and government information" that is "of tremendous public interest." Appellant's Br. at 23. But the record does not support this claim in the slightest. First, D&B's filing with the district court did not cite any evidence in support of its anti-SLAPP motion. ER-147-49. D&B attached exhibits to its filing, but it did not cite those exhibits in support of its anti-SLAPP argument or make any attempt to explain their supposed relevance. *Id.* Because D&B did not argue the exhibits were relevant to its anti-SLAPP motion to the district court, that argument is waived on appeal. *See In re Mercury*, 618 F.3d at 992.

Second, even had D&B relied on the exhibits it now retroactively attempts to incorporate into its anti-SLAPP argument, this would not have changed the district court's holding, because the exhibits do nothing to establish that Plaintiff's teaser profile relates to an issue of public interest. D&B refers to five exhibits, which establish only that Plaintiff received a pension (ER-178); helped run a bookmark design context for children at the Richmond public library where she works (ER-182); wrote an article about grant writing in 2012 (ER-180); and was the "Project Manager" for the refurbishment of a bookmobile (ER-184). Even were these matters of "widespread, public interest" within the meaning of the anti-SLAPP statute (they

22

are not), D&B's teaser profile about Plaintiff says nothing about any of these matters. *See* ER-194.

To the extent D&B is arguing Plaintiff is "a person or entity in the public eye" simply because she is a government employee—again, an argument it did not make in its motion below—the argument fails. *See Hilton*, 599 F.3d at 906; *Marien v. Holland*, No. D077586, 2021 WL 3044945 (Cal. Ct. App. July 20, 2021) (that the plaintiff ran a concession in a public park did not "place[ him] in the public eye" for purposes of the anti-SLAPP statute). D&B cites *Rivero*, but the Court in that case ruled in favor of the plaintiff, holding that the defendant "did not meet its initial burden of establishing . . . protected activity" even though the subjects of the defendant's speech were California state employees. *Rivero v. Am. Fed. of State, C'ty & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 929 (2003). Even were Plaintiff a public figure, distributing her contact information to B2B salespeople still would not be "speech . . . in connection with a public issue." *See Albanese v. Menounos*, 218 Cal. App. 4th 923, 934 (2013) ("No authority supports the . . . proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue."). For example, Chief Justice Roberts is a public figure; but selling his office phone number and Internet browsing activity to professional marketers—as D&B does with Plaintiff—would not be speech protected by the anti-SLAPP statute.

23

D&B also attempts to obscure the nature of the Hoovers product by suggesting that some of its subscribers sometimes use it for purposes other than B2B sales. *See* Appellant's Br. at 21–22. Even had D&B made these assertions to the district court in support of its motion (it did not, *see* ER 147-49), they would not have altered the fact that the primary use of the Hoovers product is by B2B salespeople. ER-189, ¶ 6. The Complaint cites D&B's annual report, which describes Hoovers as follows:

> *D&B Hoovers* is a sales intelligence solution that allows clients to research companies, quickly build pipelines, engage in informed conversations and enhance sales productivity. Clients are able to target companies and contacts with more than 200 search filters . . . Hoovers . . . allow[s] clients to . . . improve sales productivity.

*2020 Annual Report*, DUN & BRADSTREET HOLDINGS, INC., pg. 8; *see* ER-191, ¶ 14 & n.1 (citing 2020 Annual Report). Thus, by D&B's own description, salespeople use Hoovers "to target . . . contacts [and] improve sales productivity," not to engage in public discussion on some issue of relevance to the broader public.

Thus, even had D&B cited the exhibits it now belatedly attempts to incorporate on appeal, this would not have altered the district court's holding.

### 4. The district court applied the two-step *FilmOn* analysis D&B says it should have.

Seeking to manufacture reversible error, D&B claims the district court applied the wrong law. D&B argues the district court should have cited *Geiser v. Kuhns*, 13 Cal. 5th 1238 (2022), a case D&B did not cite in any of its briefing below, even though the district court gave D&B the opportunity to file a supplemental brief after

24

*Geiser* was decided. *See* SER-11-17 (no citation to *Geiser*). Regardless, had D&B cited *Geiser*, it would not have changed the result. D&B admits *Geiser* applies the same standard articulated in *FilmOn*, 7 Cal. 5th 133, upon which the district court relied. *See* ER-18-19. D&B claims the district court misapplied *FilmOn* because it failed to apply the "two-part analysis" described therein. *See FilmOn*, 7 Cal. 5th at 149.[6] D&B misreads the district court's opinion. In fact, the district court addressed both factors *FilmOn* described, first addressing "what public issue or issue of public interest the speech in question implicates" (*see id.*) and concluding that "[a]lthough the content of Batis' profile arguably could be described as business information," that issue was too "broad and amorphous" to fall within anti-SLAPP protection. ER-19 (quotation omitted). Second, the district court addressed "what functional relationship exists between the speech and the public conversation about some matter of public interest" (*see FilmOn*, 7 Cal. 5th at 149), concluding that "the profiles . . . are too tenuously tethered to the issues of public interest they implicate."

---

[6] D&B's insistence on a two-part analysis, like its devotion to *Geiser* and its citation to exhibits, is newly discovered on appeal. None of D&B's briefing below mentioned the two-part analysis D&B now claims is crucial. ER-147-49 (motion); ER-74-76 (reply); SER-11-17 (supplemental brief filed after *Geiser* was decided). Issues raised for the first time on appeal are generally deemed waived. *In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010).

ER-19 (quotation omitted). In short, the district court performed the analysis D&B says it should have.

D&B argues that the district court's analysis of the first factor must have been wrong, because "defendants virtually always satisfy step one." Appellant's Br., 26. D&B apparently believes the first *FilmOn* factor is an automatic win for the defendant, and any district court that fails to chalk up this win thereby commits reversible error. Not so. As *Geiser* acknowledged, "a defendant may fail to meet its first-step burden." 13 Cal. 5th 1238, 1249. Here, the very cases on which D&B relies demonstrate that the issue it identified to the district court—which, again, was simply "[b]usiness information"—is miles away from the sorts of issues that are of "widespread, public interest." *See Hilton*, 599 F.3d at 906. In *Geiser*, the defendant engaged in a public protest about "unfair foreclosure practices and residential displacement." 13 Cal. 5th 1238, 1250. D&B relies on *Rivero*, but the *Rivero* court came down in favor of the *plaintiff*, holding that "statements concern[ing] the supervision of a staff of eight custodians," all of whom were employees of the California state university system, were "hardly a matter of public interest." *Rivero,* 105 Cal. App. 4th 913, 924. The cases D&B cited to the district court below are also instructive. Plaintiff's teaser profile does not weigh in on an ongoing public debate. *Cf. Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 520–21 (2006). Nor is it a magazine article about "a prominent . . . celebrity." *C.f. Nygard,*

*Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). Nor does it "concern an ongoing discussion regarding the financial well-being of a significant investment opportunity." *Cf. CALPERS v. Moody's Investors Service, Inc.*, 226 Cal. App. 4th 643, 660 (2014). In each of the cited cases in which the court found anti-SLAPP protection, the defendant identified a specific topic of public discussion, and showed that the challenged speech made a narrative contribution to that topic. D&B's showing to the district court came nowhere close.

### 5. D&B's assertion that Plaintiff waived the ability to request discovery is duplicitous and wrong.

D&B falsely claims that it submitted evidence in support of its anti-SLAPP motion, and that Plaintiff failed to request the ability to conduct discovery in response. *See* Appellant's Br. 10. This is simply wrong. Again, D&B cited no evidence in its anti-SLAPP motion before the district court. *See* ER-147-49. The exhibits to which D&B refers in its Opening Brief were not cited by D&B in its anti-SLAPP motion. *Id.*

Nor did D&B cite any exhibits in support of its 12(b)(1) and 12(b)(6) motions. The closest D&B even arguably came to citing an exhibit in support of an argument occurred in the context of its 12(b)(6) motion, when D&B cited generically to "p. 3, *supra*," and later to "p.3, *infra* [sic]." *See* ER-150 & -154. These are not citations to exhibits, but rather appear to be citations to an earlier page in D&B's own motion. D&B made no attempt to explain what content it was citing or what relevance that

content might have to the First Amendment defense D&B was attempting to support. *See* ER-150 & -154 (no explanation); *cf.* ER-144 (page three of D&B's motion, which asserts that "D&B's Hoovers database is one of the company's flagship publications," a proposition that has no apparent relevance).

Although D&B did not cite any exhibits in support of its motions, it did make unsupported factual assertions in the context of its First Amendment argument. *See, e.g.*, ER-153 (asserting, without citation, that "Hoovers is a transformative, expressive work."). In response, Plaintiff informed the district court that D&B's argument "relies on facts that are not in the Complaint and which Plaintiff disputes." ER-119. Plaintiff argued that if the Court did not reject D&B's First Amendment argument as a matter of law, discovery would be necessary because the defense "Raise[s] Issues of Fact." *Id.* D&B's assertion that Plaintiff failed to request the discovery it needs to dispute D&B's wholly unsupported assertions is wrong and disingenuous.[7]

---

[7] D&B's assertion of waiver is especially disingenuous because, immediately after filing its anti-SLAPP motion, *D&B requested* that the case management conference and commencement of discovery be deferred until after the anti-SLAPP motion was decided. Plaintiff's counsel would be happy to supplement the record with a copy of the relevant email communication should this Court find it necessary. Such a deferral would not have been proper, nor would Plaintiff have acceded to it, had D&B cited evidence in support of its anti-SLAPP motion. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) ("a

Where, as here, a defendant attempts to invoke evidence for the first time in a reply or on appeal, the appeals Court must evaluate the anti-SLAPP appeal solely based on the Complaint and the legal arguments. *See Planned Parenthood*, 890 F.3d at 834–35. However, should this Court lend credence to D&B's procedurally improper attempt to invoke evidence, and should it determine the district court's decision should be reversed, this Court should remand to allow Plaintiff to conduct discovery. *Id.* at 834.

### B. Plaintiff's claim arises not from publication of teaser profiles, but rather from D&B's failure to compensate and obtain consent.

In addition to showing "speech in connection with a public issue," an anti-SLAPP movant must also show the plaintiff's claim "arises from" that speech. Cal. Civ. Code § 425.16. "A claim may be struck only if the speech . . . *itself* is the wrong complained of." *Wilson v. Cable News Network, Inc*., 7 Cal. 5th 871, 884 (2019) (quotation omitted). D&B's failure to carry this burden is an independent reason to affirm the district court's ruling.

If Plaintiff's claim arises from speech at all, the relevant speech is her teaser profile, not the subscription services it advertises. Recognizing this distinction, many courts, including the court below, have rejected attempts to misconstrue claims about

---

presentation of evidence without accompanying discovery . . . would effectively allow the state anti-SLAPP rules to usurp the federal rules.").

teaser profiles as if they arose from the services being advertised. *See, e.g.*, *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 752, 831 (N.D. Ill. 2020) (rejecting "public affairs" argument in part because "Defendant[] . . . forgets that Plaintiff's claims are directed towards the free previews, not toward the subscription services advertised by the previews"); ER-13 ("Batis has not challenged her inclusion in the D&B Hoovers database; she challenges the use of her name and likeness to advertise subscriptions to the D&B Hoovers database"); *Martinez*, 2022 WL 107863, at \*6; *Callahan v. PeopleConnect*, 20-cv-09203-EMC, 2021 WL 5050079, \*17–18 (N.D. Cal. Nov. 1, 2021). Therefore, even if D&B could show its Hoovers service is "speech" about a "public issue" (under *FilmOn* and *Dun & Bradstreet*, it cannot), the teaser profile about Plaintiff clearly is not.

Furthermore, Plaintiff's claim does not arise from speech at all, because it does not arise from D&B's publication of her teaser profile. Rather, Plaintiff's claim arises from D&B's failure to obtain her consent and provide her compensation. D&B could have legally published its teaser profile had it obtained Plaintiff's consent and provided her compensation.

*Jordan-Benel* is instructive. 859 F.3d 1184. There, the plaintiff developed the screenplay idea for the movie "The Purge," which the defendant then filmed and released without compensating the plaintiff. This Court found that California's anti-SLAPP statute did not apply because the plaintiff's claim was "based on Defendant's

failure to pay for the use" of his intellectual property, not "the creation, production, distribution, or content of the films." *Id.* at 1187. Therefore, his claim did not "arise from an act in furtherance of the right of free speech." *Id.*

So too here. Plaintiff alleges economic injury and seeks monetary damages for the unauthorized use of her intellectual property. ER-205-06. Here, as in *Jordan-Benel*, Plaintiff's claim arises not from speech, but from failure to obtain consent and failure to compensate. Therefore the anti-SLAPP statute does not apply.

## C. The anti-SLAPP denial should be affirmed because Plaintiff made a prima facie showing of minimal merit.

Should this Court affirm the district court's holding that D&B failed to meet its burden at the first prong of the anti-SLAPP analysis, then this Court's job is done.[8]

---

[8] Although D&B's statement of "Issues Presented for Review" appears to present Article III standing as an "alternative" issue, *see* Appellant's Br., 4, its argument addresses the standing issue only in the context of the second prong of the anti-SLAPP analysis. *See* Appellant's Br., 60–64. D&B has not requested this Court evaluate standing outside the context of reviewing its anti-SLAPP motion. Nor could it. Where, as here, a defendant appeals the denial of an anti-SLAPP motions, the appeals court must decline to consider jurisdictional issues decided in a separate Rule 12(b)(1) order unless those issues are "inextricably intertwined" with the anti-SLAPP denial. *Batzel*, 333 F.3d at 1023. This Circuit "interpret[s] 'inextricably intertwined' very narrowly." *Id.* The two orders must either "(a) be so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal . . . or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* (quotation omitted). Neither standard is met here. This Court may resolve the question of whether Plaintiff's claim arises from activity protected by the anti-SLAPP statute without resolving whether Plaintiff suffered Article III injury. Even were the Court to reach

"Failure to meet this initial prong renders the anti-SLAPP statute inapplicable, thereby making unnecessary any determination under the second prong." *Pub. Emps.' Ret. Sys. v. Moody's Invs. Serv., Inc*., 226 Cal. App. 4th 643, 660 (2014). Conversely, should this Court reverse the district court's holding with respect to the first prong, it should remand to the district court "to determine whether [the plaintiff] met her burden on the anti-SLAPP statute's second prong." *Collier v. Harris*, 192 Cal. Rptr. 3d 31, 35 (2015). However, should this Court proceed to evaluate the second prong before the district court has done so, the second prong of the anti-SLAPP analysis provides an independent ground on which the Court should affirm the denial of D&B's anti-SLAPP motion.

At the second prong, an anti-SLAPP motion "must be denied" if the plaintiff "makes a prima facie showing of facts which would support a judgment in his or her favor." *Ross v. Kish*, 145 Cal. App. 4th 188, 197 (2006). The standard is very low. "The statute requires only a minimum level of legal sufficiency and triability.

---

the second prong of the anti-SLAPP analysis, the "minimal merit" required to defeat an anti-SLAPP motion is a lower standard than that required to defeat a 12(b)(1) motion. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (to survive a motion to dismiss the allegations must "plausibly give rise to an entitlement to relief"); with *Manzari v. Associated Newspapers Ltd*., 830 F.3d 881, 887 (9th Cir. 2016) (to survive the second prong of the anti-SLAPP analysis allegations need only have "minimal merit").

Indeed, the second step of the anti-SLAPP inquiry is often called the minimal merit prong." *Manzari v. Associated Newspapers Ltd*., 830 F.3d 881, 887 (9th Cir. 2016) (quotation omitted; citation omitted). At the second prong, courts "do not . . . evaluate the weight of evidence," instead "accept[ing] as true all evidence favorable to the plaintiff." *Okorie v. L. A. Unified Sch. Dist*., 14 Cal. App. 5th 574 (2017) (quotation omitted). The court "evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." *Id*. Only a claim that "lacks even minimal merit . . . [is] subject to being stricken." *Id.*

Here, Plaintiff demonstrated to the district court that her claims easily clear this low bar. At least seventeen district courts around the country have denied motions to dismiss parallel right of publicity claims, rejecting every one of D&B's arguments.[9] This strongly indicates Plaintiff's claims have the required "minimal

---

[9] *See, e.g*., ER-3-17; *Martinez*, 2022 WL 1078630; *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582 (N.D. Ill. Dec. 7, 2021); *Callahan v. PeopleConnect*, 2021 WL 5050079; *Boshears*, 2022 WL 888300, *rev'd and remanded on other grounds,* No. 22-35262, Dkt. 53-1 (9th Cir. Aug. 3, 2023); *Sessa*, 561 F. Supp. 3d 1008; *Kellman v. Spokeo*, 599 F. Supp. 3d 877 (N.D. Cal. 2022); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865 (W.D. Wash. 2021), *rev'd and remanded on other grounds*, No. 21-35690 (9th Cir. Jun. 29, 2022); *Lukis v. Whitepages, Inc*., 542 F. Supp. 3d 831 (N.D. Ill. 2020); *Kolebuck-Utz v. Whitepages Inc*., No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017); *Siegel v. ZoomInfo Techs., Inc*., No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778 (N.D. Ill. 2021); *Camacho*, 2022 WL 3093306; *Spindler*, 2022 WL 16985678; *Fry*, 2023 U.S. Dist. LEXIS 50330; *Nolen v. PeopleConnect, Inc.*, 2023 U.S. Dist.

merit." D&B fails to cite a single case in which an appeals court held that a claim that survived a 12(b)(6) motion to dismiss failed the second step of the anti-SLAPP inquiry. *Cf. Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007) (affirming that plaintiff "demonstrated a likelihood of success" on claims for which the district court denied a 12(b)(6) motion to dismiss).

### 1. D&B failed to carry its burden of showing its First Amendment defense undermines the required minimal merit.

Immunity under the First Amendment is an affirmative defense. *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015). Although it is the plaintiff's burden at the second step of the anti-SLAPP analysis to show their claims have at least "minimal merit," where, as here, the defendant relies on an affirmative defense, "a defendant that advances an affirmative defense to such claims properly bears the burden of proof." *Id.* (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 35 Cal. Rptr. 3d 31, 44 (2005)) (affirming denial of anti-SLAPP motion seeking to dismiss California right of publicity claims when the defendant failed to carry its burden with respect to an asserted First Amendment defense.) D&B failed to carry this burden.

---

LEXIS 113630 (N.D. Cal. Jun. 30, 2023). *But cf. Callahan v Ancestry*, Case No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021).

### a. Plaintiff disputes the factual assertions on which D&B's First Amendment defense relies.

Because proving a First Amendment defense inherently requires examining the facts, courts rarely grant Rule 12(b)(6) motions to dismiss on First Amendment grounds. *See, e.g.*, *Hilton*, 599 F.3d at 910; *Siegel v. ZoomInfo Techs., Inc.*, No. 21-cv-2032, 2021 WL 4306148, at \*4. (N.D. Ill. Sep. 22, 2021). Accordingly, the district court correctly denied D&B's motion to dismiss at the pleading stage because D&B's First Amendment defense relies on assertions of fact that are unsupported by the Complaint, among other grounds. ER-16.

Plaintiff disputes the unsupported factual assertions on which D&B relied. For example, D&B asserted without citation that "the only value of Plaintiff's name in this context is the value to Hoovers of the demographic facts of her (and thousands of other persons) employment." ER-154. This is inconsistent with the allegations of the Complaint and with D&B's admissions in its marketing materials and SEC filings, which indicate that the value of Plaintiff's information to Hoovers subscribers is in contacting her with customized promotions, not conducting demographic research. *See* ER-191; Part II(A)(3) *above*; n. 1 *above*. Arguing for transformative use, D&B asserted, again without citation, that D&B "organize[s] and reflect[s] the data [about Plaintiff] in innumerable different ways." ER-154. The district court correctly noted that the Complaint contains no support for this proposition, ER-15, nor did D&B cite anything else to support the assertion. *See* ER-

154. And D&B claimed for the first time in its reply that the Hoovers "real-time alert" and "buyer intent" features do not track Internet browsing activity. *See* ER-77. Again, this is inconsistent with the Complaint and within D&B's own public admissions. *See* ER-191; Part II(A)(3) *above*; n. 1 *above*.

Because D&B's First Amendment defense relies on factual assertions that are inconsistent with the Complaint and with D&B's public statements, the defense does not as a matter of law undermine Plaintiff's showing of "minimal merit."

> **b. Even were D&B's unsupported assertions undisputed, D&B would not have carried its burden of showing its First Amendment defense undermines Plaintiff's showing of minimal merit.**

> **i. Even were Plaintiff's claims challenging the D&B Hoovers product itself, intermediate scrutiny would apply.**

Plaintiff's claims do not challenge D&B's ability to distribute the Hoovers product, but rather D&B's use of her persona to advertise. ER-13. But even were she challenging the product itself, intermediate scrutiny would apply, for two independent reasons.

**First**, as shown in the Introduction, the D&B Hoovers product comprises both: (1) a searchable database of profiles about individuals; and (2) person-tracking services that provide real-time updates about the targeted individuals, including job changes and Internet browsing activity. *See* ER-191 & 199–200, ¶¶ 18, 42, 50. The latter are non-expressive conduct, not speech. In *Bartnicki v. Vopper*, 532 U.S. 514 (2001), the Supreme Court acknowledged that statutes regulating the "willfull[]

intercepti[ion]" of "wire or oral communication[s]" regulate "conduct," not speech. *Id*. at 523. Here, D&B monitors and intercepts Internet browsing activity and other online information to generate its real-time alerts and personalized buyer-intent models. *See* ER-199 ¶ 42; n. 1 *above*. Under *Bartnicki*, these activities are conduct, not speech. Accordingly, they are unprotected by the First Amendment. Under *United States v. O'Brien*, "conduct combining 'speech' and 'nonspeech' elements" is "subject to intermediate scrutiny." 391 U.S. 367, 382 (1968). Thus, any regulation of the D&B Hoovers product itself would be subject to intermediate scrutiny.

**Second**, even were the Hoovers product limited to the searchable database, intermediate scrutiny would still apply. Under *Dun & Bradstreet*, in which the Supreme Court analyzed similar reports distributed by the same defendant, informational reports distributed to a private, paying audience for commercial purposes are "of reduced constitutional value" and warrant only "reduced constitutional protection" under the First Amendment. 472 U.S. 749, 756–57, 761– 62, n. 8 (1985); *see also* Part II(A)(1) *above*. D&B's subscribers are salespeople who use the database to identify individuals of interest, engage D&B's person-tracking services to surveil them in real-time, and ultimately target them with unsolicited promotions. ER-189-99, ¶¶ 6, 35, 42.

D&B argues that its searchable reports about individuals are more like the yellow pages directory in *Dex Media* than the reports about businesses and

individuals in *Dun & Bradstreet*. *See Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012). But unlike the yellow pages directory in *Dex Media*, D&B's searchable database is not distributed "free of charge" to the public for the purposes of "identifying businesses that provide a desired service or good" and "learning about . . . the community." *Id.* at 954. Rather, the reports in D&B's searchable database are available only to paying subscribers, who use the reports for the private business purpose of making sales calls. ER-189-90, ¶ 6. D&B's distribution of the searchable database "is solely motivated by the desire for profit which . . . is a force less likely to be deterred than others." *Dun & Bradstreet*, 472 U.S. at 762. As in *Dun & Bradstreet*, "[t]here is simply no credible argument that this type of . . . reporting requires special protection to ensure that debate on public issues [will] be uninhibited, robust, and wide-open." *Id.* (quotation omitted).

D&B's searchable database is nothing like the speech in the cases it cited, each of which involved works that were clearly expressive, political, literary, or transformative in nature. For example, *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 863 (2018) concerned a "docudrama about film stars Bette Davis and Joan Crawford." *See* ER-16, n. 5 (discussing additional cases). D&B argues the district court ran afoul of *Dex* by observing that the Hoovers product is not an expressive work. Appellant's Br., 49. On the contrary, the district court correctly held that the searchable database is entitled to some level of First Amendment

protection. ER-14 (quoting *Dex*). But it is not the same level of protection that would apply to an expressive work or to a database distributed to the public for their edification. Under *Dun & Bradstreet*, informational reports distributed to a private, commercial audience for purely commercial uses warrant only "reduced constitutional protection" under the First Amendment. 472 U.S. 749, 756–57, 761–62, n. 8 (1985).

The Supreme Court did not use the language of "intermediate scrutiny" or "strict scrutiny" in *Dun & Bradstreet*. But subsequent opinions applying *Dun & Bradstreet* have made explicit that when a defendant distributes factual information about individuals to private business customers, intermediate scrutiny applies. For example, in *Trans Union Corp. v. F.T.C*, 245 F.3d 809 (D.C. Cir. 2001), the D.C. Circuit held that "information about individual consumers and their credit performance," which was "solely of interest to the [defendant] and its business customers," was "[l]ike the credit report in *Dun & Bradstreet*" and therefore "warrant[s] reduced constitutional protection." *Id*. at 818 (quoting *Dun & Bradstreet*, 472 U.S. at 762 n. 8). The *Trans Union* court rejected the defendant's attempt to apply "strict scrutiny," writing that the defendant "misunderstands our standard of review" and affirming the application of "intermediate scrutiny." *Id*. at 818, 813. Like the reports about individuals in *Trans Union* and the reports about businesses in *Dun & Bradstreet*, D&B's searchable database is distributed to

39

business customers who use the database for commercial purposes. Therefore, even if D&B's advertisements using Plaintiff's name and persona inherited the same First Amendment protection as D&B's searchable database, under *Dun & Bradstreet* and *Trans Union* both the advertisements and database would warrant "reduced constitutional protection" and intermediate scrutiny would still apply.

> ii. **Intermediate scrutiny applies because Plaintiff challenges only the teaser profile advertisements, which do not inherit whatever First Amendment protection applies to the product.**

Even were D&B correct that strict scrutiny would apply to a suit challenging distribution of the Hoover product (as shown in Part i above, it is not), intermediate scrutiny would still apply because Plaintiff's claim relates only to the free trial teaser profiles D&B uses to advertise, not the underlying product. *See* ER-13. Commercial advertisements do not inherit the First Amendment protection of the product being advertised, subject to a narrow exception for advertisements that are so "inextricably intertwined" with fully protected speech that the "law of man or of nature makes it impossible to sell" the product without borrowing fully protected speech from the underlying product. *Bd. of Trustees, State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989). As the Ninth Circuit wrote in *Ariix, LLC v. NutriSearch Corp.*, an otherwise commercial advertisement "can lose its commercial character" only when it is "inextricably intertwined with fully protected speech." 985 F.3d 1107 (9th Cir. 2021) (quoting *Dex Media*, 696 F.3d at 958). The relevant inquiry is not simply whether

40

the commercial advertisement incorporates protected content from the underlying product. Were it so, advertisers could "immunize" otherwise commercial speech "from government regulation simply by including references to public issues." *Bolger v. Youngs Drug Products Corp*., 463 U.S. 60, 68 (1983). Rather, only when products cannot be sold without expressing a protected viewpoint will the advertisement inherit the same First Amendment protection as the viewpoint itself. *See Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 796 (1988) (solicitations for charitable contributions are inextricably intertwined with "informative and perhaps persuasive speech" about the cause the charity supports) (quotation omitted); *see also Jordan v. Jewel Food Stores, Inc*., 743 F.3d 509, 521 (7th Cir. 2014) ("the inextricably intertwined doctrine applies only when it is legally or practically impossible for the speaker to separate out the commercial and noncommercial elements of his speech.").

Applying this standard, many courts have found that commercial advertisements like D&B's are not "inextricably intertwined" with the underlying product. The *Ariix* court found that a promotional "ratings section" in a book about nutritional supplements did not enjoy full First Amendment protection because the promotional ratings section was "easily separable" from the adjacent informational sections "describ[ing] the benefits and science of nutritional supplements." 985 F.3d at 1119. This was so even though the promotional ratings section was printed in the

same book as the adjacent fully protected speech. *See id*. Similarly, in *Facenda v. N.F.L. Films, Inc*., the Third Circuit rejected a First Amendment challenge to a false endorsement claim brought by the estate of an NFL broadcaster arising from the publication of a video documentary about the "Madden NFL" video game. 542 F.3d 1007, 1011 (3d Cir. 2008). The court found that a "documentary explaining how the video game was made and depicting the phenomenon of the game's popularity" was commercial speech that did not inherit the First Amendment protection of the underlying game. *Id*. at 1016–18.

Plaintiff's suit challenges D&B's inclusion of the profile representing his name and persona in the free trial D&B uses to promote subscriptions. ER-13; ER-190, ¶8. The free trial profile about Plaintiff includes messages indicating that the free trial user can learn more about Plaintiff, download Plaintiff's information, and track Plaintiff's activities in real-time by purchasing a paid subscription. ER-189-90, ¶¶ 6–11; ER-198-99, ¶¶ 39-42. Clearly, "[n]o law of man or of nature" compels D&B to use Plaintiff's name and persona in this way to sell its D&B Hoovers product. *See Fox*, 492 U.S. at 474. D&B could remove California residents from its free trial. It could limit the free trial database only to individuals who have consented. It could replace its free trial reports about specific individuals with generic "John Doe" reports. Or it could remove the promotional messages linking the purchase of a subscription to the possibility of learning more about Plaintiff. Any

of these choices would allow D&B to continue promoting the D&B Hoovers product without violating Plaintiff's intellectual property rights. That it is possible for D&B to promote its searchable database and person-tracking services without reference to Plaintiff's name and persona demonstrates that the two are not inextricably intertwined. Like the ratings section of the book in *Ariix*, and unlike the statements about charitable purpose in *Riley*, D&B could easily stop using Plaintiff's name and persona in its free trial without losing the ability to promote its product.

This conclusion is supported by the fact that many courts have rejected First Amendment challenges to right of publicity claims against websites that, like D&B, use "free trial" or "teaser" access to profiles of personal information to advertise subscriptions to a broader searchable database. *See, e.g.*, *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 WL 1575219, at *2–3 (W.D. Wash. Apr. 22, 2021) (use of names and personal information to promote subscriptions to an online directory of personal information is commercial speech and not protected); *Krause v. RocketReach*, LLC, 561 F. Supp. 3d 778, 783 (N.D. Ill. 2021) (rejecting First Amendment challenge in part because "Plaintiff's [right of publicity] claim does not challenge her inclusion in the defendant's 'directory'"); *Kellman v. Spokeo, Inc.*, 599 F.Supp.3d 877, 899 (N.D. Cal. 2022) (same); *Camacho v. Control Grp. Media Co.*, No. 21-cv-1954, 2022 WL 3093306, at *19 (S.D. Cal. July 18, 2022) (same). Several courts evaluating similar claims have held that a website's offering

43

of "free trial" or "teaser" access is commercial speech that is not inextricably intertwined with the underlying database, and therefore must be evaluated separately for First Amendment purposes. For example, in *Knapke v. PeopleConnect Inc.*, a website advertised subscriptions by offering free searchable access to low-resolution yearbook photographs, promising that paying subscribers receive access to more and higher-resolution photographs. 553 F. Supp. 3d 865, 871–72 (W.D. Wash. 2021), *rev'd and remanded on other grounds*, 38 F.4th 824 (9th Cir. 2022). The court rejected the website's argument that its free access advertisements were "inextricably intertwined" with the underlying subscription product, noting that "the challenged conduct is not the offer of access to yearbooks." *Id*. at 879; *see also Boshears v. PeopleConnect Inc.*, No. 21-cv-01222, 2022 WL 888300, at \*10–11 (W.D. Wash. Mar. 25, 2022) (same). So too here: Plaintiff does not challenge the inclusion of her report in D&B's searchable database. Plaintiff challenges only the use of her name and persona in D&B's free trial advertising

### iii. As many district courts have held in similar cases, Plaintiff's claims easily survive intermediate scrutiny.

Plaintiff's claims easily survive intermediate scrutiny. Under *Central Hudson*, courts apply "a four part analysis." 447 U.S. 557, 566 (1980). First, to qualify for First Amendment protection at all, the speech "must concern lawful activity and not be misleading." *Id*. Second, the court "ask[s] whether the asserted governmental interest is substantial." *Id*. Third, the court "must determine whether the regulation

directly advances the governmental interest asserted." *Id*. And fourth, the regulation should be "not more extensive than is necessary to serve that interest." *Id*. With respect to the third and fourth parts of the analysis, the Supreme Court has noted that this "fit" requirement "is not necessarily perfect, but reasonable . . . not necessarily the single best disposition but one whose scope is in proportion to the interest served." *United States v. Am. Library Ass'n, Inc*., 539 U.S. 194, 218 (2003) (quoting *Fox*, 492 U.S. at 480). In practice, "almost all of the restrictions disallowed under *Central Hudson's* fourth prong have been substantially excessive, disregarding far less restrictive and more precise means." *Fox*, 492 U.S. at 479.

With respect to the first part of the *Central Hudson* analysis, it is doubtful that D&B's use of Plaintiff's name and persona to advertise qualifies for any First Amendment protection at all, because, as the *Knapke* court found when analyzing similar advertisements, D&B "misappropriates [Plaintiff's] persona and potentially misleads the public." *Knapke*, 553 F. Supp. 3d at 880. In *Knapke*, a website advertised subscriptions by offering free searchable access to low-resolution yearbook photographs, promising that paying subscribers receive access to more and higher-resolution photographs. *Id*. at 871–72. Here, D&B's advertisements "potentially mislead[] the public" for the same reason, by falsely suggesting Plaintiff and the Class members' willingly shared their contact information with D&B and approve of D&B's product. *See Knapke*, 553 F. Supp. 3d at 880. Because D&B's

advertisements fail the first part of the analysis, Plaintiff's claims survive intermediate scrutiny, and the remaining parts of the *Central Hudson* analysis are not relevant.

Should a court proceed to the second part of the *Central Hudson* analysis, Plaintiff's right of publicity and misappropriation claims advance California's "substantial interest in enabling its citizens to protect the non-consensual commercial exploitation of their likeness." *Knapke*, 553 F. Supp. 3d at 880; *Boshears*, 2022 WL 888300 at *10–11. As the Supreme Court has recognized, a state's interest in protecting the right of publicity "is closely analogous to the goals of patent and copyright law" and prevents "unjust enrichment by the theft of good will." *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977) (analyzing Ohio claims). The right of publicity protects an individual's economic right to control and enjoy the benefits of the commercial use of her name and persona. *See, e.g.*, *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 151 (3d Cir. 2013) ("plaintiffs' names and likenesses belong to them. As such they are property. They are things of value."). Where, as here, a business misappropriates individuals' personas without their consent to advertise subscriptions to a people-search website used by professional salespeople, the state has a substantial interest in redressing that injury. *See, e.g.*, *Spindler v. Seamless Contacts, Inc.*, No. 22-cv-787, 2022 WL 16985678 (Oct. 24, 2022) (denying motion to dismiss right of publicity claims against defendant with

nearly identical business practices to D&B's); *Martinez*, 2022 WL 1078630 (same); *Siegel*, 2021 WL 4306148 (same).

In addition to protecting from the economic theft of intellectual property, right of publicity laws also serve a state's substantial interest in protecting its citizens from dignitary and emotional harm. "[T]he right of publicity is an intensely personal right meant . . . to protect against personal and dignitary harms, such as having one's persona associated with a product or idea of which he disapproves." *Hebrew Univ. v. Gen. Motors LLC*, 903 F. Supp. 2d 932, 938–39 (C.D. Cal. 2012) (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 46 cmt. c). Misappropriation of a name or likeness impacts "one's own piece of mind" and "may cause suffering much more acute than that caused by a bodily injury." *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 86–87 (1955) (citations omitted).

Here, Plaintiff alleges precisely the economic and dignitary harms the state of California has a substantial interest in preventing. D&B "injured [Plaintiff] by taking her intellectual property without compensation." ER-199-200, ¶ 47. D&B also "caused [Plaintiff] mental injury and disturbed her peace of mind" because "[Plaintiff] is deeply uncomfortable" with D&B's "using her name and persona in advertisements for a product" that "enables harassing and unwanted sales and marketing" and which "she has no desire to promote." *Id.* ¶¶ 47–50.

47

With respect to the third and fourth parts of the *Central Hudson* analysis, California's right of publicity law "directly advance[s] [the state's] interest" through means that are "reasonably well-tailored," because the law includes "broad exemptions for matters that are newsworthy, of public interest, or matters of public affairs," which are "the core First Amendment purposes." *Kellman*, 599 F.Supp.3d at 901. As applied in this lawsuit, the relief Plaintiff seeks from D&B "directly advances" the interests the right of publicity law is designed to protect and does not limit protected speech any more than necessary to achieve those interests. *See Central Hudson*, 447 U.S. at 566; *Fox*, 492 U.S. at 479–80. Plaintiff does not seek to restrain D&B's distribution of the searchable database, nor even does she seek to prevent D&B from surveilling his activities via its people-tracking service. Plaintiff seeks economic compensation for D&B's misappropriation and misuse of her name and persona and an injunction prohibiting D&B from continuing to use her persona in its free trial without consent. ER-204-05, ¶ 78. Whatever First Amendment value the D&B Hoovers database delivers to its subscribers as a source of information, Plaintiff's claim leaves that value untouched. As the court in *Boshears* recognized, that a plaintiff "seeks to stop [the] use of his likeness to advertise [a] subscription service" does not imply that the plaintiff is "attacking [the] dissemination" of the service itself. *See also Lukis*, 542 F. Supp. 3d at 752; *Martinez*, 2022 WL 1078630, at *5; *Krause*, 561 F. Supp. 3d at 783; *Camacho*, 2022 WL 3093306, at *19.

48

In sum, Plaintiff's claims easily survive intermediate scrutiny.

### iv. D&B failed to carry its burden of showing its teaser profiles qualify as a transformative use.

The district court correctly held that D&B failed to show as a matter of law that the teaser profiles promoting its directory of personal information and "real-time alert" service for tracking individuals' job changes and internet searches are "transformative, expressive work[s]." *See* ER-15-16. They are not. The "transformative use" doctrine applies only to "creative" works in which "an artist's skill and talent" "transform[s]" an image into "something other than the likeness." *Keller v. Elec. Arts Inc.*, 724 F.3d 1268, 1274 (9th Cir. 2013) (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 404 (2001)). A cartoon that is "distorted for purposes of lampoon, parody, or caricature" is a transformative use, while a "conventional portrait" is not. *Hilton*, 599 F.3d at 910. As D&B admits, transformative use doctrine likely does not protect any uses other than "an artistic visual depiction of a celebrity image." Appellant's Br., 52 (quotation omitted). Nevertheless, D&B barges ahead, attempting to apply a doctrine it admits has no relevance to this case. The attempt fails.

Here, neither the profiles nor the tracking services reflect "creative" or "transformative" work by an "artist" at D&B. D&B's profiles display individuals' names, occupations, locations, contact information, and colleagues identities without modification or commentary. *See* ER-194-97. While Plaintiff has not yet

seen "real-time alerts" and expects to learn their content and functioning through discovery, D&B's marketing indicates this tracking service is similarly factual and devoid of creative elements. *See* ER-199, ¶ 42. The exhibits D&B belatedly and improperly cites for the first time in this appeal do nothing to suggest that either the teaser profiles or the underlying service communicate anything but factual information, without parody or other creative modification. The district court was correct to hold D&B failed to show "transformative use" protects its. *See Davis*, 775 F.3d at 1178 (rejecting transformative use defense where, as here, the defendant simply replicated information about the plaintiff).

The cases D&B cites serve only to illustrate how far removed its product is from any use that could be considered "transformative." D&B has not produced a docudrama re-interpreting major events in the life of a famous actress. *Cf. De Havilland*, 21 Cal. App. 5th 845. *Comedy III* found that a "literal, conventional depiction of The Three Stooges" showed "no significant transformative or creative contribution" and allowed the plaintiff's right of publicity claim to proceed. 25 Cal. 4th 387, 409. The Court should affirm the same result with respect to D&B's "literal, conventional" profiles and real-time alerts about Class members.

### 2. D&B failed to carry its burden of showing the public interest exception to section 3344 undermines the required minimal merit.

D&B argues Plaintiff's claims lack even minimal merit because D&B's commercial use of Plaintiff's persona is "in connection with . . . public affairs" and

therefore falls within the "public interest" exception codified at CAL CIV. CODE § 3344(d). This argument fails.

The "public interest" or "public affairs" exception "rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 793, 40 Cal. Rptr. 2d 639 (1995). The exception covers "almost all reporting of recent events" about people who "create a legitimate and widespread attention to their activities." *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, 804 (N.D. Cal. 2011) (internal citations omitted). Although not strictly confined to news articles and reporting, the content must "significantly contribute to a matter of public interest." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). D&B wrongly asserts that Section 3344's public interest exception is "broader" than the First Amendment. Appellant's Br., 54. This gets the law backwards. The "public interest defense" is "based on the First Amendment," but the First Amendment "is broader than the. . . public interest defense[]." *Hilton*, 599 F.3d at 909, n.11.

The district court correctly held that D&B's "use of [plaintiff's] name and likeness to advertise subscriptions to the D&B Hoovers database" does not fit within the public interest exception. ER-13. Plaintiff's name, contact information, job title, and "Triggers" are not "in connection with any news, public affairs, or sports broadcast or account, or any political campaign," CAL. CIV. CODE § 3344(d), nor do

they concern "recent events." *See Fraley*, 830 F. Supp. 2d at 804. Plaintiff is not someone who creates "a legitimate and widespread attention to their activities." *See id.* She is a librarian in a small city. *See* ER-178-84.

Even were Plaintiff's name and contact information matters of "public interest," the exceptions still would not apply because, again, Plaintiff's claims are directed at the use of her persona to advertise subscriptions, not D&B's distribution of her profile to subscribers. Even information that is clearly newsworthy is unprotected when used to advertise a product. *Abdul–Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir.1996) (newsworthy information was "not protected by§ 3344(d)" when used "in the context of an . . . advertisement"); *Fraley*, 830 F. Supp. 2d at 804–5 ("Even newsworthy acts may nonetheless still result in liability under § 3344. . . [Defendant's] commercial use of those actions in [advertisements] removes them from the scope of § 3344(d)").

As explained throughout this brief, there is a difference between providing information and using information to advertise a service. Recognizing the distinction, many district courts have rejected D&B's "public interest/public affairs" argument in parallel cases. *See, e.g*., *Lukis*, 454 F. Supp. 2d at 752; *Martinez*, 2022 WL 1078630, at *7; *PeopleConnect*, 2021 WL 5050079, at *17–18.

D&B's reliance on *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001) is unavailing. There, "factual data concerning [professional major league

baseball] players" was immune from suit because "the athletic performance of these plaintiff commands a substantial public interest." *Id.* at 410–11. Here, Plaintiff is not a professional athlete, nor does her contact information "command substantial public interest."

### 3. D&B failed to carry its burden of showing its UCL argument undermines the required minimal merit.

D&B argues Plaintiff's UCL claims must fail because her other claims fail. Appellant's Br., 59. For the reasons articulated throughout this brief, this argument fails.

D&B also argues that Plaintiff's UCL claim must fail because she has not properly alleged lost "money or property." Appellant's Br., 59–60. D&B did not make this argument in its motion before the district court. *See* ER-158. It is therefore waived on appeal. *See In re Mercury*, 618 F.3d at 992. Even had D&B raised this argument to the district court, Plaintiff plead lost "money or property" under the UCL by pleading D&B failed to pay her for its commercial use of her persona. *See, e.g.*, *Callahan v. PeopleConnect*, 2021 WL 5050079, at *18–19 (UCL statutory standing satisfied because "names and likenesses are intellectual property. . . [and] Plaintiffs . . . were not paid for the use"); *Kellman*, 599 F. Supp. 3d at 895–96 (same).

**4. D&B failed to carry its burden of showing its standing argument undermines the required minimal merit.**

The district court correctly held that Plaintiff has standing for both her statutory right of publicity and common law misappropriation claims. ER-6-10. Under *TransUnion*, courts evaluating whether a statutory violation gives rise to standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." 141 S. Ct. at 2204. If a common-law analogue exists, and the harm alleged "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common law, then standing exists. *Id.* at 2209 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)).

Here, Plaintiff alleges claims under California's right of publicity statute, CAL. CIV. CODE § 3344, and the analogous California tort of misappropriation of name and likeness. The statute is a modernization of and complement to the tort. *Downing v. Abercrombie Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998). Because Plaintiff alleges harms that traditionally gave rise to a common law tort claim, Plaintiff has standing to pursue both her statutory and common law claims. *See Kellman*, 599 F.Supp.3d at 889 (plaintiffs had standing to assert both claims because they alleged "harm[s] recognized at common law"); *Sessa*, 561 F.Supp.3d at 1020 ("Plaintiffs have alleged concrete injury . . . because they seek relief for claims analogous to those available at common law"). Plaintiff alleges four such harms. ER-199-200, ¶¶ 47–50.

54

**First**, Plaintiff alleges economic injury in the form of D&B's failure to compensate her for its unauthorized use of her persona, which "denied Plaintiff[] the economic value of [her] likeness[]." *See PeopleConnect*, 2021 WL 5050079, at *15. **Second**, Plaintiff alleges injury from D&B's infringement of her intellectual property. At common law, the misappropriation of this property was itself injury, just as the unauthorized use of copyrighted or trademarked material is injury. *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("[C]ommon law rights are also property rights. Appropriation of such common law rights is a tort in California."). **Third**, Plaintiff alleges injury from D&B's denial of her right to control the commercial use of her name and persona. Traditionally, the right of publicity protects "the inherent right of every human being to control the commercial use of his or her identity." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 n.6 (9th Cir. 2006). In *Fraley*, the court found the plaintiffs had Article III standing to pursue a § 3344 claim because § 3344 arose from California common law protecting "the right to prevent others from appropriating elements of one's identity for commercial gain." 830 F. Supp. at 806. Therefore, "alleg[ing] a violation of their individual statutory rights" was sufficient to allege "an invasion of a legally protected interest for Article III purposes." *Id.* at 797. **Fourth**, Plaintiff alleges D&B's illegal conduct caused her mental injury and disturbed her peace of mind. At common law, mental injury "suffered from an appropriation of the attributes of one's

55

identity" was injury giving rise to a cause of action. *See Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 921, 824–25 (9th Cir. 1974).

Arguing that Plaintiff's allegations of economic injury are insufficient, D&B relies on *In re Google, Inc. Privacy Policy Litig.* for the generic proposition that "a plaintiff must do more than point to the dollars in a defendant's pocket." Appellant's Br., 62 (*citing* 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013)). However, this reasoning has been superseded. In *Davis v. Facebook, Inc.*, this court held that the plaintiffs had standing because they alleged "Facebook [was] unjustly enriched through the use of their data." 956 F.3d 589, 599 (9th Cir. 2020). Because "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss," the plaintiffs had "adequately pleaded an entitlement to Facebook's profits." *Id*. at 600. Here, that Plaintiff suffered economic injury is even clearer than in *Davis*, because California law recognizes Plaintiff's right to control and be compensated for the commercial use of her persona.

D&B argues Plaintiff's allegations of emotional disturbance are implausible because "she is not emotionally upset when it is a person accessing Hoovers through a subscription" who sees her information. Appellant's Br. *64. D&B offers no support for this absurd claim, which is false. Plaintiff is emotionally disturbed *both* by D&B's use to advertise, *and* by the underlying product, which she "believes . . .

56

encourages and enables harassing and unwanted sales and marketing communications." *See, e.g.*, ER-200, ¶ 50. That her legal claim arises only from the advertisement does not mean she is not also upset by the product being advertised.

## CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court stay this appeal pending *Martinez*. Should the Court decline to stay, it should remand for lack of jurisdiction. Should this Court entertain this appeal, it should affirm. Should it reverse, it should remand with instructions to allow the Plaintiff to conduct discovery.

Dated: August 16, 2023          By: */s/ Benjamin R. Osborn*

Benjamin R. Osborn
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Phone: (347) 645-0464
Email: ben@benosbornlaw.com

Michael F. Ram (SBN 104805)
mram@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

Raina C. Borrelli

raina@turkestrauss.com
Samuel J. Strauss
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

*Attorneys for Plaintiff-Appellee*

# CERTIFICATE OF COMPLIANCE

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____23-15260_____

I am the attorney or self-represented party.

**This brief contains _____13,858_____ words,** including _____0_____

words manually counted in any visual images, and excluding the items exempted by

FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___/s/Benjamin R. Osborn_____ **Date** __August 16, 2023_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

59

## STATEMENT OF RELATED CASES

Plaintiff is aware of the following related case pending before this Court: *Kim-Carter Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305. The Court heard oral argument in *Martinez* on April 14, 2023. As Plaintiff showed in her Motion to Stay (Dkt. No. 20), the issues presented in *Martinez* are the same issues presented here.

By: */s/ Benjamin R. Osborn*

# ADDENDUM

## Pursuant to Circuit Rule 28-2.7

## ADDENDUM – TABLE OF CONTENTS

| Page | Statute |
|------|---------|
| A-1 | Cal. Civ. Code § 3344 – Using another's name, voice, signature, photograph or likeness |
| A-3 | Cal. Code Civ. Proc. § 425.17 – Inapplicability of anti-SLAPP law |
| A-5 | Cal. Code Civ. Proc. § 425.16 – California anti-SLAPP law |