**No. 23-15260**



### In the
# United States Court of Appeals
## For the Ninth Circuit

ODETTE R. BATIS,

*Plaintiff-Appellee,*

v.

DUN & BRADSTREET HOLDINGS, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of California
District Judge Maxine M. Chesney, No. 3:22-cv-01924-MMC

## APPELLANT'S REPLY BRIEF

Ashley I. Kissinger (SBN 193693)
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956
KissingerA@ballardspahr.com

Elizabeth L. Schilken (SBN 241231)
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350
SchilkenE@ballardspahr.com

Emmy Parsons
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Telephone: 202.661.2200
Facsimile: 202.661.2299
ParsonsE@ballardspahr.com

Michael R. O'Donnell
Michael P. O'Mullan
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Facsimile: 973.538.1984
MODonnell@RIKER.com
MOMullan@RIKER.com

*Attorneys for Defendant-Appellant*

# **TABLE OF CONTENTS**

**I.**    **Plaintiff's answering brief is based on irrelevant misrepresentations about Hoovers that find no support in the record. ..................................................................................... 1**

**II.**    **This Court has jurisdiction. .......................................................... 4**

     **A. Plaintiff waived her "public interest" exception argument. .......... 5**

     **B. Section 425.17(d)(2) precludes application of the public interest and commercial speech exceptions. ..................................... 5**

     **C. Section 425.17(b) is inapplicable in any event. ............................... 7**

     **D. Section 425.17(c) is also inapplicable. .................................................. 9**

     **E. Denials of anti-SLAPP motions are immediately appealable. ..... 11**

**III.**   **The challenged speech implicates an issue of public interest; D&B satisfied prong one of its anti-SLAPP motion. .......................................... 11**

**IV.**   **Plaintiff has not made a prima facie showing of merit. ......................... 16**

     **A. D&B's evidence defeats Plaintiff's claims, and Plaintiff presented no rebuttal evidence. ........................................................ 16**

     **B. Plaintiff concedes her claims fail under strict scrutiny, and her arguments for applying intermediate scrutiny are without merit ................................................................................... 17**

        **1. Plaintiff's new argument that Hoovers *itself* is not fully protected speech is both waived and wrong. ....................... 17**

        **2. Plaintiff's claims are aimed at speech, not conduct. ............ 17**

        **3. Plaintiff presents no cognizable theory to support her contention that Hoovers is subject to reduced constitutional protection ........................................................ 18**

4. The free trial is inextricably intertwined with the Hoovers database itself. ........................................................ 19

5. The other right of publicity class action decisions are distinguishable. ..................................................................... 21

C. Plaintiff's claims also do not survive intermediate scrutiny. ....... 23

D. Plaintiff does not contest that the adjunct advertising exception applies. ................................................................ 24

E. Hoovers is transformative. ................................................... 25

F. The public interest exception applies to Plaintiff's right of publicity claims. ...................................................................... 26

G. Plaintiff's UCL claim is derivative of her right of publicity claims. .................................................................................... 28

V. In the alternative, Plaintiff lacks Article III standing. ............................ 29

VI. Conclusion ............................................................................................ 30

CERTIFICATE OF COMPLIANCE ................................................................. 32

CERTIFICATE OF SERVICE .......................................................................... 33

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Am. Bev. Ass'n v. City & Cnty. of S.F.*,
    916 F.3d 749 (9th Cir. 2017) ...............................................................8, 9

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) .........................................................19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................30

*Authors Guild v. Google*,
    804 F.3d 202 (2d Cir. 2015) ..................................................................26

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001)...........................................................................17, 18

*Bass v. Facebook*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019)..................................................29

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ...........................................................4, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................30

*Blanchard v. DIRECTV*,
    123 Cal. App. 4th 903 (2004) ...................................................................9

*Bonilla v. Ancestry.com Operations*,
    574 F. Supp. 3d 582 (N.D. Ill. 2021).....................................................21

*Boshears v. PeopleConnect*,
    2022 U.S. Dist. LEXIS 54277 (W.D. Wash. Mar. 25, 2022)..................22

*Callahan v. PeopleConnect*,
    2021 U.S. Dist. LEXIS 210857 (N.D. Cal. Nov. 1, 2021) ..............21, 22, 27

*CALPERS v. Moody's Investor Serv.*,
226 Cal. App. 4th 643 (2014) ...............................................................15

*Camacho v. Control Grp. Media Co.*,
2022 U.S. Dist. LEXIS 140211 (S.D. Cal. July 18, 2022) ...............................22

*Central Hudson Gas & Electric v. Public Service Commission*,
447 U.S. 557 (1980)...........................................................................23

*Charles v. City of L.A.*,
697 F.3d 1146 (9th Cir. 2012) ...............................................................20

*City of Rocklin v. Legacy Family Adventures-Rocklin*,
86 Cal. App. 5th 713 (2022) ...................................................................6

*Club Members for an Honest Election v. Sierra Club*,
45 Cal. 4th 309 (2008) ....................................................................7, 8

*Comedy III Prods. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) .......................................................................25

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975).........................................................................15

*Davis v. Avvo, Inc.*,
2012 U.S. Dist. LEXIS 43743 (W.D. Wash. Mar. 28, 2012)............................15

*Davis v. Facebook*,
956 F.3d 589 (9th Cir. 2020) ...............................................................29

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ...............................................................11

*De Havilland v. FX Networks*,
21 Cal. App. 5th 845 (2018) ..............................................................26, 27

*Dex Media W. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ...............................................................24

*Dora v. Frontline Video*,
15 Cal. App. 4th 536 (1993) .............................................................15, 28

v

*Dun & Bradstreet v. Greenmoss Builders*,
  472 U.S. 749 (1985)........................................................15, 18, 19

*Exeltis USA v. First Databank*,
  2017 U.S. Dist. LEXIS 210482 (N.D. Cal. Dec. 21, 2017)...............................15

*Facenda v. NFL Films*,
  542 F.3d 1007 (3d Cir. 2008) ........................................................20

*FilmOn v. DoubleVerify*,
  7 Cal. 5th 133 (2019) ........................................................10, 14

*Fraley v. Facebook*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011)........................................................27, 28

*Gabiola v. Sarid*,
  2017 U.S. Dist. LEXIS 157699 (N.D. Ill. Sept. 26, 2017)...............................22

*Geiser v. Kuhns*,
  13 Cal. 5th 1238 (2022) ........................................................12, 13, 14

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400 (2001) ........................................................25, 28

*In re Google Privacy Policy Litigation*,
  2013 U.S. Dist. LEXIS 171124 (N.D. Cal. Dec. 3, 2013)...............................29

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ........................................................16, 27

*Hoffman v. Capital Cities/ABC*,
  255 F.3d 1180 (9th Cir. 2001) ........................................................20

*JAMS v. Superior Court*,
  1 Cal. App. 5th 984 (2016) ........................................................10

*Jordan-Benel v. Universal City Studios*,
  859 F.3d 1184 (9th Cir. 2017) ........................................................16

*Kellman v. Spokeo*,
  599 F. Supp. 3d 877 (N.D. Cal. 2022)........................................................22

vi

*Knapke v. PeopleConnect*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021) ....................................................22, 23

*Kolebuck-Utz v. Whitepages*,
  2021 U.S. Dist. LEXIS 77300 (W.D. Wash. Apr. 22, 2021) .............................22

*Krause v. Rocketreach*,
  561 F. Supp. 3d 778 (N.D. Ill. Sept. 21, 2021)................................................22

*Kronemyer v. Internet Movie Database*,
  150 Cal. App. 4th 941 (2007) ..........................................................................15

*Lukis v. Whitepages*,
  542 F. Supp. 3d 831 (N.D. Ill. 2020)..........................................................22, 27

*Major v. Silna*,
  134 Cal. App. 4th 1485 (2005) .........................................................................6, 7

*Martin Baker Aircraft Co. v. Teledyne Risi*,
  2020 U.S. Dist. LEXIS 186262 (C.D. Cal. Oct. 6, 2020) .................................16

*Martinez v. ZoomInfo Techs.*,
  2022 U.S. Dist. LEXIS 66673 (W.D. Wash. Apr. 11, 2022) .............................21

*Martinez v. ZoomInfo Techs.*,
  2023 U.S. App. LEXIS 25030 (9th Cir. Sept. 21, 2023)..................................5, 8

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ..........................................................................5, 17

*Montana v. San Jose Mercury News*,
  34 Cal. App. 790 (1995) ....................................................................................26

*New Kids on the Block v. News Am. Publ'g*,
  971 F.2d 302 (9th Cir. 1992) .............................................................................27

*Nolen v. Peopleconnect*,
  2023 U.S. Dist. LEXIS 113630 (N.D. Cal. June 30, 2023)...............................22

*Okorie v. L.A. Unified Sch. Dist.*,
  14 Cal. App. 5th 574, 590 (2017) ......................................................................16

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)......................................................................................19

*Riley v. Nat'l Fed'n of the Blind*,
487 U.S. 781 (1988)..................................................................................20, 24

*Romain v. Shear*,
799 F.2d 1416 (9th Cir. 1986) .....................................................................14

*Ross v. Kish*,
145 Cal. App. 4th 188 (2006) .......................................................................17

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ........................................................................16

*Serova v. Sony Music Entertainment*,
13 Cal. 5th 859 (2022) ........................................................................9, 10, 26

*Sessa v. Ancestry.com Operations*,
561 F. Supp. 3d 1008 (D. Nev. 2021)............................................................22

*Siegel v. Zoominfo Techs.*,
2021 U.S. Dist. LEXIS 180351 (N.D. Ill. Sept. 22, 2021)..............................21

*Simpson Strong-Tie Co. v. Gore*,
49 Cal. 4th 12 (2010) ...............................................................................5, 10

*Snyder v. Phelps*,
562 U.S. 443 (2011).......................................................................................14

*Spindler v. Seamless Contacts*,
2022 U.S. Dist. LEXIS 211512 (N.D. Cal. Oct. 24, 2022) ........................22, 23

*Stutzman v. Armstrong*,
2013 U.S. Dist. LEXIS 129204 (E.D. Cal. Sept. 9, 2013) ..............................24

*Trans Union Corp. v. FTC*,
245 F.3d 809 (D.C. Cir. 2001)..................................................................15, 19

*United Bhd. of Carpenters v. NLRB*,
540 F.3d 957 (9th Cir. 2008) ........................................................................24

viii

*United States v. Alvarez*,
    567 U.S. 709 (2012)...............................................................................19

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016)...................................................15

*Will v. Hallock*,
    546 U.S. 345 (2007) ...............................................................................11

*William O'Neil & Co. v. Validea.com*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) .................................................18

**Statutes**

28 U.S.C. § 1291 ..........................................................................................11

Cal. Bus. & Prof. Code § 17204 ..................................................................28

Cal. Civil Code § 3344..............................................................................27, 28

Cal. Civ. Proc. Code § 425.17 ............................................................*passim*

Cal. Gov't Code § 7921.000 .....................................................................8, 28

**Other Authorities**

S.B. 1296 (Cal. 1997) ..................................................................................14

U.S. Const. amend. I ............................................................................*passim*

ix

This case asks whether D&B can provide a public preview of its First Amendment protected business publication in the form of a free trial. Plaintiff, rather than address this question head-on, weaves a false narrative of intrusive business practices untethered from the record and of no relevance to the questions presented to this Court. She also makes new arguments that have been waived and have no merit. The district court's decision should be reversed.

## I. Plaintiff's answering brief is based on irrelevant misrepresentations about Hoovers that find no support in the record.

Hoovers is a First Amendment protected business publication that incorporates facts and analysis about businesses and government entities, including business and government contact information for select employees.

Plaintiff relies on misrepresentations about Hoovers exhaustively debunked below with admissible evidence Plaintiff chose to ignore. In the face of a well-developed factual record, Plaintiff now claims that D&B submitted the evidence only in support of its Rule 12(b)(6) motion. AB-22.[1] But, the record is clear: D&B's anti-SLAPP motion "challenges *both* the legal and factual sufficiency of Plaintiff's claims" and "D&B disputes, *with evidence*, Plaintiff's factual

---

[1] D&B's Opening Brief is abbreviated "OB"; Plaintiff's Answering Brief is "AB."

contentions." ER-148 (emphasis added).[2] Plaintiff should not be permitted to supplant the record below with unsupported allegations.

For example, Plaintiff claims that D&B uses Plaintiff's information as a "teaser" to "advertise" Hoovers subscriptions. *E.g.*, AB-2-3; *see also* ER-194-199. This is a purposeful distortion: there is no solicitation for a subscription of Hoovers when viewing Plaintiff's profile. *See* ER-95 ¶ 13 ("D&B Hoovers does not single out Plaintiff's business contact profile to free trial users; it merely includes it as part of the entire contents of the database available to free trial users."); ER-171 ¶ 27 ("Prospective purchasers using the free trial get the same results in response to queries that subscribers do."); ER-197-198. Plaintiff's profile is not an "advertisement," and even if it is, the existence of a preview of a First Amendment-protected publication is itself protected by the First Amendment. *See infra* Part IV.D; Amicus Br. at 13-19.

Plaintiff also alleges, without evidence, that Hoovers' "Triggers" are "events in Plaintiff's life" and that Hoovers contains her "personal" (not professional)

---

[2] D&B's anti-SLAPP motion, brief in support, and declarations all made clear that D&B submitted the evidence in support of its anti-SLAPP motion challenging the factual basis for Plaintiff's Complaint. *See* ER-143-149 (citing the evidence); ER-91-96, ER-133-135, ER-164-171, ER-172-174 (notice of motion and declarations submitted in support of anti-SLAPP motion).

information, such as "cities of residence."[3]  AB-1, AB-3.  This is again patently false.  Triggers are not events in Ms. Batis' life, *see* ER-94 ¶ 9, triggers are simply news alerts about businesses from outside media sources, ER-94-95 ¶ 10.[4]

Plaintiff next claims "the most intrusive and disturbing feature" of Hoovers is that it allows users to track individuals' internet searches.  *E.g.*, AB-1-2.  This also is false.  Hoovers does not enable users to track Plaintiff's *or any individual's* internet searches.[5]  *See* ER-93 ¶ 6.

Finally, Plaintiff erroneously suggests Hoovers is of interest only to a small audience of professional salespeople, *e.g.*, AB-10, when the unrebutted evidence shows that "[p]ublic demand for D&B Hoovers subscriptions is broad, and hardly limited to a small or specific audience.  Indeed, approximately 8400 subscribers, including publicly traded and private companies, government entities, individuals

---

[3]  Hoovers includes only business information relating to Plaintiff's employment with the City of Richmond.  ER-94-95 ¶ 10 ("To be clear, D&B Hoovers does not publish Plaintiff's photograph, age, city of residence[] … or other non-business related information in her profile."); ER-166 ¶ 12 (Hoovers contains "business-related information *only*") (emphasis in original); ER-167 ¶ 15 (phone number is *city's* phone number).

[4]  Triggers "relate to *employers* or *industries*, not to *individuals* such as the Plaintiff."  ER-93 ¶ 5 (emphasis in original).

[5]  Plaintiff's reference to "buyer intent" (behavioral marketing) data, AB-2 nn.1-2, which Plaintiff does not allege is unlawful, is another irrelevant distraction.  Hoovers only provides users with buyer intent data about *companies'* intent to buy, not individuals' intent to buy.  ER-93 ¶¶ 5-6.

and educational and research institutions currently subscribe to D&B Hoovers."
ER-92-93 ¶¶ 3-4 (citing Stanford University Graduate School of Business Library,
U.S. Government agencies, including FDA, EPA, U.S. Department of Commerce
and Executive Office of the President, among other subscribers).

D&B introduced evidence proving false Plaintiff's allegations about
Hoovers. Plaintiff could have but chose not to submit rebuttal evidence or seek
discovery. Having failed to do so, Plaintiff may not continue to misrepresent
Hoovers to the Court, and is bound by this record on appeal.

## II.   This Court has jurisdiction.

Plaintiff argues the "public interest" and "commercial speech" exceptions to
the anti-SLAPP statute, Cal. Civ. Proc. Code ("C.C.P.") §§ 425.17(b)-(c), apply,
depriving this Court of jurisdiction. AB-10-13. First, Plaintiff waived this
argument with respect to Section 425.17(b), and it fails on the merits, in any event.
Second, Section 425.17(d)(2) exempts application of these exceptions where, as
here, Plaintiff's action attacks a protected speech product. Third, on their face,
neither exception applies.

Plaintiff's argument for overturning *Batzel v. Smith*, 333 F.3d 1018 (9th Cir.
2003), also lacks merit.

### A. Plaintiff waived her "public interest" exception argument.

Plaintiff did not argue the application of Section 425.17(b) in the district court and thus forfeited this argument. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("We apply a 'general rule' against entertaining arguments on appeal that were not presented or developed before the district court."). As the California Supreme Court held in *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 24-25 (2010), both exceptions to the anti-SLAPP statute must be pleaded *and proved* by the plaintiff. Further, the exceptions must be "narrowly construed." *Id.* at 22. Plaintiff failed to invoke the "public interest" exception below (and provides no evidence for it on appeal), thereby depriving D&B of the opportunity to develop the factual record on this issue.[6]

### B. Section 425.17(d)(2) precludes application of the public interest and commercial speech exceptions.

Waiver notwithstanding, Section 425.17(d)(2), which was not addressed in *Martinez*, is fatal to Plaintiff's argument. That section *exempts* application of both the "public interest" and "commercial speech" exceptions in actions like this one, brought

> against any person or entity based upon the creation, dissemination, exhibition, *advertisement*, or other similar promotion of any dramatic,

---

[6] For this reason, the recent decision in *Martinez v. ZoomInfo Techs.*, 2023 U.S. App. LEXIS 25030 (9th Cir. Sept. 21, 2023), applying the exception is distinguishable. There the plaintiff argued the public interest exception in the district court. *Id.* at *11-12.

> literary, musical, political, or artistic work, *including, but not limited to*, a motion picture or television program, or an article published in a newspaper or magazine of general circulation.

C.C.P. § 425.17(d)(2) (emphasis added).[7] "The phrase 'including, but not limited to' is a term of enlargement, and signals the Legislature's intent that subdivision (d)(2) applies to items not specifically listed in the provision." *Major v. Silna*, 134 Cal. App. 4th 1485, 1495, 1497 (2005) (an Assembly Committee report indicates "entities" protected by subdivision (d)(2) include those "engaged in *speech-related activities*" (emphasis in original)); *accord City of Rocklin v. Legacy Family Adventures-Rocklin*, 86 Cal. App. 5th 713, 733 (2022). "Accordingly, the Legislature checked the reach of the 'public interest' exception by enacting subdivision (d)(2), which preserves the application of the anti-SLAPP law to actions … that," as here, "implicate important forms of protected speech," *even if* those actions are also arguably in the public interest. *Major*, 134 Cal. App. 4th at 1497.

As the district court recognized, and Plaintiff conceded, the Hoovers database is fully protected speech, ER-14, and is plainly "an important form[] of protected speech," *see* Part III *infra*. Further, subdivision (d)(2) expressly exempts

---

[7] Similarly, under Section 425.17(d)(1) the exceptions do not apply to "any person engaged in the dissemination of ideas or expression in any book or academic journal, while engaged in the gathering, receiving, or processing of information for communication to the public."

from the exceptions "advertisements" for works that come under its purview – a legislative adoption of the adjunct advertising doctrine. *See infra* Part II.B (discussing doctrine). Thus, even if the Hoovers free trial is an "advertisement," Plaintiff's action still constitutes an attack on D&B's "speech-related activities" under subdivision (d)(2), *see Major*, 134 Cal. App. 4th at 1497, precluding application of either the "public interest" or "commercial speech" exceptions.

### C. Section 425.17(b) is inapplicable in any event.

Under the "public interest exception," the anti-SLAPP statute does not apply to any action that meets four criteria: (1) the action is "brought solely in the public interest"; (2) Plaintiff "does not seek any relief" greater or different from the class; (3) the action "would enforce an important right affecting the public interest," and (4) "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff." C.C.P. § 425.17(b). The exception does not apply here for several reasons.

First, this lawsuit is not brought "solely" in the "public interest" under the first and third criteria. Plaintiff brings this action "*both individually and* as a class action." ER-200 ¶ 51 (emphasis added). In *Club Members for an Honest Election v. Sierra Club*, the California Supreme Court explained the statute's plain language "bars a litigant seeking *'any'* personal relief from relying on the section 425.17(b) exception." 45 Cal. 4th 309, 317, 320 (2008) (emphasis added) ("[i]f

7

individualized relief is sought, a plaintiff must satisfy the requirements of the anti-SLAPP statute").

Moreover, just because Plaintiff asserts claims under a law meant to protect individuals' rights does not make the suit one in the "public interest." Such an interpretation would allow the "exception" to become the rule, contravening the California Supreme Court's admonition that it be "narrowly construed." *Id.* at 316.

While the *Martinez* Court grounded its public interest analysis on California's protection of privacy, the court did not consider the Section 425.17(d)(2) exemption because, unlike here, there was no finding that First Amendment-protected speech was implicated. Nor did the *Martinez* Court consider that California's publicity rights are, as Plaintiff concedes, intellectual property rights and distinct from privacy laws. More importantly, the *Martinez* Court did not have occasion to consider that Plaintiff's interest in *this* suit—to obtain damages for publication of her government persona—directly conflicts with the public's right to access government information. *See* Cal. Gov't Code § 7921.000 ("In enacting this division, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."). Thus, it also conflicts with D&B's constitutional right to provide it. *Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir.

2017) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights").

Second, the relief Plaintiff seeks for herself is "different from the relief sought" for the "class of which the plaintiff is a member." Plaintiff alleges emotional harm for which she seeks "actual damages." ER-203 ¶¶ 66-67. Emotional distress damages are highly individualized. Moreover, there is no support for the notion that other class members will have suffered emotional injury—injury that is facially implausible since the right of publicity is an intellectual property right. *See Blanchard v. DIRECTV*, 123 Cal. App. 4th 903, 916 (2004) (rejecting exception where plaintiffs sought personal relief for themselves, including an accounting and restitution).

Finally, Plaintiff bears the burden to prove the applicability of Section 425.17(b), yet she offered no evidence that "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." *See id.* at 914, 917.

### D. Section 425.17(c) is also inapplicable.

Plaintiff's contention that Section 425.17(c)—the "commercial speech" exception[8]—applies also fails. Section 425.17(c) only applies where a "statement

---

[8] Though described as the "commercial speech exception," Section 425.17(c) does not categorically except all commercial speech from anti-SLAPP protection. Plaintiff mischaracterizes *Serova v. Sony Music Entertainment*, 13 Cal. 5th 859,

or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services." C.C.P. § 425.17(c); *accord Simpson Strong-Tie Co.*, 49 Cal. 4th at 30-32; *see also FilmOn*, 7 Cal. 5th at 147 (Section 425.17(c) exempts only "comparative advertising"). Here, Plaintiff challenges statements in Hoovers that do not make any representations of fact about D&B's or a competitor's operations, goods or services.

For this reason, Plaintiff's reliance on *JAMS v. Superior Court*, 1 Cal. App. 5th 984 (2016), and *Serova*, are misplaced. Both cases involved speech touting a product or service. In *Serova*, the speech was an album jacket touting the authenticity of Michael Jackson's voice on the album. 13 Cal. 5th at 867. In *JAMS*, the speech was a former judge's biography published by a company specifically in the business of "promoting, arranging and handling the hiring" of former judges. 1 Cal. 5th at 988. Thus, the speech was about the defendant's services. By contrast, the professional contact profiles in Hoovers are *part of* the services being rendered.

---

875 (2022), on this point. *See* AB-12. *Serova* did not address this exception and the Court has made clear the exception applies only to a "subset" of commercial speech and "certain commercially oriented statements will fall outside the scope of section 425.17." *FilmOn v. DoubleVerify*, 7 Cal. 5th 133, 148 (2019).

**E.  Denials of anti-SLAPP motions are immediately appealable.**

Plaintiff also argues that, contrary to this Court's holding in *Batzel*, 333 F.3d 1018, anti-SLAPP denials are no longer appealable after *Will v. Hallock*, which held that, for an order to be appealable under the collateral order doctrine, it must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits …, and [3] be effectively unreviewable on appeal from a final judgment."  546 U.S. 345, 349 (2007).

While *Will* postdates *Batzel*, the precepts in *Will* Plaintiff relies on predate *Batzel* by a decade, and the *Batzel* court *expressly held* all three conditions met when an anti-SLAPP motion is denied.  *Batzel*, 333 F.3d at 1025-26.  As *Batzel* made clear, "a defendant's rights under the anti-SLAPP statute are in the nature of immunity" and therefore a district court's denial of a claim of immunity "is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."  *Id.*  Further, this Court has reaffirmed the availability of interlocutory appeals from the denial of anti-SLAPP motions after *Will*.  *E.g.*, *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1011 (9th Cir. 2013) (citing *Batzel*).  That precedent is binding.

**III.  <u>The challenged speech implicates an issue of public interest; D&B satisfied prong one of its anti-SLAPP motion.</u>**

Plaintiff argues this Court should affirm the district court's conclusion that the anti-SLAPP statute does not apply because "D&B failed to show Plaintiff's

11

teaser profile contributes to public discussion on any cognizable 'public issue.'" AB-16. D&B does not use "teaser profiles" to "advertise" Hoovers, *see supra* p. 2, but this focus is too myopic in any event. This Court must analyze the challenged speech not in isolation but in the context of the Hoovers database as a whole. OB-19. Plaintiff's other efforts to defeat D&B's prong one showing also fail.

First, Plaintiff's proposed analysis of whether speech is of public interest under the statute, AB-16-18, ignores the California Supreme Court's recent admonition that any focus "on discerning a single topic" addressed by the challenged speech is "less than satisfying because speech is rarely 'about' any single issue." *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1249 (2022). As such, Plaintiff's insistence that *her* professional contact information is not of interest to a substantial segment of the public misses the point, as it overlooks *Geiser*'s holding that the contextual considerations of speaker, purpose and audience must be considered.

Second, D&B did not, as Plaintiff alleges, "redefine[] the public issue" presented to the district court. D&B has consistently argued that the focus should be on the entire Hoovers publication and that the information in Hoovers is business information of widespread public interest. *See supra* pp. 3-4; ER-75; ER-92 ¶ 2. That this "business information" includes the names and contact

12

information for professionals is obvious on the face of Plaintiff's Complaint, and in the parties' arguments.

Third, as set forth above, Plaintiff's argument that D&B never cited evidence in support of its anti-SLAPP claim, AB-22, is false. D&B's anti-SLAPP motion was a factual challenge to Plaintiff's Complaint and relied on three supporting declarations evidencing that the information in Hoovers implicates an issue of public interest. *See supra* Part I; ER-91-96, ER-133-135, ER-164-171, ER-172-174. Likewise, Plaintiff's claim that she did not waive discovery because D&B requested discovery be deferred is both incorrect[9] and irrelevant. If Plaintiff wanted discovery to oppose the motion, it was incumbent upon her to seek it or, at the very least, to oppose D&B's motion on the basis that discovery was needed. She did not do so.

Fourth, Plaintiff claims the district court applied the two-step prong one analysis required by *Geiser*, but the district court acknowledged neither the two-step analysis nor *Geiser*, nor did it address the mandated contextual factors of

---

[9] The Court rejected Plaintiff's attempt to add to the record an email chain between counsel that was not in the record below. ECF No. 27. Yet Plaintiff's purported "corrected" brief continues to mischaracterize the contents of that email, which shows that Plaintiff chose not to seek discovery in response to D&B's anti-SLAPP motion. Indeed, the full email shows Plaintiff herself offered to defer discovery pending the motion's outcome. ECF No. 29. The state of Plaintiff's "corrected" brief is pending before this panel. ECF No. 32.

"audience, speaker, and purpose."[10] Plaintiff downplays *Geiser* for good reason: under the *Geiser* criteria, defendants virtually always satisfy the first step in the two-part analysis. 13 Cal. 5th at 1250; *see also, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 452-53 (2011) (any speech that is "a subject of general interest and of value and concern to the public" is of public interest).[11] With respect to step two, Plaintiff manufactures a requirement that "the challenged speech made a narrative contribution to" the asserted topic of public interest. AB-27. There is no such requirement. A defendant satisfies the second step if its speech "participated in, or furthered, the discourse that makes an issue one of public interest." *FilmOn*, 7 Cal. 5th at 151. By curating, validating, and publishing business contact information for public officials and business leaders, and displaying it contextually in connection with news, analysis and other corporate information, Hoovers is participating in and furthering the discourse regarding business and industry—

---

[10] *Geiser* was decided after D&B's anti-SLAPP motion was fully briefed, but D&B submitted that case to the district court as additional authority before the court issued its opinion. Because the application of *Geiser* "is purely one of law and the necessary facts are fully developed," Plaintiff's contention that D&B waived its ability to rely on this seminal case is inaccurate. *See Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986).

[11] In fact, the anti-SLAPP statute was amended due to too many California courts narrowly construing its application. *See* S.B. 1296 (Cal. 1997), https://www.casp.net/california-anti-slapp-first-amendment-law-resources/statutes/c-c-p-section-425-16/california-senate-bill-1296/ ("This bill would revise the declaration of legislative intent to provide that the section shall be construed broadly . . . .").

discourse that is decidedly of public interest. *See, e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491 (1975) (we rely on publishers "to bring to [us] in convenient form the facts" bearing on matters of public interest); *Exeltis USA v. First Databank*, 2017 U.S. Dist. LEXIS 210482, at *31-34 (N.D. Cal. Dec. 21, 2017) (subscription database of pharmaceutical information of public interest); *CALPERS v. Moody's Investor Serv.*, 226 Cal. App. 4th 643, 660 (2014) (business financial information of public interest); *Kronemyer v. Internet Movie Database*, 150 Cal. App. 4th 941, 948-49 (2007) (movie credits database of public interest); *Dora v. Frontline Video*, 15 Cal. App. 4th 536, 546 (1993) ("[T]he public is interested in and constitutionally entitled to know about things, people, and events that affect it."); *Davis v. Avvo, Inc.*, 2012 U.S. Dist. LEXIS 43743, at *10-11 (W.D. Wash. Mar. 28, 2012) (online professionals directory of public interest); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (same).[12]

Finally, Plaintiff's new assertion that her "claim does not arise from speech at all, because it … arises from D&B's failure to obtain her consent and provide

---

[12] *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749 (1985), is inapposite, and *Trans Union Corp. v. FTC*, 245 F.3d 809 (D.C. Cir. 2001), is, too, for the same reasons. *Greenmoss* was a defamation case having nothing to do with California's anti-SLAPP statute. *Greenmoss* involved a one-off credit report about a single private business that was concededly false and defamatory and was viewed by only five people. Here, Plaintiff concedes her contact data in Hoovers is accurate and sits within millions of other business records in the database, which the district court found to be First Amendment-protected.

15

her compensation," AB-30, is waived and is inaccurate misdirection in any event. What is it that Plaintiff alleges D&B failed to get consent and/or compensate Plaintiff for? Protected speech. *Jordan-Benel v. Universal City Studios*, 859 F.3d 1184, 1188 (9th Cir. 2017), is inapposite. That case involved a *Desny* claim for breach of an implied-in-fact contract, based *solely* on the defendant's failure to pay for the use of an idea. Unlike here, the act giving rise to the plaintiff's claim in *Jordan-Benel* was *not* the defendant's use of the idea itself—it was only the failure to make payment. 859 F.3d at 1189, 1191 (plaintiff did "not challenge the activity of filmmaking at all"). Plaintiff, by contrast, targets D&B's very *use* of her professional information, ER-205 ¶ 78(d) (seeking injunctive relief), and such claims fall within the anti-SLAPP statute. *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010); *Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016).

## IV.  Plaintiff has not made a prima facie showing of merit.

### A. D&B's evidence defeats Plaintiff's claims, and Plaintiff presented no rebuttal evidence.

When D&B presented evidence showing Plaintiff cannot prevail as a matter of law, it became Plaintiff's burden to demonstrate, with admissible evidence, "the merit of [her] claim[s] by establishing a probability of success." *Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 590 (2017). The anti-SLAPP motion is treated as a motion for summary judgment, *Martin Baker Aircraft Co. v. Teledyne Risi*, 2020 U.S. Dist. LEXIS 186262, at *5 (C.D. Cal. Oct. 6, 2020), and thus

16

Plaintiff must "*substantiate*[] a legally sufficient claim," *Ross v. Kish*, 145 Cal.

App. 4th 188, 197 (2006) (emphasis added). Plaintiff offered no evidence below to

challenge D&B's evidence, and she cannot overcome that failure on appeal.

**B.      Plaintiff concedes her claims fail under strict scrutiny, and her arguments for applying intermediate scrutiny are without merit.**

Plaintiff's claims do not survive strict scrutiny, OB 38-40, and Plaintiff does

not contest this. Rather, she urges new legal theories never presented to the district

court. Each of these arguments fails.

**1.      Plaintiff's new argument that Hoovers *itself* is not fully protected speech is both waived and wrong.**

Plaintiff now argues that Hoovers *itself* would be protected only by

intermediate scrutiny. AB-36-40. The Court should reject this argument as

waived. *See In re Mercury Interactive Corp.*, 618 F.3d at 992. It is also irrelevant

since Plaintiff concedes she is not "challenging the product itself." AB-36-37.

**2.      Plaintiff's claims are aimed at speech, not conduct.**

Plaintiff now belatedly argues that her claims are premised on conduct, not

speech, and thus subject to intermediate scrutiny. AB-36-37. In support, Plaintiff

cites a case involving wiretapping, *Bartnicki v. Vopper*, 532 U.S. 514 (2001), and

fabricates new allegations that D&B tracks individuals' internet searches. Now,

for the first time, she pretends she sought relief from D&B based on this

"conduct," the factual basis of which is not discernable from the Complaint, much

17

less supported by the record. *See* AB-37.[13] Plaintiff's factual premise is false;

D&B does not enable users to track individuals' internet searches. *See* ER-93 ¶ 6.

Moreover, her claims are plainly premised on D&B's speech delivered to free trial

users. ER-190 ¶¶ 8-10.

### 3. Plaintiff presents no cognizable theory to support her contention that Hoovers is subject to reduced constitutional protection.

Plaintiff's new theory, that speech which is "clearly expressive" and used for

"edification" is deserving of more protection under the First Amendment than

D&B's factual reporting used for commercial purposes, AB-37-40, has no basis in

law. *The Economist*, *The Wall Street Journal*, and *Financial Times* are all sold and

read for business reasons, yet right of publicity claims asserted against them would

be subject to strict scrutiny. *See* OB-36-38; *William O'Neil & Co. v. Validea.com*,

202 F. Supp. 2d 1113, 1115-16 (C.D. Cal. 2002) (rejecting right of publicity claim

where plaintiff's name was used in book on investment strategies).

Plaintiff's reliance on *Dun & Bradstreet v. Greenmoss Builders*

misunderstands the holding and import of that case. *Greenmoss* was a defamation

case and defamation is wholly *unprotected* speech. *See United States v. Alvarez*,

---

[13] *Bartnicki* involved a publisher's right to disseminate telephone conversation surreptitiously recorded by another. Yet even in *Bartnicki*, the Supreme Court made clear that any alleged "conduct" at issue was still "the kind of 'speech' that the First Amendment protects." *Id*. at 527.

18

567 U.S. 709, 717 (2012). No level of scrutiny applies in such cases and thus *Greenmoss* is inapposite.

Plaintiff's reliance on *TransUnion v. FTC* does not save her argument. *TransUnion*, like *Greenmoss*, expressly stated that courts must consider the "content, form, and context" of contested speech (even if, as in those cases and quite unlike here, it is a credit report) to determine whether it "concerns a public matter." 245 F.3d at 818 (quoting *Greenmoss*, 472 U.S. at 762)).

Simply put, the Supreme Court has never held that nondefamatory, noncommercial speech like that in Hoovers (or the free trial thereof) is subject to reduced protection from content-based speech restrictions. Rather, the opposite is true. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163-65 (2015) (applying strict scrutiny to sign ordinance regulating signs giving directions to an entity's meetings); OB-45-49.

### 4. The free trial is inextricably intertwined with the Hoovers database itself.

Plaintiff argues that intermediate scrutiny applies because the free trial is not "inextricably intertwined" with the database, AB-40-45, but the two cases Plaintiff invokes are distinguishable. In *Ariix, LLC v. NutriSearch Corp.*, not only did the nutritional guide at issue consist of two distinct sections—a non-commercial section describing "the benefits and science of nutritional supplements" and a commercial section rating nutritional supplements—but the

commercial section was allegedly fraudulent. 985 F.3d 1107, 1119 (9th Cir. 2021).

The court concluded the speech in question was commercial speech because "the

Guide is essentially a sham marketing ploy." *Id.* at 1115. And in *Facenda v. NFL*

*Films*, the court did not even engage in an "inextricably intertwined" analysis

because it found that a promotional video was an "infomercial" for the upcoming

release of a game. 542 F.3d 1007, 1017 (3d Cir. 2008). In each of these cases, the

"commercial aspects" were easily "separated out from the fully protected whole."

*Hoffman v. Capital Cities/ABC*, 255 F.3d 1180, 1185 (9th Cir. 2001) (cleaned up).

Here, Plaintiff bases her claims on the free trial of a First Amendment-

protected database. *See* OB-32-33; ER-95 ¶ 13; ER-170-71 ¶¶ 23-24. In fact,

Plaintiff's suggestions for how D&B could allegedly offer the free trial without

using her persona—through removal of all California residents, inclusion of only

those who consent, or replacing actual data with "John Doe" data, AB-43,

demonstrates why "[s]uch an endeavor would be both artificial and impractical."

*Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 796 (1988). That would be akin to

*The Wall Street Journal* offering non-subscribers make-believe articles in their 30-

day trial. "It would be illogical" to allow use of Batis's name in the paid-access

version of the database, "but preclude any advance discussion or promotion" of

that information. *Charles v. City of L.A.*, 697 F.3d 1146, 1154 (9th Cir. 2012).

20

**5.      The other right of publicity class action decisions are distinguishable.**

Plaintiff protests her claims *must* have merit because other courts have denied motions to dismiss "parallel" right of publicity claims.  AB-33-34, AB-34 n.9.  But the cases Plaintiff cites are not "parallel" at all.  All but one of these decisions arose from motions to dismiss based purely on allegations in complaints.  And all are factually distinguishable anyway because they involve the display of the plaintiff's name or likeness alongside an offer.  D&B makes no such use of Batis's name.[14]  *See Martinez v. ZoomInfo Techs.*, 2022 U.S. Dist. LEXIS 66673, at *2 (W.D. Wash. Apr. 11, 2022) ("teaser profile" with button offering "full access" to information, which linked to sign-up screen), *aff'd*, 2023 U.S. App. LEXIS 25030; *Siegel v. Zoominfo Techs.*, 2021 U.S. Dist. LEXIS 180351, at *2-4 (N.D. Ill. Sept. 22, 2021) (same); *Bonilla v. Ancestry.com Operations*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021) (photograph urged user to sign up for a subscription when clicked on); *Callahan v. PeopleConnect*, 2021 U.S. Dist. LEXIS 210857, at *3 (N.D. Cal. Nov. 1, 2021) (name and photo displayed with link to purchase

---

[14]  Plaintiff claims her name is used for "advertisements" for a paid subscription, AB-2-3, but her own Complaint shows this is not true.  The only factual allegations that an advertisement purportedly uses her name appear in Paragraphs 37-39.  The screenshots of Hoovers pictured within those paragraphs show there is no advertisement whatsoever.  ER 196-198 ¶¶ 37-39.  Moreover, D&B submitted evidence unequivocally showing it does not use Plaintiff's persona to advertise.  ER-171 ¶ 26.

21

screen); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 871 (W.D. Wash. 2021) (same), *vacated on other grounds*, 38 F.4th 824 (9th Cir. 2022); *Nolen v. Peopleconnect*, 2023 U.S. Dist. LEXIS 113630, at *5-7 (N.D. Cal. June 30, 2023) (same); *Lukis v. Whitepages*, 542 F. Supp. 3d 831, 835, 836 (N.D. Ill. 2020) (name and personal information shown with ad for "Premium" or "Smart Check" purchases); *Sessa v. Ancestry.com Operations*, 561 F. Supp. 3d 1008, 1033 (D. Nev. 2021) (names shown with pop-up ad for subscription); *Boshears v. PeopleConnect*, 2022 U.S. Dist. LEXIS 54277, at *2 (W.D. Wash. Mar. 25, 2022) (photo shown with pop-up ad for free account, and "upgrade" ads); *Kellman v. Spokeo*, 599 F. Supp. 3d 877, 884 (N.D. Cal. 2022) ("teaser profiles" about individuals urged user to get "full profile" with subscription); *Kolebuck-Utz v. Whitepages*, 2021 U.S. Dist. LEXIS 77300, *1-2 (W.D. Wash. Apr. 22, 2021) ("free preview" with name and likeness shown with buttons to purchase); *Gabiola v. Sarid*, 2017 U.S. Dist. LEXIS 157699, at *14 (N.D. Ill. Sept. 26, 2017) (mugshots shown with ads linking to paid "unpublish mugshot" service); *Krause v. Rocketreach*, 561 F. Supp. 3d 778, 784 (N.D. Ill. Sept. 21, 2021) (name shown with link to telephone number, which opened ad saying "view plans now"); *Camacho v. Control Grp. Media Co.*, 2022 U.S. Dist. LEXIS 140211, at *4-6 (S.D. Cal. July 18, 2022) (name and personal information linked to checkout page to purchase subscription); *Spindler v. Seamless Contacts*, 2022 U.S. Dist. LEXIS

22

211512, at *15 (N.D. Cal. Oct. 24, 2022) (name and contact information shown with "upgrade plan" button linking to subscription page); *see also* Compl., *Spindler v. Seamless Contacts*, No. 4:22-cv-00787-KAW (N.D. Cal. Feb. 7, 2022) (Dkt. 1) ¶¶ 32-34.

### C. Plaintiff's claims also do not survive intermediate scrutiny.

The four factors in *Central Hudson Gas & Electric v. Public Service Commission*, 447 U.S. 557 (1980), all weigh in D&B's favor. OB-41-43. Plaintiff emphasizes the first factor: whether the speech is "misleading." *See* AB-45-46. Yet she does not cite a single fact in the record—there are none—to support her assertion that a Hoovers free trial user would believe she endorsed the product. D&B confirmed it "does not state or imply … that the individuals whose profiles appear in D&B Hoovers, or in a free trial of it, either endorse D&B Hoovers or consented to the publication of their business contact information in it." ER-96 ¶ 16.

Plaintiff also invokes a case involving display of the plaintiff's name and photo to web surfers, inviting the purchase of access to old yearbook photos, names, and biographical information. AB-45-46 (citing *Knapke*, *supra*). In contrast to *Knapke*, Batis admits her information is contained only within D&B's own Hoovers browser, accessible only to paid subscribers and those registered for

23

a free login.  *See* AB-17-18.  Anyone who sees it has already expressed interest in Hoovers and taken affirmative steps to test it.  *See* Amicus Br. at 3.

For the second factor—the "asserted governmental interest"—Plaintiff argues California has a "substantial interest" in protecting citizens from violations of their right of publicity yet overlooks that, if D&B were barred from allowing free-trial access to the information *actually contained* in the First Amendment-protected database, they would be precluded from offering a free trial of the publication.  Such cannot outweigh D&B's constitutionally protected interests. *See United Bhd. of Carpenters v. NLRB*, 540 F.3d 957, 969 (9th Cir. 2008) ("[A] regulation that forecloses an entire medium of public expression across the landscape of a particular community or setting fails to leave open ample alternatives."); *Stutzman v. Armstrong*, 2013 U.S. Dist. LEXIS 129204, at \*54-55 (E.D. Cal. Sept. 9, 2013) ("publishing companies and authors must promote the books they publish and write in order to sell them").

### D. Plaintiff does not contest that the adjunct advertising exception applies.

Since Hoovers is fully protected under the First Amendment, any "advertisement" for it is an adjunct of the database itself and entitled to the same level of constitutional protection because of "the reality that without solicitation the flow of [informative speech] … would likely cease."  *Dex Media W. v. City of Seattle*, 696 F.3d 952, 963 (9th Cir. 2012) (quoting *Riley*, 487 U.S. at 796); OB-43-

24

49. Plaintiff offers no rebuttal on this point. In fact, Plaintiff admits her information is not displayed as an advertisement; it is only accessible *after* a user has "obtain[ed] a free trial login for the D&B Hoovers product." AB-17-18.

### E.  Hoovers is transformative.

Plaintiff argues the transformative use defense "applies only to 'creative' works in which 'an artist's skill and talent' 'transform[s]' an image into 'something other than the likeness.'" AB-49. However, the case establishing that defense says it is not so limited: "We emphasize that the transformative elements or creative contributions that require First Amendment protection … can take many forms … [including] factual reporting." *Comedy III Prods. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 406 (2001); *see also, e.g.*, *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410, 413 (2001) (MLB's use of "factual data concerning [its] players" is First Amendment-protected). Hoovers and its free trial provide valuable factual information about the business world, falling comfortably within the transformative use defense.

Plaintiff falsely claims D&B failed to provide any evidence regarding transformative use or, alternatively, that its evidence was insufficient. AB-36, AB-49-51. Not so. D&B's evidence established that (1) Plaintiff's information is part of a 250 million record database detailing companies and professionals worldwide, ER-92 ¶ 2 ; (2) users have more than 175 search filters and can broadly search, *id.*,

ER-170 ¶ 23; (3) viewers of business contact profiles can cross-reference information about that person's company, ER-165, ER-168-169 ¶¶ 17-18; (4) users can set over 70 types of alerts, or "triggers," to notify them of specific company activity, ER-94 ¶ 9, and a professional's business contact profile contains a link to any "triggers" the user sets for that professional's company, ER-168-169 ¶¶ 17-19. Thus, Hoovers takes the "raw materials" of individuals' business contact information and uses it – along with news, data and analysis about corporations, government agencies and industries – to "synthesize" a comprehensive information database. Hoovers adds "new meaning or expression," *Serova*, 13 Cal. 5th at 878, and commentary, OB-50, to the use of business contact information. It satisfies the transformative use test. OB-51-53; *cf. Authors Guild v. Google*, 804 F.3d 202, 217 (2d Cir. 2015) ("the creation of a full-text searchable database is a quintessentially transformative use" under copyright law).

### F. The public interest exception applies to Plaintiff's right of publicity claims.

The district court incorrectly ruled that the public interest exception cannot apply to works with a promotional purpose. *See* ER-12-14. This was error—the public interest exception can apply to works that promote First Amendment-protected publications. *See Montana v. San Jose Mercury News*, 34 Cal. App. 790, 797 (1995) (promoting newspaper); *De Havilland v. FX Networks*, 21 Cal. App.

26

5th 845, 861-862 (2018) (promoting docudrama); *see also New Kids on the Block v. News Am. Publ'g*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) ("[S]ection 3344(d) … is designed to avoid First Amendment questions … by providing extra breathing space").[15]  Here, the Hoovers free trial "promotes" a fully First Amendment-protected work.  While Plaintiff argues other courts have refused to apply the public interest exception where names are used for a promotional purpose, AB-52-53, D&B's opening brief explained why these cases are distinguishable or not reliable, OB-57-58.  *See also* Part IV.B.5 *supra*.[16]

Plaintiff further claims that the exception applies only to reporting on "recent events" or on "people who 'create a legitimate and widespread attention to their activities.'"  AB-51 (quoting *Fraley v. Facebook*, 830 F. Supp. 2d 785, 804 (N.D. Cal. 2011) (cleaned up)).  But *Fraley* and the cases it cites did not set forth an exhaustive list of what can constitute a matter of public interest.  The exception

---

[15]  Plaintiff incorrectly claims the opposite is true.  AB-52 (quoting *Hilton*, 599 F.3d at 909 n.11).  But *Hilton* left "for another day the question of whether the First Amendment furnishes a defense to misappropriation of publicity that is broader than the … public interest defense[]."  599 F.3d at 909 n.11.

[16]  The only case Plaintiff cites that was not previously addressed is *Callahan v. PeopleConnect*, 2021 U.S. Dist. LEXIS 210857.  There, on a motion to dismiss, the court held without explanation that use of the plaintiffs' names and likenesses was "clearly" not in connection with a public purpose, *id.* at *51, citing to a passage from *Lukis*, *supra*, that did not pertain to the public interest exception, *id.* at *51-52.

is to be construed broadly, and is "intended to mean something less important than news." *Dora*, 15 Cal. App. 4th at 545. "[Courts] cannot limit the term 'public affairs' to topics that might be covered on public television or public radio." *Id.* at 546.

The information in Hoovers, including Plaintiff's information, is certainly of public interest. Moreover, the public has a right, based on statute and policy, to access information related to government employees such as Plaintiff. *See* Cal. Gov't Code § 7921.000. Her identity as a city employee is a matter of public interest under California law, regardless of whether she is the subject of "widespread attention" comparable to an MLB athlete. AB-51-52. Plaintiff's interest in monetizing her professional persona does not outweigh the legitimate public interest in accessing this information. *See Gionfriddo*, 94 Cal. App. 4th at 415.

### G. Plaintiff's UCL claim is derivative of her right of publicity claims.

Plaintiff's UCL claim fails because it is derivative of her right of publicity claims, OB-59, and she cannot demonstrate she lost "money or property," as required to establish standing under Cal. Bus. & Prof. Code § 17204. Her alleged entitlement to statutory damages under Civil Code § 3344(a) does not suffice, OB-60 n.12 (citing *Fraley*, 830 F. Supp. 2d at 812), and the Complaint fails to plead in anything other than purely conclusory terms that her name has independent

28

economic value. *See* ER-190 ¶ 13; ER-192 ¶ 23; ER-203 ¶¶ 63, 66; ER-205 ¶ 77. Her allegation that her name must have commercial value or else D&B would not have used it, ER-190 ¶ 13, is circular and does not suffice to plead that she has lost money or property. *Bass v. Facebook*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (dismissing UCL claim) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.").[17]  Plaintiff's UCL claim fails as a matter of law.

## V.      **In the alternative, Plaintiff lacks Article III standing.**

Plaintiff's arguments in support of standing are unavailing.  First, Plaintiff claims the command in *In re Google Privacy Policy Litigation*, 2013 U.S. Dist. LEXIS 171124, at *16 (N.D. Cal. Dec. 3, 2013), that "a plaintiff must do more than point to the dollars in a defendant's pocket," has been superseded by *Davis v. Facebook*, 956 F.3d 589 (9th Cir. 2020).  This is untrue.  *Davis* did not involve a misappropriation claim, only mentioned *Google* tangentially in a footnote, and, far from only pointing to the dollars in the defendant's pocket, actually involved an established commercial value.  956 F.3d at 595-96, 600, 606 n.8.

---

[17]  D&B did not waive this argument; the lack of commercial value in Plaintiff's name was fairly addressed in D&B's arguments on standing.  *See* ER-159-162; ER-88 n.7.

Plaintiff's remaining arguments do not change that her allegations of harm are pleaded in a conclusory fashion with no facts to support them. A complaint does not "suffice" to plausibly plead facts "if it tenders naked assertion[s] devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Here, Plaintiff's speculative allegations do not establish Article III injury.

## VI.    Conclusion

For the foregoing reasons and those set forth in D&B's Opening Brief, the district court's denial of D&B's anti-SLAPP motion should be reversed on the merits and for lack of standing.

Dated:  October 19, 2023

Respectfully submitted,

 /s/ Michael R. O'Donnell

Michael R. O'Donnell
Michael P. O'Mullan
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Email: MODonnell@RIKER.com
Email: MOMullan@RIKER.com

and

Ashley I. Kissinger
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Email: KissingerA@ballardspahr.com

Elizabeth L. Schilken
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Email: SchilkenE@ballardspahr.com

Emmy Parsons
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Telephone: 202.661.2200
Email: ParsonsE@ballardspahr.com

31

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-15260

I am the attorney or self-represented party.

**This brief contains <u>6,989</u> words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___s/Michael R. O'Donnell_____ **Date** 10/19/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

32

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: October 19, 2023                    By: /s/ Michael R. O'Donnell
                                                Michael R. O'Donnell, Esq.

33